NAGEL RICE, LLP
Bruce H. Nagel, Esq.
103 Eisenhower Parkway
Roseland, NJ  07068
973-618-0400
bnagel@nagelrice.com
Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW WALLINGTON HOME, LLC, a New Jersey limited liability company; MORNINGSIDE at WALLINGTON, LLC, a New Jersey limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> BOROUGH OF WALLINGTON, and BOROUGH OF WALLINGTON PLANNING BOARD, <br><br> Defendants. | Civil Action <br><br> COMPLAINT AND JURY DEMAND <br><br> Civil Action No. |

**COMPLAINT FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES,**

**INJUNCTIVE and OTHER RELIEF**

Plaintiffs, New Wallington Home, LLC, a New Jersey limited liability company ("NWH"), and Morningside at Wallington, LLC, a New Jersey limited liability company ("Morningside"), (or, collectively, "Plaintiffs"), as and for their complaint against defendants, the Borough of Wallington Planning Board (the "Planning Board") and the Borough of Wallington (the "Borough")(the Planning Board and the Borough collectively referred to as "Defendants"), allege as follows:

## PREAMBLE

1.      This is a complaint about how a New Jersey town has quietly and surreptitiously maintained an ultimately misguided strategy of discrimination in housing and access to public transportation and the surprising lengths it will go to try to forward this unlawful conduct. This complaint will also show how these policies have actually significantly harmed the town and asks the court to help forge a new way forward. This town is not a bucolic, pastoral region of country clubs and golf courses but is located in southern Bergen County, surrounded by towns that are dense, culturally diverse, well planned and energetic.   As will be shown in this complaint, the Town of Wallington has engaged in a number of practices that have ultimately exposed this wrongful intent where even the New Jersey courts, on numerous occasions, have found that Wallington has engaged in discriminatory behavior. Despite these rulings and the admonitions of the courts, the town has continued to try to keep what it views as minorities out of its borders and will stop at nothing to pulverize anyone that complains about this behavior.

2.      On the issue of denying access to public transportation, this complaint will show how Wallington has mishandled one of the greatest blessings that a town could receive in the form of having a brand new train station providing access to much of the tri-state region constructed and completed right on the border of the town. Despite having the benefit of all the tools necessary to make this train station accessible to its residents and others, Wallington has purposefully and maliciously denied access to any of its residents to this beautiful new train station. The result of this unlawful and discriminatory conduct is that right now, in the middle of one of the most densely populated areas of the country, there exists a new commuter train station with wonderful access and facilities on one side that benefit the residents of an adjacent town while, on the Wallington side of the station, there is nothing but a barren field of weeds and no

access to the station for the public. This tragedy exists not because the town lacks all of the resources to make this asset immediately available to its residents.  Rather it exists because Wallington wants it that way.  As will be shown in this complaint, Wallington's intent here is to deny access to public transportation for neighboring communities that will bring in what Wallington views as undesirable minorities from those bordering towns.

3.     Wallington also works to punish those who call out its discriminatory behavior. As will be shown in this complaint, while Wallington actively thwarted every attempt to create multi-family housing on the Plaintiffs' site, the town still saw fit to tax this site as if it was readily developable for multi-family housing. In effect, Wallington profiteered continuously by taxing the Plaintiff to the fullest extent for multi-family zoning while it continuously denied any reasonable ability to implement that zoning.  While this behavior is in itself unlawful and improper, the town's tactics got even worse when it set in motion a plan to secretly steal Plaintiff's property by surreptitiously creating a tax sale process and quietly redeeming the tax sale certificate itself without any notice to the Plaintiff.  The town's improper goals was to take over the property in order to thwart its obligations to provide affordable housing.

**PRELIMINARY STATEMENT**

4.     For years, Defendants have gone to extraordinary lengths and employed unscrupulous tactics to deny Plaintiffs their vested, court-awarded right to construct 135 apartments, more than dozens of which will be restricted to low and moderate income inhabitants, in a town where, as a direct effect of Defendants' longstanding discriminatory and exclusionary practices, and its continuing, unmitigated disregard for the most basic needs of its poor and minority residents, Wallington's decades-old, statutorily-imposed affordable housing

3

obligation has yet to be addressed, and the stock of available lower income units is alarmingly inadequate.

5.     Driven by  Defendants' obvious disdain for providing affordable housing for low and middle income families and the racial diversity that might represent to Wallington, which is a predominantly white community, and Defendants animosity to the Plaintiffs for calling out this improper situation, the Planning Board and its advisors continued, through a barrage of baseless objections and an outright refusal to act, to violate Plaintiffs' substantive due process rights, and unlawfully defied the orders of three separate New Jersey Superior Court judges who had directed that Defendants shall not prevent Plaintiffs' efforts to construct affordable housing for Wallington's disadvantaged and underserved citizens.

6.     After years of unlawful, egregious, deliberate and malicious conduct and countless court filings, Defendants were forced to comply with the law and allow Plaintiffs to move forward with constructing their apartment development which includes affordable housing for Wallington's disadvantaged citizens.

7.     Despite this, and in direct retribution and response to Plaintiffs' long fight against Defendants to bring affordable housing to Wallington, Defendants have shifted their focus and deprived Plaintiffs of their substantive due process and other rights in other ways.

8.     As mentioned above, for years while NWH was fighting for approval of its development in the courts, Defendants were employing a number of anti-development tactics to try to stop the development of the property including taking positions in court that the property was "undevelopable" and that the property lacked proper zoning status. Despite Defendants' unwarranted and unfair positions, the town took an opposite approach to levying taxes on the property. In short, the Borough continually taxed the property as if it was developable and

approved all while trying to stop its development.  As a result, NWH stopped paying taxes in the years from 2016 through 2018 while NWH was fighting for approval.  The Borough responded to NWH's actions by surreptitiously withholding any tax notices to NWH and then scheming to try to seize NWH's property by secretly holding a tax sale and redeeming the tax sale certificate itself all without proper and lawful notice and procedure.

9.      In 2018, instead of following the law and listing the unpaid tax sale certificates for NWH's property for sale, the Borough unlawfully, deliberately, maliciously and egregiously took the unpaid tax sale certificates for themselves. The Borough manipulated the system, failed to provide the required notice to NWH and the public regarding the liens, and failed to adhere to the required statutory and lawful procedures whereby tax certificates are sold at tax sales.

10.     The Borough violated the law and the rights of NWH and the public and failed to provide proper notice so they could take the property from NWH, prevent the construction of affordable housing and punish Plaintiffs for attempting to bring affordable housing to Wallington.

11.      Eventually, NWH discovered the clandestine, unlawful, egregious, deliberate and malicious conduct of the Borough. In order to obtain clear title, the Borough demanded that NWH pay tens of thousand dollars in unlawful and improper penalties and interest regarding the unpaid taxes. Under protest, NWH paid the Borough the unlawful and improper penalties, interest and other monies.

12.     In addition, Plaintiffs' property is in close vicinity to the Westmont Train Station (the "Train Station"). Wallington has a right of way which runs from close to Plaintiffs' property to the Train Station, and if dedicated as a public roadway would provide Plaintiffs and residents throughout Wallington easy and necessary access to the Train Station. Similar to their conduct

regarding preventing Plaintiffs' efforts to construct affordable housing for Wallington's disadvantaged and underserved citizens, Defendants have deliberately and maliciously refused to dedicate the right of way as a roadway and to block access to the Train Station from the Wallington side in order to limit those people who the Defendants deem undesirable, including minorities, from entering the Borough. The Defendants' conduct was motivated by its desire to do whatever it took to maintain itself as a predominantly white community. Plaintiffs and the citizens of Wallington have the right to access to public transportation. By failing to dedicate the right of way and construct the public roadway, Defendants have discriminated against and violated the substantive due process rights of Plaintiffs and the citizens in surrounding areas.

13. Through this action, Plaintiffs seek injunctive, declaratory, and/or legal relief that is mandated by the United States Constitution, and statutory and common law, and designed to end Defendants' discriminatory campaign, hold them accountable for their egregious and unconstitutional conduct, and clear the path to providing Plaintiffs and the citizens in surrounding areas needed accessibility to public transportation.

**JURISDICTION and VENUE**

14. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this action arises under the Constitution and the laws of the United States, and 28 U.S.C. § 1367 as to all related claims arising under State law.

15. Venue in this District is proper under 28 U.S.C. § 1391(b)(1) & (2) as all Defendants reside in the State of New Jersey, the properties that are the subject matter of this litigation are situated in New Jersey, and a substantial part, if not all, of the events giving rise to the causes of action occurred in the State of New Jersey.

## PARTIES AND OTHERS INVOLVED

16.     The Wallington Group, LLC, is a New Jersey limited liability company (the "Wallington Group"). The Wallington Group has its principal place of business at 27 Horseneck Road, Suite 301, Fairfield, New Jersey. It was once the fee simple owner of a substantially vacant parcel, containing only the remnants of prior commercial or industrial uses, located in the Borough of Wallington and designated on the Borough's Municipal Tax Map as Lot 35.02, Block 71 (the "Wallington Group Property"). The Wallington Group Property is approximately 6.736 acres in size.  It is bounded to the north and west by the Saddle River, to the north and east by the tracks of the New Jersey Transit/Erie-Lackawanna Railroad, and to the south and east by a parcel owned by Morningside, described more fully below. The Wallington Group no longer owns the Wallington Group Property and is not a plaintiff in this case.  That property is now owned by Plaintiff NWH.  As the prior owner of the Wallington Group Property, the Wallington Group is included here for background purposes and because it was involved in certain of the lawsuits against the Defendants explained herein.

17.     Plaintiff, Morningside is a New Jersey limited liability company with its principal place of business at 27 Horseneck Road, Suite 301, Fairfield, New Jersey. It is the fee simple owner of a 3.687-acre parcel designated on the Borough's Municipal Tax Map as Lot 35.01, Block 71 (the "Morningside Property"). The Morningside Property is situated along Main Avenue in Wallington and is contiguous to the NWH Property.

18.     Plaintiff, NWH is a New Jersey limited liability company with its principal place of business located at 27 Horseneck Road, Suite 301, Fairfield, New Jersey. NWH is the successor in interest to the Wallington Group. As such, it is the present owner of the Wallington Group Property. The Wallington Group Property will also be referred to as the "NWH Property".

19.     Defendant Board is a municipal planning board having an address at 24 Union Boulevard, Wallington, New Jersey.

20.     Defendant Borough is a municipal corporation having an address at 24 Union Boulevard, Wallington, New Jersey.

## ALLEGATIONS OF FACT COMMON TO ALL COUNTS

**A.     The Affordable Housing Needs of Wallington's Poor and Minority Residents Are Grossly Underserved.**

21.     As the New Jersey Supreme Court declared in *Mount Laurel I*:  "There cannot be the slightest doubt that shelter, along with food, are the most basic human needs." S. Burlington Cty. N.A.A.C.P. v. Mount Laurel Twp., 67 N.J. 151, 178 (1975).  It is for this very reason that both Congress and the State Legislature have enacted statutory and regulatory schemes designed to promote and protect the critical housing needs of the poor and underserved.

22.     The message of the New Jersey Fair Housing Act, N.J.S.A. 52:27D-301, *et seq.* (the "NJFHA"), and the regulations promulgated by the Council on Affordable Housing ("COAH"), is resolute and unmistakably clear. That is, municipalities must address and affirmatively plan for their present and prospective indigenous needs for low and moderate income housing.

23.     Multi-family units in the Borough of Wallington – to the limited extent that they exist – serve the needs of the poor and otherwise protected classes. Multi-family units also serve the housing needs of residents at the bottom end of Wallington's socio-economic spectrum. Yet, multi-family unit apartments that serve the poor, protected classes and those residents on the bottom end of Wallington's socio-economic spectrum are in rare supply compared to the much higher-priced, market-rate homes that dominate Wallington's landscape.

24.     Defendants have largely ignored the essential needs of their residents, and their corresponding statutory and regulatory obligations to serve them. Through the years and to this day, Defendants have tried various schemes to avoid their long-outstanding affordable housing obligation, and Wallington's supply of low-income housing, by any definition, is grossly insufficient.

25.     Despite this affordable housing void, Defendants have engaged in a relentless campaign to deny Plaintiffs their vested, statutory right to build an inclusionary development – a development that would provide housing opportunities for 135 racially and culturally diverse, lower income families, and satisfy much of the Borough's affordable housing obligation.

**B.    Plaintiffs Commence Numerous Actions Challenging the Defendants' Longstanding, Exclusionary And Discriminatory Practices.**

26.     To address this pronounced but grossly underserved need for low and moderate income housing extending back decades, as well as Defendants' historic disregard for their affordable housing obligations, the Wallington Group (the predecessor entity to NWH described above) commenced a Mt Laurel affordable housing action in the Superior Court of New Jersey (the "Builder's Remedy Action") in 2006. In that action, the Wallington Group sought (i) a declaration that the Borough had not met its affordable housing obligations under the NJFHA and COAH regulations, (ii) a builder's remedy that would require the Borough to rezone the Wallington Group Property to permit multi-family residential use, and (iii) an order directing that the Wallington Group's inclusionary development application be "fast tracked."  Morningside intervened in this suit and participated with the Wallington Group in seeking the same relief for its property which is contiguous to the Wallington Group Property.

27.     Ultimately, in this action, the Superior Court declared that the land use controls and zoning ordinances of the Borough were "invalid" and "not in compliance with the

requirements of the New Jersey State Constitution, the *Mount Laurel* Doctrine, the Fair Housing Act and the regulations of the New Jersey Council on Affordable Housing." Through its Opinion and accompanying Order, the Superior Court granted to the Wallington Group and to Morningside builder's remedies and required Wallington to zone the lands in question for residential, multi-family use and also required that certain of the multi-family units to be restricted to low and moderate income families.

28.   NWH became the successor to the Wallington Group and purchased the property in 2015.

29.   Shortly thereafter, NWH brought an application for approval of a development of a multi-family apartment complex which included the appropriate number of units reserved for the benefit of low and moderate income families.

30.   Immediately, on the first night of NWH's application hearings, Wallington took the position that the NWH Property was never zoned properly, that the prior court rulings and findings in the 2008 decision granting multi-family zoning to the site were "flawed" and that the applicant NWH had no right to be in front of Wallington seeking approval.  NWH was forced to go to court to address Defendants unwarranted and vexatious positions. As a result, the court in that proceeding overruled Defendants and ordered that the application should move forward.

31.   This was only the beginning of the Defendants improper and unlawful actions and Defendants continued with a campaign to torture the approval process, trample Plaintiffs' development rights, and intentionally and effectively deprive the protected classes of Wallington their basic housing needs which is well borne out by subsequent proceedings.

32.   When it became clear that Defendants' obstructionist efforts would never cease, NWH and Morningside commenced a *second* prerogative writ action alleging that Defendants'

conduct was improper. The Superior Court found resoundingly in favor of NWH and Morningside, flatly rejecting each of the arguments advanced by the Board and declaring that its actions were "arbitrary, capricious and unreasonable." The Court found that Defendants failed to adhere to the prior court's order and rendered a decision designed to once again finally bring an end to Defendants' scheme of discrimination and obstruction, and ensure that the public's fundamental need for affordable housing in Wallington would be served.

33.     Similar to its blatant disregard of the Court's rulings in the first lawsuit, Defendants once again willfully violated the Court's order. Defendants did everything they could to frustrate the court's rulings and impede and obstruct Plaintiffs from moving forward with their project in order to ensure that affordable housing would not be built in Wallington.

34.     In 2018, Plaintiff had to file another lawsuit against Defendants alleging that Defendants' actions were directly contrary to and in violation of the Courts' prior orders and directives. The Superior Court entered an order and an opinion finding that Defendants' conduct was "arbitrary, capricious and unreasonable, and contrary to law." The Court stated: "Based upon the tortured history of this application and the Township's recalcitrant stance toward satisfying its Mount Laurel obligation, which these developments will in part address, the court determines there would be no purpose in remanding the applications to the Board and that such a remand would result in further delay and expense to the applicant without further elucidation to support denial." So that the Defendants could no longer delay and obfuscate, the court deemed the applications by the Defendants approved in their entirety, including all variances.

35.     After the court's decision, Defendants were forced to comply with the law and allow Plaintiffs to move forward with constructing their apartment development, which includes

affordable housing for Wallington's disadvantaged citizens but continued with other tactics to frustrate the development of this housing and the diversity it represents.

36.     Even though Defendants were forced to comply with the law and allow for the development of the apartment complex with an affordable housing component, Defendants have shifted their focus to deprive Plaintiffs of their substantive due process and other rights in other discriminatory and unlawful ways. Because Plaintiffs have continued to advocate for the creation of affordable housing in Wallington, Defendants have responded by continuing their campaign of clandestine, unlawful, egregious, deliberate and malicious conduct against Plaintiffs.

**C.     The Borough Acted Unlawfully, Egregiously, Deliberately and Maliciously Regarding NWH's Property Taxes**

37.     Because NWH was actively involved in litigation with the Defendants trying to overcome their improper denials of the Plaintiffs' rights to develop the NWH Property and the Morningside Property according to court rulings and for other reasons, NWH withheld property tax payments that were assessed against the NWH Property by the Borough in 2016 through 2018. The Borough, however, changed its taxing behavior in response to NWH's actions against unfair taxes.

38.     Prior to 2016, when the Wallington Group, the previous owner of the NWH Property prior to NWH, did not pay property taxes, the Borough would repeatedly issue tax delinquency notices. The Wallington Group had not paid real estate taxes for many years prior to 2015. Despite the fact that The Wallington Group did not pay taxes, the Borough chose to regularly notice it on taxes owing in the normal course.  Delinquent taxes were eventually paid when NWH bought the NWH Property from The Wallington Group.  Over 20 tax delinquency notices were mailed by the Borough and received over the years. As such, the Borough's

longstanding practice was to adhere to the law and provide delinquency notices when taxes were overdue.

39.     The Borough was required to provide notice to NWH regarding its delinquent taxes. With regard to the 2016-2018 taxes, the Borough failed to provide any notice to NWH that the taxes were delinquent.

40.     Further, despite demand, the tax collector of Wallington was unable or unwilling to provide proof that any of the notices of delinquency or the notice of tax sale were mailed to, delivered to or received by NWH. In fact, they were not.

41.     The Borough issued tax certificate #17-016 regarding NWH's unpaid property taxes. This lien was improperly assessed upon the property by the Borough and constitutes a cloud on title.

42.     The Borough must adhere to the requirements and procedures set forth in N.J.S.A. 54:5-1, *et seq.*, for the sale of tax certificates. The Borough failed to adhere to these requirements with regard to NWH's tax sale. The Borough's tax collector has not supplied any evidence that the notice of the tax sale was mailed to NWH or posted in public places, despite repeated request for same.

43.     Instead of providing notice to NWH and the public regarding the sale of NWH's tax certificate, and putting the tax sale certificate for sale, the Borough unlawfully, deliberately, maliciously and egregiously took the unpaid tax sale certificate for themselves. The intention of the Borough was to surreptitiously take the property from NWH in order to prevent the construction of affordable housing and punish Plaintiffs for attempting to bring affordable housing to Wallington.

44.     By failing to provide NWH notice of the tax delinquency, improperly and unlawfully taking the tax sale certificate without providing notice of the sale to NWH and the public and unlawfully taking the tax sale certificate without first providing NWH the opportunity to pay off the taxes, the Borough wrongfully, maliciously and deliberately took NWH's Property. In addition, as a result of the foregoing, the Borough wrongfully, maliciously and deliberately placed a lien and cloud on the title to NWH's property.

45.     In order to obtain clear title, the Borough improperly demanded that NWH pay certain interest and penalties. The Borough assessed over $13,000 of interest at the rate of 18% charged on the "interest on certificate." This assessment was unlawful, egregious and impermissible. Assessment of any interest on the certificate is flatly inconsistent with the tax sale certificate itself, which on its face states that the interest will accrue at 0%. If the tax sale certificate is deemed valid, it is binding on the Borough as it would be on any other tax sale certificate holder, and as a result the Borough was not permitted to charge interest in excess of 0%. There was no basis in law or fact for the Borough to charge anything other than 0%, and requiring NWH to pay interest at 18% was illegal and deliberately and maliciously discriminatory.

46.     The Borough assessed NWH over $23,000 as a 6% redemption penalty. N.J.S.A. 54:4-67 requires that the governing body take affirmative action to authorize such a charge/penalty before it can do so as a matter of law. Upon information and belief, the Borough failed to take the necessary action to authorize the 6% redemption penalty. Despite requests to the Borough for proof of the authorization of the penalty, none has been provided. There was no basis in law or fact for the Borough to charge the 6% redemption penalty and requiring NWH to pay the 6% penalty was illegal and deliberately and maliciously discriminatory.

47.     Assuming arguendo that the penalty was authorized and fixed by the Borough, according to N.J.S.A. 54:4-67, the holder of the tax sale certificate is only entitled to recover the penalty to the extent it pays the outstanding delinquency by the end of the tax year in which it arose. Upon information and belief, the Borough did not pay the outstanding delinquency. As a result, the Borough was not entitled to collect the 6% penalty. The Borough's requirement that NWH pay the 6% penalty was unlawful, egregious and improper.

48.     All the above actions of the Borough and the Borough's tax collector regarding NWH's taxes were in retaliation to Plaintiffs' actions regarding the development of its apartment complex and steadfast and longstanding commitment to provide affordable housing to those in need in Wallington. In other words, the above unlawful and improper actions of the Borough and the Borough's tax collector were taken to punish, damage and harm NWH and in retribution of Plaintiffs' efforts to bring affordable housing to Wallington, something the Borough desperately does not want to happen.

49.     NWH paid the improper and unlawful penalties, interest and other monies to the Borough under protest as the Borough refused to release the lien on the property unless all the monies, including those that the Borough knew or should have known were in fact not owed, were paid in full.

**D.     The Borough Improperly Refuses to Dedicate the Right of Way and Denies Plaintiffs and the Public Access to Vital Public Transportation**

50.     The NWH Property and the Morningside Property are located in Wallington and the ingress and egress is along Main Avenue. The nearest full service train station is the newly developed Westmont Train Station located at the end of Highland Avenue and Johnson Drive in Wood-Ridge, New Jersey. This new station sits right on the border of Wallington in the north

which has a right of way for the benefit of the town across commercial property that leads directly to the Train Station.

51.     Plaintiffs and the citizens of Wallington have a right of access to public transportation. The most direct and reasonable access to the Train Station for Plaintiffs and other residents of Wallington is through a right of way which the Borough has had the right to use for at least 30 years beginning in or around the property located at 450 Main Avenue, Wallington, and running to the Train Station. The Borough can dedicate the right of way as a public roadway leading directly to the Train Station. If dedicated as a public roadway it would provide Plaintiffs and residents throughout Wallington easy and necessary access directly to the Train Station. If the Borough dedicated the right of way as a roadway, (1) the driving distance from Plaintiffs' property to the Train Station would be reduced by more than half and for other residents of Wallington the driving distance would be reduced even more and (2) it would provide Plaintiffs and residents in the Borough the opportunity to walk to the Train Station.

52.     To access the Train Station, Plaintiffs and other residents currently have to drive through residential areas which increases the likelihood for accidents, children being hit by cars and criminal activity. If the right of way was dedicated as a roadway, access to the Train Station would no longer pass through residential areas but rather would pass through commercial properties.

53.     Despite demand, the Defendants have steadfastly refused to dedicate the right of way as a roadway and thus blocked the necessary access to public transportation at the Train Station for Plaintiffs and other residents of Wallington.

54.     The Defendants have refused to dedicate the right of way as a roadway and to block access to the Train Station to Plaintiffs and others for a number of reasons. The

Defendants' actions are part of a deliberate, calculated and purposeful plan to limit those people who the Defendants deem undesirable, including minorities, from entering the Borough. The plan is that if the right of way is not dedicated and there is no access to the Train Station from Wallington, residents from surrounding towns who have significant minority populations will be forced to use trains stations in other towns. According to the Defendants' plan, this will force these individuals to travel to towns other than Wallington, limit the number of people who the Defendants deem undesirable, including minorities, from entering the borders of the town and foster the Defendants' goals of maintaining a predominantly white community.

55.    As set forth above with regard to blocking affordable housing, the Defendants have a longstanding history of discriminating against the poor, the underserved, the disadvantaged and minorities. These latest actions of the Defendants are a continuation of its discriminatory practices.

56.    In addition, the Defendants' actions are in retaliation to Plaintiffs' actions regarding the development of its apartment complex and steadfast and longstanding commitment to provide affordable housing to the disadvantaged and underserved in Wallington. The Defendants have refused to dedicate the right of way as a means to exact revenge against Plaintiffs and to punish, damage and harm Plaintiffs because of Plaintiffs efforts to bring affordable housing to Wallington, something the Defendants desperately do not want to happen.

57.    The Defendants' actions are unlawful, willful, egregious, deliberate and malicious and have harmed Plaintiffs and the residents of Wallington. The Defendants' nefarious plot to obtain revenge against Plaintiffs violates the substantive due process rights of Plaintiffs and the citizens in surrounding areas.

## FIRST COUNT
### (Violation of Substantive Due Process, 42 U.S.C. § 1983, *et seq*. Regarding Taxes)

58.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

59.     Under 42 U.S.C. §1983, "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

60.     At all relevant times, the Borough was acting in its capacity as the municipal entity responsible for, among other things, all matters relating to property taxes and tax sale certificates.

61.     The Borough acting under color of state law has engaged in acts that have deprived plaintiff NWH of its Fourteenth Amendment substantive due process rights by, among other things:

i.      Deliberately and maliciously failing to provide notice of NWH's tax delinquency;

ii.     Deliberately and maliciously failing to provide NWH and the public notice of the sale of the tax certificate;

iii.    Deliberately and maliciously taking the tax sale certificate;

iv.     Deliberately and maliciously taking the tax sale certificate without first providing NWH and the public the opportunity to purchase the certificate.

v.      Deliberately and maliciously placing a cloud on NWH's title;

vi.     Deliberately and maliciously taking the title to NWH's property;

vii.    Deliberately and maliciously demanding that NWH pay unlawful and improper interest and penalties;

viii.   Deliberately and maliciously charging NWH unlawful and improper interest and penalties;

ix.     Deliberately and maliciously not following the custom and practice of the Borough which was to provide delinquency notices to NWH and taxpayers;

x.      Deliberately and maliciously hiding the fact that they took the property from NWH in order that NWH would lose its property and no longer be able to pursue the construction of affordable housing; and,

xi.     Deliberately and maliciously taking all the above actions against NWH in retaliation to Plaintiffs' actions regarding the development of its apartment complex and steadfast and longstanding commitment to provide affordable housing to those in need in Wallington.

62.     The Borough's conduct violated clearly established statutory and constitutional rights of which a reasonable entity would have known.

63.     Before forcing a citizen/entity to satisfy his/its tax debt by forfeiting his/its property, due process and the Fourteenth Amendment to the United States Constitution requires the Borough to provide adequate notice of the impending taking. The Borough deliberately and maliciously failed to provide adequate notice of the tax delinquency, the tax sale and it's taking of NWH's property.

64.     The Borough's conduct was motivated by revenge.

65.     The Borough's conduct was motivated by taking actions to make sure that Plaintiffs lost their property and could not provide affordable housing in Wallington.

66.     The Borough's conduct was motivated by its desire to take NWH's property and prevent at all costs affordable housing to be built in Wallington.

67.     The actions and inaction of the Borough were motivated by a palpable and discriminatory bias toward Plaintiffs, the project, and the perceived blight that the construction of affordable housing and the accommodation of Wallington's poor and minority families would have on a predominantly white community.

68.     The Borough's conduct is an egregious abuse of authority and shocking to the conscience.

69.     As such, the Borough is liable to NWH under 42 U.S.C. § 1983 for deprivation of substantive rights under the due process clause of the 14th Amendment.

70.      As a direct and proximate result of the inactions and/or actions of the Borough, as set forth above, NWH has sustained severe damage and has endured, is enduring and in the future will endure further damage.

WHEREFORE, plaintiff NWH demands judgment against the Defendant Borough of Wallington for:

(A)   Compensatory damages;

(B)   Punitive damages;

(C)   Reasonable attorney's fees pursuant to 42 U.S.C. §1988;

(D)   Costs of suit;

(E)   Interest; and

(F)   Such further relief as the Court may deem just and equitable.

**SECOND COUNT**
**(Violation of Substantive Due Process, 42 U.S.C. § 1983, *et seq*. Regarding Denial of Access
to Public Transportation)**

71.     Plaintiffs repeat and reallege each and every allegation in the foregoing
paragraphs as if fully set forth herein.

72.     Under 42 U.S.C. §1983, "[e]very person who, under color of any statute, ordinance,
regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or
causes to be subjected, any citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or immunities, secured by the Constitution and
the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper
proceeding for redress...."

73.     At all relevant times, the Defendants were acting in their capacity as the
municipal entities responsible for, among other things, all matters relating to the dedication of
the right of way at issue in this matter.

74.     Plaintiffs, the citizens of Wallington and others are entitled to access to public
transportation.

75.     The Defendants acting under color of state law have engaged in acts that have
deprived plaintiff NWH of its Fourteenth Amendment due process rights by, among other things:

    i.      Deliberately and maliciously failing to provide access to public transportation
            to Plaintiffs, the citizens of Wallington and others;

    ii.     Deliberately and maliciously failing and refusing to dedicate the right of way
            as a roadway;

iii.    Deliberately and maliciously failing to provide and depriving Plaintiffs, residents of Wallington and others reasonable and necessary access directly to the Train Station;

iv.    Deliberately and maliciously failing to provide Plaintiffs, residents of Wallington and others reasonable and necessary access to the Train Station through the right of way which the Borough has beginning in or around the property located at 450 Main Avenue, Wallington and running to the Train Station;

v.    Deliberately and maliciously refusing to dedicate the right of way as a roadway and to block access to the Train Station from the Wallington side in order to limit those people who the Defendants deem undesirable, including minorities, from entering the Borough.

vi.    Deliberately and maliciously refusing to dedicate the right of way as a roadway and to block access to the Train Station to Plaintiffs and others in retaliation to Plaintiffs' actions regarding the development of its apartment complex and steadfast and longstanding commitment to provide affordable housing to the disadvantaged and underserved in Wallington;

vii.    Deliberately and maliciously refusing to dedicate the right of way as a roadway as a means to extract revenge against Plaintiffs and to punish, damage and harm Plaintiffs because of Plaintiffs efforts to bring affordable housing to Wallington, something the Defendants desperately do not want to happen.

viii.    Deliberately and maliciously blocking the necessary access to public transportation at the Train Station for Plaintiffs and other residents of Wallington.

76.    The Defendants' conduct violated clearly established statutory and constitutional rights of which a reasonable entity would have known.

77.    The Defendants' conduct was motivated by revenge.

78.    The Defendants' conduct was motivated by the expectation that if it denied or blocked access to the Train Station from the Wallington side of the tracks, it would limit those people who the Defendants deem undesirable, including minorities, from entering the Borough.

79.    The Defendants' conduct was motivated by the expectation that if denied access to public transportation to the Train Station by way of the right of way, it would inhibit Plaintiff from pursuing its apartment complex development and bringing affordable housing to Wallington.

80.    The Defendants' conduct was motivated by its desire to do whatever it took to limit those people who the Defendants deem undesirable, including minorities, from entering the Borough.

81.    The Defendants' conduct was motivated by its desire to do whatever it took to maintain itself as a predominantly white community.

82.    The Defendants' conduct was motivated by their desire to do whatever it took to prevent the construction of affordable housing for Wallington's disadvantaged and underserved citizens.

83.     The actions and inaction of the Defendants were motivated by a palpable and discriminatory bias against minorities and others who the Defendants deem undesirable.

84.     The actions and inaction of the Defendants were motivated by a palpable and discriminatory bias toward Plaintiffs, the project, and the perceived blight that the construction of affordable housing and the accommodation of Wallington's poor and minority families would have on a predominantly white community.

85.     The Defendants' conduct is an egregious abuse of authority and shocking to the conscience.

86.     As such, Defendants are liable to Plaintiffs under 42 U.S.C. § 1983 for deprivation of substantive rights under the due process clause of the 14th Amendment.

87.     As such, Plaintiffs are entitled to injunctive relief requiring the Defendants to provide access to public transportation and the Train Station to Plaintiffs, the citizens of Wallington and others by dedicating the right of way at issue as a roadway.

88.     As a direct and proximate result of the inactions and/or actions of the Defendants, as set forth above, Plaintiffs have sustained severe damage and have endured, are enduring and in the future will endure further damage.

WHEREFORE, Plaintiffs demands judgment against the Defendants for:

(A)     Compensatory damages;

(B)     Punitive damages;

(C)     Reasonable attorney's fees pursuant to 42 U.S.C. §1988;

(D)      Injunctive and declaratory relief requiring Defendants to dedicate the right of way as a roadway;

(E)     Costs of suit;

(F)      Interest; and

(G)      Such further relief as the Court may deem just and equitable.

## THIRD COUNT
### (Unjust Enrichment)

89.      Plaintiffs repeat and reallege each and every allegation of the foregoing paragraphs as if fully set forth herein.

90.      The Borough assessed interest, penalties and other monies on NWH that were unlawful and improper.

91.      The Borough forced NWH to pay the unlawful and improper interest, penalties and other monies in order to clear the cloud on NWH's title.

92.      Under protest, and to clear title, NWH paid the unlawful and improper interest, penalties and other monies to the Borough.

93.      As a result, the Borough improperly and unlawfully collected, from 2016 through 2018, tens of thousands of dollars in penalties, interest and other monies from NWH.

94.      The Borough has been unjustly enriched by the unlawful and improper collection of interest, penalties and other monies from NWH.

95.      Permitting the Borough to retain these monies would unfairly give the Borough the benefit of NWH's property.

96.      Equity and good conscience require that the Borough return to NWH all interest, penalties and other monies that NWH paid to the Borough with regard to the 2016, 2017 and 2018 taxes.

**WHEREFORE**, Plaintiff NWH demands judgment against the Borough of Wallington for damages, attorneys' fees and costs of suit, and such other relief as the Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury as to all issues in the above matter.

## DESIGNATION OF TRIAL COUNSEL

Bruce H. Nagel, Esq., is hereby designated as trial counsel for the within matter.

**NAGEL RICE LLP**
*Attorneys for Plaintiffs*

*/s/* Bruce H. Nagel
Bruce H. Nagel, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

Dated:  July 2, 2020