## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW WALLINGTON HOME, LLC, a New Jersey limited liability company; MORNINGSIDE at WALLINGTON, LLC, a New Jersey limited liability company,<br><br>*Plaintiff(s)*<br><br>vs.<br><br>BOROUGH OF WALLINGTON, and BOROUGH OF WALLINGTON PLANNING BOARD; MARK W. TOMKO in his official capacity as former Mayor of the Borough of Wallington; DOROTHY B. SIEK, in her official capacity as former Tax Collector for the Borough of Wallington; and CHRISTOPHER ASSENHEIMER, in his official capacity as Certified Tax Collector of the Borough of Wallington,<br><br>*Defendant(s)* | CIVIL ACTION NO. 2:20-cv-08178 (CCC – ESK) |

## DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. 12(B) 6)

Of Counsel
*David T. Pfund*

On the Brief
*Mary C. McDonnell*
*Gerald S. Shepard*

## **PRELIMINARY STATEMENT**

This brief is submitted on behalf of Defendants Borough of Wallington ("The Borough"), Borough of Wallington Planning Board ("Planning Board"), its former Mayor Mark W. Tomko ("Mayor" or "Tomko"), its former Tax Collector Dorothy B. Siek ("Siek") and its former Tax Collector Christopher Assenheimer ("Assenheimer") in support of its Motion to Dismiss Plaintiffs' Amended Complaint filed on December 7, 2020. Plaintiffs' originally filed its Complaint on or about July 2, 2020. Motions to Dismiss were filed by Defendants, and Complaint was ultimately withdrawn, giving rise to the filing of the Amended the Complaint at bar.

At its core, the Amended Complaint in this matter alleges violations of the Fair Housing Act, equal protection under the 14th Amendment, and that the actions by the municipal defendants/state actors denied plaintiffs substantive and procedural due process under color of state law in violation of 42 U.S.C.§ 1983. However, as set forth below, the Amended Complaint fails to allege sufficient facts to state any claim for which relief may be granted and Plaintiffs' claims are barred by the applicable statute of limitations.

Plaintiffs' baseless allegations run far afield of the actual facts that surround their application and the surrounding events that give rise to this complaint. Plaintiffs' attempts to create a narrative of unlawful discriminatory conduct, prejudice and unscrupulous tactics is nothing more than conjecture, mischaracterizations and baseless accusations unsupported in the record and in the law. Plaintiffs six count Amended Complaint alleges violations of the Fair Housing Act, Title VII of the Civil Rights Act of 1968, violations of 42 U.S.C. §§ 3601-3619 ("FHA"), 42 U.S.C. §§1983 and 1988, and the United States Constitution. Plaintiffs also allege state law claims.

Plaintiffs claim that its allegations of race based discrimination are supported by a handful of Mayor Tomko's comments at a Planning Board hearing in response to Plaintiffs' expert who opined that the seventy-three affordable housing units at the development would produce only 13 school aged children an estimated 1% of the K-12 population (Amended Complaint ¶¶ 79-83).  Yet, none of the comments referenced by Plaintiffs from either its own expert, members of the Planning Board or Mayor Tomko reference race at all (Amended Complaint ¶¶ 79-86).  Further, these alleged statements took place in 2017 and are thus barred by the statute of limitations.

The Third Count of the Amended Complaint alleges Mayor Tomko, members of the Planning Board, Defendant Siek and Defendant Assenheimer acted under

color of State law and denied Plaintiffs equal protection of the law in allegedly perpetuating a policy of racial and familial discrimination (Amended Complaint ¶¶ 178-82). However, none of the actions attributed to any of the individual defendants even suggest racial and/or familial discrimination. Defendants Siek and Assenheimer, the Boroughs former tax collectors, had no involvement in Plaintiffs' application whatsoever, and only served for a limited time encompassing the events alleged.

In the Fourth Count of the Amended Complaint, Plaintiffs allege that the Defendants violated Plaintiffs substantive due process rights in violation of § 1983. The claims stem from a dispute over unpaid municipal property taxes. Plaintiffs, by their own admission, failed to pay these taxes when due from 2016 through 2018 (Amended Complaint ¶ 136) resulting in the accumulation of fines, penalties and liens.

The Amended Complaint alleges that the Borough and its certified Tax Collector, Defendant Dorothy Siek failed to provide Plaintiffs with a notice of its delinquency (Amended Complaint ¶ 139). Further, Plaintiffs allege that the Borough's current Certified Tax Collector, Defendant Christopher Assenheimer has not provided proof that the notice of the tax sale was mailed to New Wallington Home or posted in public places (Amended Complaint ¶145). Siek, retired from the Borough in April of 2019. Defendant Assenheimer was only employed as that Tax

Collector from May 2019 to December 31, 2020.   Despite Plaintiffs contention that these actions were done in retaliation to Plaintiffs' actions regarding inclusionary development (Amended Complaint ¶ 162), they cannot maintain any of the pled causes of action as a matter of law. Defendants submit that there is no factual or legal support for the allegations set forth in the Amended Complaint

Plaintiffs' site plan was ultimately approved after the appeal of the initial denial.   Plaintiffs can proceed with their construction.   Instead, they attack and mischaracterize testimony and provide statistics in a vacuum without any legal support whatsoever. As set forth below, Defendants submit that none of the Federal claims alleged in Plaintiffs' Amended Complaint can be maintained as a matter of law. Further, this Court should decline to consider the tax related claims on the basis of statutory federal law and the principles of comity. Plaintiffs have access to a plain, speedy, and efficient forum in the Superior Court of New Jersey to pursue those claims.

Finally, the Complaint fails to plausibly plead conscience shocking behavior on Defendants' part, either through egregious conduct or denial of a fundamental right to support the substantive due process claims.

In the absence of viable federal claims, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining common law claim. The

Complaint should be dismissed. Plaintiffs can pursue any remaining, potentially viable remedies in state court.

## RELEVANT STATEMENT OF FACTS

1.     Plaintiff, Morningside, is a New Jersey limited liability company with its principal place of business at 27 Horseneck Road, Suite 301, Fairfield, New Jersey. Morningside is the fee simple owner of a 3.687-acre parcel designated on the Borough's Municipal Tax Map as Lot 35.01, Block 71 (the "Morningside Property"). The Morningside Property is situated along Main Avenue in Wallington and is contiguous to the New Wallington Home Property (Exhibit "A" at ¶ 16).

2.     Plaintiff, New Wallington Home, is a New Jersey limited liability company with its principal place of business located at 27 Horseneck Road, Suite 301, Fairfield, New Jersey. New Wallington Home is the successor in interest to the Wallington Group. New Wallington Home is the present owner of the New Wallington Home Property (Exhibit "A" at ¶ 17).

3.     Defendant, Borough of Wallington Planning Board, is a quasi-judicial body having an address at 24 Union Boulevard, Wallington, New Jersey. The Board was created by the Borough and is vested with authority under the New Jersey Municipal Land Use Law, N.J.S.A. 40:55D-1, *et seq.* ("MLUL") to, among other things, conduct site plan review and approval (Exhibit "A" at ¶ 18).

4.     Defendant, Borough of Wallington, is a municipal corporation having an address at 24 Union Boulevard, Wallington, New Jersey (Exhibit "A" at ¶ 19).

5.     Defendant, Mark W. Tomko, is the former Mayor of the Borough and is being sued in his official capacity. He served as Mayor until 12/31/19 (Exhibit "A" at ¶ 20).

6.     Defendant, Dorothy B. Siek, is the former Certified Tax Collector of the Borough and is being sued in her official capacity. She retired in April of 2019 (Exhibit "A" at ¶ 21),

7.     Defendant, Christopher Assenheimer, is the former Certified Tax Collector of the Borough, having immediately succeeded Siek, and is being sued in his official capacity as Certified Tax Collector of the Borough of Wallington.  He served in this position from May 2019 to December 31, 2020 (Exhibit "A" at ¶ 22).

8.     In 2006, New Wallington Home's predecessor, the Wallington Group, commenced affordable housing litigation against the Borough in the matter entitled *The Wallington Group, LLC, and Morningside at Wallington, LLC v. Borough of Wallington, et al.*, in the Superior Court of New Jersey, Bergen County, Law Division, Docket No. BER-L-373-06 (the "Builder's Remedy Litigation") (Exhibit "A" at ¶ 41).

9.     In the Builder's Remedy Litigation, the Wallington Group sought: (a) a declaration that the Borough had not met its affordable housing obligations under the NJFHA and COAH; (b) a builder's remedy requiring the Borough to rezone the New Wallington Home Property to permit multi-family residential use; and (c) an order directing that the Wallington Group's inclusionary development application be "fast tracked" (Exhibit "A" at ¶ 42)

10.    Morningside intervened in the action and participated with the Wallington Group in seeking the same relief for its property, which is contiguous to the New Wallington Home Property (Exhibit "A" at ¶ 43).

11.    Ultimately, the court, in the Builder's Remedy Litigation, entered an Order declaring the land use controls and zoning ordinances of the Borough of Wallington as being "invalid," and "not in compliance with the requirements of the New Jersey State Constitution, the Mount Laurel Doctrine, the [New Jersey] Fair Housing Act and the New Jersey Council on Affordable Housing." (The "Invalidation Order"). (Exhibit "A" at ¶ 44).

12.    Through a subsequent Order, the Superior Court required the Borough to zone the lands in question for residential, multi-family use, and also required that certain of the multi-family units be restricted to low- and moderate-income families (the "Builder's Remedy Order") (Exhibit "A" at ¶ 45).

13.    The award of the builder's remedies to the Wallington Group and Morningside was then codified by a Final Order approving the rezoning of the lots in question by creation of the Planned Residential – Mt. Laurel Zone ("PR-ML Zone") applicable to these lots (Exhibit "A" at ¶ 47).

14.    In 2015, New Wallington Home became the successor to the Wallington Group and purchased its property (Exhibit "A" at ¶ 49).

15.    Shortly thereafter, New Wallington Home submitted an application to the Planning Board for approval of the development of 134 multi-family residential dwelling units, including 27 affordable housing units (Exhibit "A" at ¶ 50).

16.    The application was deemed incomplete by the Planning Board. It was determined that New Wallington Home's application would not be complete until a simultaneous filing of Morningside's site plan application (Exhibit "A" at ¶ 51).

17.    New Wallington Home filed a verified complaint and order to show cause seeking to require the Planning Board to deem New Wallington Home's application complete ((Exhibit "A" at ¶ 54).

18.    The Planning Board entered into a consent order with New Wallington Home acknowledging that the New Wallington Home and Morningside properties could be developed separately (Exhibit "A" at ¶ 55).

19.    The initial public hearing on New Wallington Home's application was held on July 15, 2014. The Planning Board conducted additional hearings on September 16, 2014, and October 21, 2014, culminating in a resolution entered on October 21, 2014, denying the New Wallington Home application (Exhibit "A" at ¶ 58).

20.    Subsequently, New Wallington Home appealed the Planning Board's denial of its site plan application. This resulted in the Superior Court reversing the Planning Board's denial in a decision entered on April 22, 2015. The Superior Court ordered a limited remand to permit the Planning Board to consider three narrow issues (Exhibit "A" at ¶ 59).

21.    On April 19, 2016, following the Superior Court's ruling of March 2, 2016, that New Wallington Home's development application was fully approved by the Planning Board (Exhibit "A" at ¶ 62).

22.    In 2016, following the Planning Board's approval of New Wallington Home's application, Morningside prepared a site plan to implement its affordable housing builder's remedy (Exhibit "A" at ¶ 64).

23.    Morningside submitted its revised site plans on February 21, 2017 (Exhibit "A" at ¶ 69).

24.   The Planning Board held hearings on May 16, July 18, September 19, and December 19, 2017, to consider Morningside's site plan application (Exhibit "A" at ¶ 70).

25.   The Planning Board's initial hearing was held on May 16, 2017. Plaintiffs allege that then-Mayor Tomko expressed concern about "the estimation of children coming out of this development for our schools," indicating, "that's a $65,000 question that is on the minds of a lot of people, what it is, we're burdened right now and where are we going to go from here with the added, added enrollment" (Exhibit "A" at¶ 72).

26.   At the same May 16, 2017 meeting Mayor Tomko allegedly added, "I know you got some one-bedroom but we know a one-bedroom could fill up a few people too. Okay" (Exhibit "A" at ¶ 73).

27.   At the following hearing on September 19, 2017, Morningside's expert followed up on the issue of the estimated number of children that the development would produce, stating that she "pull[ed] up some additional Rutgers numbers, and there is a study that shows public schoolchildren generated from transit-oriented development and a number of these – there's about ten projects that are listed, and most of them are from West New York" (Exhibit "A" at ¶ 87).

28.   Mayor Tomko allegedly opined: "I only foresee things getting worse with, with more development and more people coming in. That's just my opinion" (Exhibit "A" at ¶ 90).

29.   The Planning Board ultimately denied the application and its denial was memorialized by written resolution at a meeting on January 16, 2018 (Exhibit "A" at ¶ 102).

30.   Following their application denials, Morningside and New Wallington Home filed a renewed action in lieu of prerogative writs against the Planning Board in the Superior Court of New Jersey alleging that the Planning Board's decision was arbitrary, capricious, and unreasonable (Exhibit "A" at ¶ 104).

31.   The court held a hearing and thereafter granted all approvals requested in the site plan applications of New Wallington Home and Morningside (Exhibit "A" at ¶ 107).

32.   By its own admission, New Wallington Home withheld property tax payments that were assessed against the New Wallington Home Property by the Borough in 2016 through 2018 (Exhibit "A" at ¶ 136).

33.   According to the Amended Complaint, Plaintiffs allege that with regard to the 2016-2018 taxes, the Borough and its then-Certified Tax Collector, Defendant, Dorothy Siek ("Siek"), failed to provide any notice to New Wallington Home that the taxes were delinquent (Exhibit "A" at ¶ 141).

34.   Plaintiffs further allege that despite their demand, Siek was "unable or unwilling to provide proof that any of the notices of delinquency or the notice of tax sale were mailed to, delivered to, or received by New Wallington Home" (Exhibit "A" at ¶ 142).

35.   Then, the Borough issued tax certificate #17-016 regarding New Wallington Home's unpaid property taxes. This lien was assessed upon the property by the Borough and constitutes a cloud on title (Exhibit "A" at ¶ 143).

36.   Plaintiffs further allege that the Borough's former Certified Tax Collector, Defendant Assenheimer, has not supplied any evidence that the notice of the tax sale was mailed to New Wallington Home or posted in public places, despite repeated request for same (Assenheimer was employed by the Borough from May 2019 to December of 2020) (Exhibit "A" at ¶ 145).

37. Plaintiffs' Amended Complaint, asserts the following causes of action:

> First Count – Violation of Fair Housing Act – Disparate Treatment
>
> Second Count – Violation of Fair Housing Act – Disparate Impact
>
> Third Count - 42 U.S.C. 1983, et seq. – Equal Protection
>
> Fourth Count -42 U.S.C. 1983, et seq. - Substantive Due Process
>
> Fifth Count – 42 U.S.C. 1983, et seq. – Procedural Due Process
>
> Count Six – Unjust Enrichment

38.   Defendants now move to dismiss Plaintiffs Amended Complaint in its entirety.

## LEGAL ARGUMENT

**I.     THE COURT SHOULD DISMISS THE FIRST AND SECOND COUNTS OF THE COMPLAINT AS PLAINTIFF HAS FAILED TO SET FORTH A CLAIM FOR DISPARATE TREATMENT AND/OR DISPARATE IMPACT UNDER THE FAIR HOUSING ACT.**

### A. Disparate Treatment Under FHA.

In count one of Plaintiffs complaint, they allege disparate treatment under the Fair Housing Act.  Plaintiffs' complaint fails to set forth any basis for maintaining such a claim. To advance a claim of disparate treatment under the Fair Housing Act, the Plaintiff must show evidence of discriminatory purpose motivating the action. *Cmty Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005).  As such, Plaintiff must show that a protected characteristic played a role in the Defendant's decision. *Id.*  Plaintiff's complaint has failed to set forth such a basis for its complaint.  Plaintiffs' bases for its allegations of racial discrimination hinge on a handful of comments made at Planning Board meetings in 2017.  Not only are these statements outside of the two year statute of limitations period, the comments referred to by Plaintiffs do not even mention race, members of a protected class or any racial animus whatsoever (Exhibit "A" at ¶¶ 79 – 103).  Instead, the comments referenced by Plaintiffs clearly reference concerns over population density. *Id.* Plaintiff merely bootstraps statistics to these statements to create an illusion of racial

animus without any basis in fact.  The fact that the population of the Borough has a "disproportionate number of whites" does not on its face impute racism or discriminatory conduct. Plaintiffs' accusations that the statistics alone illustrate the Boroughs "pervasive, intentional discrimination" is conclusory, baseless and unsupported as a matter of fact and law. Simply, none of the facts plead by Plaintiffs show any discriminatory motivation whatsoever and fail to satisfy not only the requirements of a *prima facie* case of discrimination under the FHA, but also fails to meet the plausibility standards under *Twombly* and *Iqbal*.  Further, as discussed below, the comments allegedly made by Mayor Tomko occurred in May of 2017. Plaintiffs' Amended Complaint was filed in December of 2020, outside the two year statute of limitations set forth for claims made under 42 U.S.C. § 1983 and the Fair Housing Act.   Additionally, the comments made clearly were addressing overcrowding and population density and have no discriminatory animus whatsoever. Therefore, the Court should dismiss the First Count of the Amended Complaint.

**B. <u>Disparate Impact under Fair Housing Act</u>.**

Similarly, Plaintiffs cannot maintain a claim for disparate impact under the Fair Housing Act, and this claim should also be dismissed as a matter of law. In order to maintain a claim for disparate impact under the Fair Housing Act, the plaintiff must show that the complained of action had a discriminatory effect, was

because of a protected class, or whether the action disproportionately burdened a particular racial group so as to cause a disparate impact….Plaintiff must show that the action had a "greater adverse impact on the protected groups than on others." *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F. 3d 442, 466-467 (3d Cit. 2002). The elements of a prima facie case of disparate impact have identified as: (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices" *Id*.

When a plaintiff cannot point to a policy of the defendant that caused a disparate impact and merely relied on statistical disparity, the claim for disparate impact must fail. *Tex. Dep't of Hous & Cmty.Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 542 (2015). "A robust causality requirement ensures that 'racial imbalance...does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." *Id*, *citing*, *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989).

Here, any alleged disparate impact is based on speculation as no disparate impact or any impact has occurred as no development has occurred. Plaintiffs have not provided any survey of who was affected by the Borough's policies, no census data, no charts or graphs showing any disparate impact on any protected class. Simply, Plaintiffs argue what could happen and its allegation is based solely on

speculation, not facts.  Not only does Plaintiffs' Amended Complaint fail to set forth a *prima facie* case of disparate impact, but also fails the plausibility requirements under *Twombly* and *Iqbal.* Therefore, the Court should dismiss Plaintiff's the Second Count of the Amended Complaint for failure to state a claim for which relief can be granted.

**II.     PLAINTIFF'S COMPLAINT FAILS TO STATE CAUSE OF ACTION UNDER 42 U.S.C. §1983 FOR VIOLATIONS OF II. THE EQUAL PROTECTION CLAUSE BECAUSE PLAINTIFF'S COMPLAINT IS BASED ON MERE SPECULATION.**

Plaintiff's Amended Complaint has failed to set forth a cause of action to maintain a claim under 42 U.S.C. §1983 for alleged violations of the equal protection clause of the 14th Amendment. 42 U.S.C. does not create substantive rights, but provides only remedies for deprivations of rights established in the Constitution or elsewhere in federal laws.  *Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996). Under 42 U.S.C. § 1983, a plaintiff must plead that he was deprived a constitutional right and that the deprivation of the constitutional act was caused by a person acting under color of state law.  *Id*. Here, Plaintiffs allege a violation of 42 U.S.C. §1983 based on racial discrimination (Exhibit A at ¶¶178-184). To state a traditional equal protection claim, a plaintiff (i) must allege facts showing the existence of purposeful discrimination; and (ii) must demonstrate that they received different treatment from that received by other individuals similarly situated. *Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. of Educ.*, 587 F.3d 176, 196

(3d Cir. 2009).   Since proof of discriminatory intent is required to show a violation of the Equal Protection Clause, plaintiffs must do more than speculate on discriminatory intent or purpose.   *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

In this matter, Plaintiff's alleged that Defendant Mayor Tomko, members of the Planning Board, Defendant Siek and Defendant Assenheimer acted under color of law and perpetuated discriminatory actions against them.   However, Plaintiff's complaint does not allege any facts at all that show the existence of purposeful discrimination or discriminatory intent whatsoever.   The claims against Mayor Tomko are based a limited number of innocuous comments regarding overcrowding. These statements do no rise to the level of discriminatory intent or purposes as a matter of law. Further, with respect to Defendant Siek, Plaintiffs merely contend that Defendant Siek failed to provide any notice to New Wallington Home that taxes were delinquent.   At most, this may show dereliction of duty, but does not show purposeful discrimination or intent. Further, as Tax Collector, neither Defendants Siek nor Defendant Assenheimer have any involvement in decisions of the Planning Board of governing body.

Count Three of the Complaint also fails to state a claim for with relief can be granted because Plaintiffs have failed to allege with plausible particularity that it has been treated differently from other redevelopers or that, even it has been subject to

any such treatment that the Defendants did not have a legitimate interest in doing so. As a result of the foregoing, Plaintiffs claims under 42 U.S.C. § 1983 should be dismissed pursuant to *Fed. R. Civ. P.* 12(b)(6).

### III. COMITY AND THE TAX INJUNCTION ACT OF 1937 MANDATE DISMISSAL OF THE TAX BASED CLAIMS IN THE FOURTH AND FIFTH COUNTS BECAUSE PLAINTIFFS CAN OBTAIN A PLAIN, SPEEDY, AND EFFICIENT REMEDY IN NEW JERSEY STATE COURT,.

The Tax Injunction Act of 1937 (the "TIA") prohibits federal courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Act "embodied Congress' decision to transfer jurisdiction over a class of substantive federal claims from the federal district courts to the state courts, so long as state-court procedures were 'plain, speedy and efficient.'" *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 515 n.19 (1981).

While the TIA only prohibits declaratory relief in state tax cases, *Hardwick v. Cuomo*, 91 F.2d 1097, 1104 (3d Cir. 1989), the Supreme Court has held that the principle of comity supplements the TIA and bars federal courts from awarding monetary damages in state tax disputes. *McNary*, 454 U.S. at 107.

In *McNary*, the Supreme Court reasoned that permitting § 1983 suits challenging the validity of state tax assessments "would intrude on the enforcement

of the state [taxation] scheme" and have a "chilling effect" on officials enforcing the tax laws. *McNary*, 454 U.S. at 114-15. Echoing the requirements of the TIA, the Court declared that such suits must be brought in state court so long as the state's remedies "are plain, adequate and complete." *Id.* at 116.

The exceptions to the rule barring federal courts from asserting jurisdiction over state tax disputes are narrow. *California v. Grace Brethren Church*, 457 U.S. 393 (1982). The Third Circuit has set a high bar. "[T]he critical criterion as to the adequacy of the remedy available to the taxpayers is not the relief which they can obtain in [the State] proceedings, but whether [the State] provides a forum for presentation of their claims." *Hardwick*, 891 F.2d at 1106.

Plaintiffs have a forum for presentation of their claims in the Superior Court of New Jersey, Law Division to pursue an action in lieu of prerogative writs. The Amended Complaint alleges that the Borough failed to adhere to the requirements of state law in imposing the tax lien, enforcing it, and collecting interest and penalties as a result (Exhibit "A" at ¶¶ 132-163). *See, De Hart v. Bambrick*, 177 N.J. Super. 541, 546 (App. Div. 1981); *N.J. Ct. R.* 4:69. Thus, the Court must decline jurisdiction over Plaintiffs' state tax claims because the state gives it a procedure by which to have its claims heard and obtain a "plain, adequate, and complete remedy." *McNary*, 454 U.S. at 116. The Third Circuit has affirmed a district court's dismissal of a § 1983 claim against employees of the Division of Taxation on precisely that basis in

*Reagle v. Elliott*, 80 Fed. Appx. 737, 738 (3d Cir. 2003). The availability of the specific remedy sought is not relevant. *Frybarger v. N.J. Dep't of the Treasury*, 2006 U.S. Dist. LEXIS 93365, *8, 2006 WL 3827331 (D.N.J. December 27, 2006). As such, the claims asserted must be dismissed.

IV.   **NONE OF THE CONDUCT ALLEGED IN THE COMPLAINT RISES TO THE "SHOCKS THE CONSCIENCE" LEVEL REQUIRED TO ALLEGE A SUBSTANTIVE DUE PROCESS CLAIM; THEREFORE, THE FOURTH COUNT SHOULD BE DISMISSED**

In *County of Sacramento v. Lewis*, 523 U.S. at 847 the Supreme Court ruled that the substantive due process standard depends on whether the plaintiff is challenging legislative action or executive action and, if the challenge is to executive action, the type of executive action. When, as in *County of Sacramento*, the challenge is to executive action, the question is whether the government action is shocking to the judicial conscience. *See also Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992).

"What shocks the conscience is only the most egregious official conduct." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004) (*quoting UA Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003)) (internal quotations omitted). The test is "not precise" and "varies depending on the factual context." *Id.* (*citing County of Sacramento v. Lewis*, 523 U.S. at 847 and *United Artists*, 316 F.3d at 400). The Third Circuit has indicated that "corruption or

self-dealing" or "some bias against an ethnic group" may shock the conscience. *Id.* at 286. However, "merely negligent or sometimes contentious performance of official duties … does not shock the conscience" *Button,* 679 F. App'x at 154. Nonetheless, the standard is sufficiently high to "avoid converting federal courts into super zoning tribunals." *United Artists*, 316 F.3d at 402 (3d Cir. 2016). The Third Circuit has cautioned that in land-use cases "not…every violation of state law [should be] 'constitutionalized' through the application of the substantive due process clause, and District Court[s] [should be] properly concerned with preventing this provision from turning into a broad authorization to review state actors' compliance with state law." *Whitaker v. County of Lawrence*, 437 App'x 105, 108-109 (3d Cir. 2011). "Indeed, the Third Circuit has held that inconsistent application of zoning requirements, delaying permits and approvals, improperly increasing tax assessments, and maligning and muzzling a property owner, without more, is not the type of behavior that shocks the conscience." HR Greenville Fine Dining, Inc. v. Borough of Bay Head, 2011 U.S. Dist. LEXIS 145447, 50 (D.N.J. 2011).

Here, Plaintiffs Amended Complaint fails to plausibly plead factual allegations of conscience shocking conduct. While the Amended Complaint alleges certain statements made during Planning Board hearings were motivated by racial discrimination (Exhibit "A" at ¶¶ 79-103), the allegations amount to nothing more than baseless conclusions that are not entitled to consideration under *Connelly.*

There is no reason for this Court to conclude that the Borough's enforcement of its tax policy, Defendant Siek's alleged failure to notice of delinquent taxes, or Defendant Assenheimer's alleged failure to provide evidence that the notice of the tax sale was mailed to Plaintiffs is motivated by some amorphous racial bias because minorities have low incomes and reside in low income housing that Plaintiffs want to build (Exhibit "A" at ¶¶ 67, 78-83). Plaintiffs have not plausibly pleaded any facts to support this, nor have they alleged any corruption or self-dealing by any Borough official that would amount to conscience shocking behavior. Moreover, with respect to Defendant Assenheimer, Plaintiffs' Amended Complaint must be dismissed because Defendant Assenheimer only served as the Tax Collector for the Borough from May 2019 to December 31, 2020 and was not responsible for any tax lien, tax certificate or cloud on Plaintiffs' property. Since Plaintiffs have failed to plead any conscience shocking behavior, the then Plaintiffs have failed to state a claim for which relief can be granted. Therefore, the Court should dismiss the Count Four of Plaintiffs' Amended Complaint.

## V. PLAINTIFF FAILED TO STATE A CLAIM THAT THEY WERE DENIED PROCEDURAL DUE PROCESS IN VIOLATION OF THE DUE PROCESS CLAUS OF THE FOURTEENTH AMENDMENT; THEREFORE, COUNT FIVE OF THE AMENDED COMPLAINT SHOULD BE DISMISSED.

To set forth a claim of a deprivation of procedural due process, the plaintiff must show "(1) that it was deprived of an individual interest that is encompassed within

the Fourteenth Amendment's protection of life, liberty and property and (2) that the procedures available to it did not provide due process of the law." *Scmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011). "A state furnishes constitutionally adequate procedural due process when it provides reasonable remedies to correct a legal error by an administrative body. *John E. Long, Inc. v. Borough of Ringwood*, 61 F.Supp. 2d 273, 279 (D N.J. 1998). Where a state provides "…full judicial process in which a party may challenge the administrative decision in question, the state has provided adequate procedural due process whether or not the aggrieved party has availed itself of the provided appeal process." *Id.* As set forth above, Plaintiffs' Complaint alleged that the Borough failed to provide not and an opportunity to be heard in violation of the Due Process Clause of the Fourteenth Amendment, whereby imposing a tax lien, enforcing it, and collecting interest and penalties. However, Plaintiffs were not without adequate due process of the law. Plaintiffs could have pursued an action in lieu of prerogative writ where these claims can be litigated. *See, De Hart,* 177 N.J. at 546 (App.Div. 1981); *N.J. Ct. R. 4:69.* Accordingly, Plaintiffs were not deprived due process of the law, but failed to avail itself of the remedies afforded by the State of New Jersey. Therefore, Plaintiffs have failed to state a claim for Procedural Due Process and Count Five of the Amended Complaint should be dismissed.

## VI.   AS MUNICIPAL ENTITIES, DEFENDANTS HAVE ABSOLUTE IMMUNITY FROM PUNITIVE DAMAGES UNDER § 1983. CLAIMS FOR PUNITIVE DAMAGES IN THE FIRST AND SECOND COUNTS SHOULD BE DISMISSED

In *City of Newport*, 453 U.S. 247 (1981), the Supreme Court held that punitive

damages cannot be awarded against a municipal entity. The Court found that

municipal entities are immune from punitive damages under § 1983 finding that:

> considerations of history and policy do not support
> exposing a municipality to punitive damages for the bad-
> faith actions of its officials. Because absolute immunity
> from such damages obtained at common law and was
> undisturbed by the 42d Congress, and because that
> immunity is compatible with both the purposes of § 1983
> and general principles of public policy, we hold that a
> municipality is immune from punitive damages under 42
> U. S. C. § 1983.

*Newport,* 453 U.S. at 271,

This absolute immunity applies to the Borough here. Plaintiffs cannot recover

the punitive damages sought in Counts One and Two. At a minimum, those aspects

of those counts should be dismissed.

## VII.   PLAINTIFFS' CLAIMS ARE BARRED BY THE TWO YEAR STATUTE OF LIMITATIONS

Plaintiffs' specific claims focus on comments allegedly made by Mayor

Tomko in May and July of 2017 during hearings before the Planning Board and on

the issuance or failure to issue tax notices for delinquency.  Plaintiff's Amended

Complaint was filed on December 7, 2020. Actions filed under 42 *U.S.C.* § 1983 are

governed by the limitations periods applicable to the state's personal injury claims. *Id.* The statute of limitations in New Jersey for personal injury claims is two years. *Id. citing N.J.S.A.* 2A:14–2.  As such, any claims for alleged civil rights violations may only be predicated on conduct on or after December 7, 2018; and, thus, any conduct prior to December 7, 2018 is irrelevant and cannot be the basis for Plaintiffs' civil rights claims.  Clearly the conduct complained of occurred at the July and September 2017 meetings and are outside the limitations period and must be dismissed as a matter of law.

Similarly, Plaintiffs claims are barred by the two year statute of limitations under the Fair Housing Act. The statute of limitations for claims under the FHA, ADA, Section 504 of the Rehabilitation Act and § 1983 is two years. *See* 42 U.S.C. § 3613(a)(1)(A) (FHA claim); *Disabled in Action v. SEPTA,* 539 F.3d 199, 208 (3d Cir. 2008) (claims under Title II of the ADA and Section 504); *Cost v. Kozakiewicz,* 1 F.3d 176, 190 (3d Cir. 1993).The alleged comments made by Mayor Tomko and other Borough officials occurred at either the May 16, 2017 or the July 18, 2017 meeting. (Exhibit "A" at ¶¶ 71,72, 83).  Therefore, Plaintiffs' claims are barred by the Statute of Limitations and must be dismissed as a matter of law.

## VIII.   THE STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to *Fed. R. Civ. P.* 12 (b)(6), a court must accept all well-pleaded allegations in the complaint as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).

Under *Fed. R. Civ. P.* 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Rule* 8 does not require "detailed factual allegations," but does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 557.

In *Twombly*, the Supreme Court clarified the *Fed. R. Civ. P.* 12(b)(6) standard. Specifically, the *Twombly* Court "retired" the language contained in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550

U.S. at 546 (quoting *Conley*, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 548.

Under *Twombly*, a civil complaint must go beyond providing mere notice — it must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (2007). As observed by one commentator: "Notice pleading is dead. Say hello to plausibility pleading." A. Benjamin Spencer, *Plausibility Pleading*, 49 B.C.L.Rev. 431, 431-32 (2008).

As the Supreme Court explained in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Twombly*, 550 U.S. at 555 (citations omitted). Therefore, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 548.

In explaining what "plausibility" means, the Court said, as to claims asserted under Rule 8, that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009).

Regarding each of the claims under 42 U.S.C. §1983, Plaintiffs must allege (1) that some "person" has deprived it of a federal right; and (2) the "person" was acting under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Upon identifying the person acting under color of law that caused an alleged deprivation of rights, Plaintiffs must next identify the "right, privilege or immunity secured to the claimant by the Constitution or other federal laws." *Rivkin v. Dover Twp. Rent Leveling Bd.*, 143 N.J. 352, 363, cert. denied, 519 U.S. 911 (1996). "This second step is necessary because § 1983 'is not itself a source of substantive rights,' but merely provides 'a method [for] vindicating federal rights elsewhere conferred.'" *Id.* (internal citation omitted).

The Third Circuit has prescribed three steps that district courts must take to determine if a complaint is sufficient under *Twombly* and *Iqbal*. First, the court must take note of the elements the plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations and internal quotations omitted).

In the instant case, Plaintiffs fail to meet this pleading standard as to both of their Fair Housing Act claims in Counts One and Two as well as there claims under

29

42 U.S.C §1983 . The bulk of their "claims" are nothing more than inuendo and conclusionary assertions about the malicious intentions of governmental bodies which is not entitled to an assumption of truth.[1] The few well-pleaded factual allegations fail to state a claim. Therefore, the Court should dismiss the Plaintiffs' Amended Complaint.

Plaintiffs bare allegations against the Borough fail to include the required elements for municipal liability under § 1983 or adequately plead any policy or procedure to create liability on the part of the Borough itself. See, *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir. 1990). The claims related to the Borough's tax policy and activity are not properly before this Count based on federal law and the principles of comity. See, *Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100, 107 (1981).  In addition, none of the conduct alleged by Plaintiffs meets the "shocks the conscience" level required for a substantive due process claim. See, *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Plaintiffs' claims are also barred by the statute of limitations. Finally, claims for punitive damages cannot be asserted against a public entity. See, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

---

[1] "[A] public corporation, such as a city or other public body, by reason of its being an artificial legal entity created by law to perform limited governmental functions, cannot entertain malice, as a public corporation. *O'Connor v. Harms*, 111 N.J. Super. 22, 26 (App. Div. 1970)

## <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully submitted that this Court dismiss Plaintiffs' Complaint in its entirety as to all Defendants as Plaintiffs have failed to articulate any basis in law to substantiate the claims set forth in the Amended Complaint.

Respectfully submitted,
PFUND MCDONNELL, P.C.
Attorneys for Defendants,
Borough of Wallington Planning Board

MARY C. MCDONNELL

Dated:       February 1, 2021