

**JAMES DIGIULIO**
jdigiulio@oslaw.com

January 6, 2026

<u>**Via CM/ECF**</u>
Hon. Evelyn Padin, U.S.D.J.
United States District Court, District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Courtroom MLK 4C
Newark, New Jersey 07101

      Re:    New Wallington Home, LLC, et al. v. Borough of Wallington, et al.
               Civil Case No.: 20-08178 (EP) (AME)

Dear Judge Padin:

      This firm represents Plaintiffs, New Wallington Home, LLC and Morningside at Wallington, LLC, in this matter. Discovery is now complete and pursuant to a January 5, 2026, Text Order from Magistrate Judge Espinosa and Your Honor's Judicial Preferences, Plaintiffs respectfully request leave to file a motion for summary judgment and for any related pre-motion conference, if deemed necessary by the Court.

      Plaintiffs believe the filing of dispositive motions at this time is appropriate because the parties have previously participated in settlement discussions on multiple occasions, including attending a settlement conference before Magistrate Judge Edward S. Kiel, on November 23, 2021, two mediation sessions before the Hon. Robert P. Contillo, P.J. Ch. (Ret.) in November 2022, and two settlement conferences before Judge Espinosa, the last of which occurred on April 17, 2025. Despite the parties participating in numerous settlement negotiations in good faith, the parties have been unable to resolve this matter.

      As a result, Plaintiffs respectfully seek leave to file a motion for summary judgment against Defendants on all counts. Plaintiffs have alleged six counts against Defendants, alleging: (i) violations of the Fair Housing Act, 42 U.S.C. § 3601 et seq., based on intentional discrimination (disparate treatment); (ii) violations of the Fair Housing Act based on unjustified disparate impact; (iii) denial of equal protection in violation of 42 U.S.C. § 1983; (iv) violations of substantive due process in violation of 42 U.S.C. § 1983; (v) violations of procedural due process in violation of 42 U.S.C. § 1983; and (vi) unjust enrichment.

      "'The Fair Housing Act . . . passed by Congress as Title VIII of the Civil Rights Act of 1968, prohibits housing discrimination on the basis of, inter alia, race, gender, and national origin. *431 E. Palisades Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 283 (3d Cir. 2020). A

Hon. Evelyn Padin, U.S.D.J.
January 6, 2026
Page 2

plaintiff may bring a claim under the FHA for unlawful discriminatory housing practices under three legal theories: disparate treatment, disparate impact and failure to reasonably accommodate. *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 448 (3d Cir. 2002). Plaintiffs seek leave to move for summary judgment on two types of claims pursuant to the FHA: (1) intentional discrimination claims (also called disparate treatment claims) and (2) disparate impact claims. Plaintiffs further seek leave to move for summary judgment on their Equal Protection claims under the Fourteenth Amendment of the United States Constitution.

§ 3604 of the FHA requires only that a protected characteristic was a motivating factor in a housing related decision - plaintiffs need not show that the decision rested "solely, primarily, or even predominantly" into the motivation behind the challenged action. *See Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005); *see also Horizon House Developmental Servs., Inc. v. Upper Southampton*, 804 F. Supp. 683, 696 (E.D. Pa. 1992) ("In order to prove intentional discrimination it is not necessary to show an evil or hostile motive. It is a violation of the FHA to discriminate even if the motive was benign or paternalistic."). A plaintiff is only required to "show that a protected characteristic played a role in the defendant's decision to treat her differently." Id. (internal citations omitted). Courts assess such claims under the burden-shifting framework analogous to employment discrimination law: the plaintiff bears the initial burden to produce evidence of discriminatory intent; the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason; finally, the plaintiff may show that the proffered reason is pretextual and that discrimination was the real reason. Id. at 176-77.

From Plaintiffs' perspective, the liability issues are straightforward: the Borough has engaged in years of improper delay and denial of land use applications in an effort to block Plaintiffs' proposed 207-unit mixed-income development, which includes 42 affordable housing units. Specifically, the Borough has discriminated on the basis of race and familial status, two protected classes under the FHA. Plaintiffs have amassed overwhelming (indeed, largely uncontroverted) evidence that Defendants acted because of race and familial status, not for any legitimate purpose.

First, on four (4) occasions courts have already determined that the Borough's denials of Plaintiffs' land use applications were arbitrary, capricious and unreasonable, with no legitimate, non-discriminatory reason being offered. Most recently, the Superior Court held that the Planning Board's denial was "palpably unreasonable, and ipso facto arbitrary, unreasonable and capricious".[1]

Second, the discriminatory nature of these denials is supported by all available evidence. For example, in one instance, the Borough denied Plaintiffs' application because it would cause families with children to move into their town. In another extraordinary case, the Borough's officials openly referred to the "Mason-Dixon line" – a racially charged term - when describing Wallington as different from neighboring Bergen County municipalities. Plaintiffs can easily meet its burden of proving discriminatory intent, as required by the FHA.

---

[1] See Morningside at Wallington, LLC v. Borough of Wallington Planning Bd., No. BER-L-1670-18, slip op. at 8 (N.J. Super. Ct. Law Div. Jan. 16, 2019) (Farrington, J.S.C.).

Hon. Evelyn Padin, U.S.D.J.
January 6, 2026
Page 3

      In response, the Borough has failed to articulate a single legitimate, non-discriminatory reason for its decades of denials and delays. The Borough's corporate designee testified that she was unaware of any alternative basis for the repeated denials beyond those already rejected by the Court. The Borough's planning expert did not offer any alternative grounds either, instead she testified that she simply disagrees with the four prior court rulings that determined the denials had no legitimate basis of any kind.

      Plaintiffs' expert, Dr. Justin Steil of MIT, offers an opinion that very clearly sets forth the Borough's liability concluding that the "Borough of Wallington's actions perpetuate[d] residential segregation on the basis of race and den[ied] residents the benefits of living in an integrated community." Dr. Steil has further concluded, with greater than 99.99% certainty, that the expected composition of Plaintiffs' inclusionary development will be substantially more diverse compared to the current population of Wallington, which is roughly 70% white.[2] Accordingly, Dr. Steil has determined that the Borough's decade-long obstruction of this 207-unit mixed-income project "had a significant adverse impact in making housing unavailable on the basis of race and family status."

      Based on the foregoing, Plaintiffs seek leave to file a motion for summary judgment on their affirmative claims against Defendants as there is no material fact in dispute that could avoid a finding of liability against the Defendants. Plaintiffs are prepared to file their motion for summary judgment by no later than February 20, 2026, or such other date as determined by the Court.

      Thank you for your consideration of this matter.

                                      Respectfully submitted,

                                      */s/ James DiGiulio*
                                      James DiGiulio

cc: All Counsel of Record (via ECF)

---

[2] Every town bordering Wallington had a significantly lower white (non-Hispanic) population share; some with less than half the proportion of white residents than Wallington. U.S. Census Bureau, Data, census.gov, https://www.census.gov/data.html.