# EXHIBIT N

Resolution #18-326

# RESOLUTION

## FINDINGS OF FACT AND CONCLUSIONS OF THE WALLINGTON PLANNING BOARD

**WHEREAS, NEW WALLINGTON HOMES and MORNINSIDE AT WALLINTON, LLC** appeared before the Planning Board seeking site plan approval for property located at 551 Main Ave., and

**WHEREAS,** the board had previously heard testimony for the property owned by New Wallington Homes, LLC, located at Block 71, Lot 35.02, resulting in the approval of 134 apartment units plus accessory buildings, and

**WHEREAS,** Morningside at Wallington, LLC now applies for site plan approval for the adjacent lot, located at Block 71 Lot 35.01 for the approval of 73 additional units of apartments, plus accessory buildings and uses, and

**WHEREAS,** New Wallington Homes, LLC seeks to amend its prior approval to amend parking, traffic flow, and trash collection in light of the adjacent development, and

**WHEREAS** the Board, after carefully considering the evidence presented by the applicant has made the following factual findings:

1. The applicants were represented by Kevin Moore, Esq.

2. The applicants jointly presented testimony on four separate dates before the Board; May 16, 2017, July 18, 2017, September 19, 2017 and December 19, 2017.

3. The applicant Morningside at Wallington sought variances for Rear lot line setback, minimum separation between buildings on the property, Maximum

building height, permitting off street parking within 50 feet of Main Ave., Maximum building coverage, Maximum impervious ground coverage, Minimum open space requirements, buffer requirements along Al Ventura roadway and minimum buffer requirements along Main Ave. The applicant also sought waivers from certain technical requirements to be included on the site plans.

4. On May 16, 2017, Calisto Bertin, of Bertin Engineering, testified on behalf of the application. The applicants presented site plan drawing for Lots 35.01 and 35.02. Lot 35.01 currently is occupied by two masonry buildings, a skating rink, and the other a warehouse. This property fronts along Main Ave., and provides access to the street for both lots 35.01 and 35.02. Lot 35.02 is currently vacant. Lot 35.01 has a lot area of 159,028 square feet and Lot 35.02 has a lot area of 293,410 square feet. Conditional approval to the rear lot, 35.02 was granted on May 17, 2016.

Mr. Bertin prepared a Stormwater Drainage Analysis for the property dated March 24, 2017 and a Traffic Impact Study of the same date, for the Board's review.

5. The applicant seeks to amend the prior approvals for Lot 35.02. The prior approval was for the construction of five buildings, four of which are proposed apartment buildings, and one to be used as an office and community room nearest to Main Ave. The applicant now seeks to amend that approval for parking spaces, driveways and relocate the trash receptacles.

6. The applicant at Lot 35.01 seeks to demolish the existing warehouse nearest to Main Ave. and construct two new apartment buildings, one a 45 unit building, and one of 29 units. Parking would be provided underneath the building in

some instance. Further, the exising skating rink would be modified to be a multi-purpose recreational building for such purposes as a gym and yoga studio, however these would be limited only to residents who reside at Lot 35.01 buildings, and not for the residents of Lot35.02.

7. The project requires multiple bulk variances at Lot 35.01. The rear setback requirement of 25 feet is sought to be amended to 15 feet. The minimum separation between buildings is required to be 40 feet, and the applicant propses to shrink that to 35.1 feet. The maximum building height cannot exceed 45 feet, which the applicant seeks to exceed by 3.5 feet, at 48. 5 feet. The proposal would require a variance of total building lot coverage from 25% to 30.02%, Imperious lot coverage from 75% to 83.02%, and reducing the minimum open space from 30% to 17.1 %.

8. On July 18, Mr. Bertin resumed his testimony. Traffic flows had been amended so that ingress and egress to the site would now be one lane in each direction. Three parking spaces had been removed and the parking spaces rotated away from Main Ave.. As far as the roadway paralleling Al Ventura Road, it was made narrower from 24 feet to 18 feet and made into a one – way street, to permit for landscaping in that area for a buffer zone. Five feet was added to the landscaping area and a 6 foot privacy fence added so as to remove on required variance from the application. The drainage pit was changed to make it more accessible for maintenance. The lighting for the project was redesigned to LED lighting for better visibility. A hedgerow was added as a buffer between the front lot and Main Ave. Three trees were also added as more of a buffer along the front of the property. Mr.

Bertin also reviewed the pathways for any trucks in the site, such as firetrucks and garbage haulers.

9. Jack Raker, and Architect, was accepted by the Board as an expert to testify on behalf of the application.

10. Mr. Raker testified that concerning Building 6, referenced on Sheet A1, parking would be located on the ground floor along with an entrance lobby. Parking stalls would be a standard 9' by 18'. There would be 15 one bedroom apartments of between 750 – 800 square feet, and 15 2 bedrooms units of between 1170 – 1225 square feet. On Sheet A-2, a pitched roof would extend 49 3/8 feet in height. Sheet A-3 provided plans for 23 one bedroom units at market prices, and 3 one bedroom units for low income housing. This building, designated as Building 8, would have flat roof because of a 14 foot first floor elevation, and would extend 48 1.4 feet in height

11. Bridget Bogart, a Professional Planner, testified on behalf of the application. She testified that the existing rink would stay in the proposal. She admitted that most of the variances being requested were necessitated because of the rink remaining on the site. She admitted that four (4) of the variances, the ones for building length, open space, building coverage and lot coverage, would all be eliminated if the roller rink were removed and the project built without the unnecessary accessory building.

She testified that the Master Plan required the properties to be jointly developed, with 15 low income units provided. She opined that the developments' effect on the surrounding properties and the community would be an additional 5 to

11 schoolchildren being admitted to the school district. She opined that the she believed the plans as submitted were the most functional layout for the project,

12. On September 29, 2017, Calisto Bertin briefly reviewed and introduce a new parking restriction map. Ms. Bogart testified that the new plans would be an improvement because it would remove an encroachment on the right of way to Main Ave. Ms. Bogart testified that the project was a desirable one, because it provided for active recreation on the site, which was a goal of good planning. However, she did admit that the site as proposed would limit the requirements for open space. The Board was of the opinion that indoor recreational space did not meet the criteria for providing open space.

13. James Albro, Superintendent of Schools of Wallington testified. He stated that at no time was a request ever made to his office to determine how many school children emanated from multi unit apartment buildings in Wallington.

14. Joseph Smith, a member of the Wallington Board of Education, testified about the demand that would be placed upon Wallington's schools by this development.

15. Melissa Dabal, a member of the Town Council, testified that she believed the increase in the number of students to be generated by the development would be greater than 5 additional students, and would be a burden.

16. The application resumed on December 19, 2017. Ms. Bogart received the school student numbers from Multi Family housing units as the Board requested by virtue of an OPRA request. Her prior testimony about 5-11 students was proven by the information received, according to her testimony. The ratio of .0135 students

per apartment was used. Wallington currently has 1,206 apartments and 163 school students enrolled. More specifically, the ratios from large apartment complexes such as Jasontown Apartments was 0.156 and Mt Pleasant Village was 0.083 students per apartment. Thus, based on actual Wallington based information, her model of a range of 5 to 11 students added to the schools is correct.

17. The Board accepted much of the testimony of the applicants' experts. However, the Board was mindful, and found as true, the testimony of the Professional Planner Ms. Bogart that at least four variances from the Wallington Zoning Code were necessitated by the applicant's insistence in keeping a roller skating rink which currently exists on the property, and building the proposed housing units and parking structures around that accessory use. No valid reason was given by the applicant as to why the roller rink was necessary to the application, and why it wasn't simply being demolished along with the other masonry warehouse which is located on site. This was especially egregious in light of the fact that the variances were for such important planning goals as open space, impervious ground coverage, and height of building that might encroach on visibility and light.

**WHEREAS**, the Board voted to deny the application of the New Wallington Homes, LLC and Morningside at Wallington, LLC..

This is a memorializing resolution of action by the Board on December 15, 2015. Such action was taken in accordance with NJSA 40:55D-10(g)(2).

The official vote at such time was as follows:

**THOSE IN FAVOR:**   Polten, Wygonik, Pawluczuk, Tomko, Bazel

THOSE OPPOSED: None

THOSE RECUSED: None

THOSE ABSTAINED: None.

NOW, THEREFORE, BE IT RESOLVED, on the 16th day of January, 2018, the application of New Wallington Homes and Morningside at Wallington, for Site Plan approval be denied.

ROLL CALL VOTE

THOSE IN FAVOR: Pawluczuk, Polter, Milfi, Rachelski, Kasperek

THOSE OPPOSED: None

THOSE RECUSED: None

THOSE ABSTAINED: Daginski