# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW WALLINGTON HOME, LLC, a New Jersey limited liability company; MORNINGSIDE at WALLINGTON, LLC, a New Jersey limited liability company,<br><br>*Plaintiff(s)*<br><br>vs.<br><br>BOROUGH OF WALLINGTON, and BOROUGH OF WALLINGTON PLANNING BOARD; MARK W. TOMKO in his official capacity as former Mayor of the Borough of Wallington; DOROTHY B. SIEK, in her official capacity as former Tax Collector for the Borough of Wallington; and CHRISTOPHER ASSENHEIMER, in his official capacity as Certified Tax Collector of the Borough of Wallington,<br><br>*Defendant(s)* | CIVIL ACTION NO.<br>2:20-cv-08178<br><br>Hon. Evelyn Padin, U.S.D.J.<br>Hon. Andre M. Espinosa, U.S.M.J. |

---

## DEFENDANTS' BRIEF IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

<u>Of Counsel</u>
*Mary C. McDonnell*

<u>On the Brief</u>
*Gerald A. Shepard*
*Mary C. McDonnell*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**      iii

**PRELIMINARY STATEMENT**      1

**STATEMENT OF FACTS**      4

**STANDARD OF REVIEW**      9

**LEGAL ARGUMENT**      11

     **I.**    **THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS BECAUSE PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF *RES JUDICATA*.**    8

     **II.**    **PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.**    16

     **III.**    **THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS AS PLAINTIFFS LACK STANDING TO ASSERT CLAIMS UNDER THE FAIR HOUSING ACT.**    17

     **IV.**    **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AND DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFFS CANNOT MAINTAIN THEIR BURDEN OF PROOF UNDER THE FAIR HOUSING ACT, 42 U.S.C. §§ 3601-3619 ("FHA").**    18

         **A. PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION FOR DISPARATE TREATMENT UNDER THE *FHA*.**    19

         **B. PLAINTIFF CANNOT MAINTAIN A CAUSE**

OF ACTION OF DISPARATE IMPACT UNDER THE *FAIR HOUSING ACT*. ............................................ 24

V.    THE COURT SHOULD GRANT DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFFS FAILED TO ESTABLISH VIOLATIONS UNDER § 1983. ............................... 31

VI.   COMITY AND THE TAX INJUNCTION ACT OF 1937 MANDATE DISMISSAL OF THE TAX BASED CLAIMS IN THE FOURTH, FIFTH AND SIXTH COUNTS BECAUSE PLAINTIFFS CAN OBTAIN A PLAIN, SPEEDY, AND EFFICIENT REMEDY IN NEW JERSEY STATE COURT. ........... 36

VII.  THE COURT SHOULD DENY PLAINTIFFS' DEMAND FOR DAMAGES. .............................. 38

CONCLUSION ........................................................................ 40

# TABLE OF AUTHORITIES

**Cases**

*Affinity Healthcare Grp. Voorhees, LLC v. Twp. of Vorhees*,
  624 F.Supp.3d 494 (D.N.J. 2022) ....................................................22, 23

*Anderson v. Liberty Lobby*,
  477 U. S. 242 (1986) ...........................................................................10

*Angel v. Bullington*,
  330 U.S. 183 (1947) .......................................................................13, 15

*Hardwick v. Cuomo*
  891 F.2d 1097 ......................................................................................37

*California v. Grace Brethren Church*,
  457 U.S. 393 (1982) .............................................................................37

*Celotex Corp. v. Catrett*,
  477 U.S. 317- 23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ................9

*Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. of Educ.*,
  587 F.3d 176 (3d Cir. 2009) ................................................................32

*Clark County Sch. Dist. v. Bredeen*,
  532 U.S. 268 (2001) .............................................................................19

*Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*,
  421 F. 3d 170 (3d Cir. 2005) .........................................................19, 21

*Cohen v. Cohen*,
  125 F. 4th 454 (3d Cir. 2025) .........................................................38, 39

*CoreStates Bank, N.A. v. Huls Am., Inc.*,
  176 F.3d 187 (3d Cir. 1999) ................................................................14

*County of Sacramento v. Lewis*,
  523 U.S. 833 (1998) .............................................................................30

*Culver v. Insurance Co. of North America*,
  115 N.J. 451 (1989) .............................................................................11

*De Hart v. Bambrick*,
  177 N.J. Super. 541 (App. Div. 1981) .................................................37

*Dique v. N.J. State Police*,
603 F.3d 181 (3d Cir. 2010) ................................................................16

*Eastampton Ctr. V. Twp. of Eastampton*,
155 F.Supp. 2d 102 (D.N.J. 2001) ...........................................17, 18, 19

*Fair Assessment in Real Estate Ass'n v. McNary*,
454 U.S. 100(1981) ......................................................................36, 37

*Fair Hous. Council v. Main Line Times*,
141 F.3d 439 (3d Cir.1998) ..................................................................17

*Frybarger v. N.J. Dep't of the Treasury*,
2006 U.S. Dist. LEXIS 93365 (D.N.J. December 27, 2006) ..............................42

*General Motors v. City of Linden*,
143 N.J. 336 (1996) ............................................................................33

*Gleason v. Norwest Mortg., Inc.*,
243 F.3d 130 (3d Cir. 2001) ..................................................................10

*Hardwick v. Cuomo*,
91 F.2d 1097 (3d Cir. 1989) ..................................................................36

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ............................................................................16

*Hunt v. Cromartie*,
526 U.S. 541(1999) ............................................................................10

*Huntington v. Huntington Branch, NAACP*,
488 U.S. 15 (2nd Cir. 1988) ..................................................................27

*Izzo v. River Edge*,
843 F.2d 765 (3d Cir. 1988) ..................................................................40

*Kannankeril v. Terminix, Int'l*,
128 F.3d 802 ....................................................................................28

*Kneipp by Cusack v. Tedder*,
95 F.3d 1199 (3d Cir.1996) ..................................................................32

*Kramer v. Bd. of Adjustment, Sea Girt*,
45 N.J. 268, 212 A.2d 153 (1965) ..........................................................21

*Lapid-Laurel v. Zoning Bd. of Adjustment*,
  284 F. 3d 442 (3d Cir. 2002) ........................................................................24, 25, 36

*Lews v. O'Donnell*,
  674 Fed.Appx. 234 (3d Cir. 2017) ..............................................................15

*Lubliner v. Board of Alcoholic Beverage Control*,
  33 N.J. 428 (1960) ........................................................................................11

*Marino v. Indus. Crating Co.*,
  358 F.3d 241 (3d Cir. 2004) ........................................................................10

*Marran v. Marran*,
  376 F.3d 143 (3d Cir. 2004) ........................................................................14

*Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mt. Holly*,
  658 F.3d 375 (3rd Cir. 2011) .......................................................................27

*New York SMSA v. Bd of Adj.*,
  370 N.J. Super. 319(App.Div.2004) ...........................................................21

*Parratt v. Taylor*,
  451 U.S. 527 (1981) ..............................................................................13, 14

*Pierce Estates Corp., Inc. v. Bridgewater Tp. Zoning Bd. of Adjustment*,
  303 N.J. Super. 507, 697 A.2d 195 (App.Div.1997) ..................................22

*Reagle v. Elliott*,
  80 Fed. Appx. 737 (3d Cir. 2003) ...............................................................37

*Res. for Hum. Dev., Inc. v. Lower Providence Twp.*,
  2025 U.S. Dist. LEXIS 56877 (2025) .........................................................27

*Res. for Hum. Dev., Inc.*,
  2025 U.S. Dist. LEXIS 56877(2025) ..........................................................27

*Res.*
  808 F. 2d (3d. Cir. 1987) .............................................................................18

*Rivkin v. Dover Twp. Rent Leveling Bd.*,
  143 N.J. 352 (1996) .....................................................................................33

*Roberts v. Goldner*,
  79 N.J. 82 (1979) .........................................................................................11

*Rosewell v. LaSalle Nat'l Bank*,
  450 U.S. 503 (1981) ................................................................................36

*Sutton v. Sutton*,
  71 F.Supp.2d 383 (D.N.J. 1999) ..............................................................13

*Tex. Dep't of Hous & Cmty.Affairs v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015) ..................................................................25, 27, 28, 30

*United States v. Athlone Indus., Inc.*,
  746 F.2d 977 (3d. Cir. 1984) ...................................................................13

*United States v. City of Black Jack*,
  508 F.2d 1179 (8th Cir. 1974) .................................................................27

*Velasquez v. Franz*,
  123 N.J. 498 (1991) .............................................................................11, 12

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) .................................................................................32

*Ward v. Vill. of Ridgewood*,
  531 F. Supp. 470 (D.N.J. 1982) ...............................................................12

*Wood v. Strickland*,
  420 U.S. 308 (1975) .................................................................................38

**Statutes**

§ 1983 ...........................................................................................2, 4, 14, 33, 34

28 U.S.C. § 1341 ..............................................................................................36

42 U.S.C ............................................................................................................4

42 U.S.C. §§3601 ............................................................................................38

42 U.S.C. §§3601-3609 ..............................................................................1, 18

42 U.S.C. §1983 ........................................ 1, 2, 3, 11, 15, 16, 31, 32, 33, 35, 38, 40

42 U.S.C. §3613 ......................................................................................15, 16, 38

N.J.S.A. 40:55D-2 .......................................................................................18, 24

**Other**

F.R.E 702 ................................................................................................................38

Fed. R. Civ. P. 56 ...................................................................................................9

N.J. Ct. R. 4:69. ....................................................................................................37

## PRELIMINARY STATEMENT

Defendants Borough of Wallington ("The Borough"), Borough of Wallington Planning Board ("Planning Board"), its former Mayor Mark W. Tomko ("Mayor" or "Tomko"), its former Tax Collector Dorothy B. Siek ("Siek") and its former Tax Collector Christopher Assenheimer ("Assenheimer") (hereinafter, collectively referred to as "Defendants") submit this brief in support of its cross motion for summary judgment and in opposition to Plaintiff's motion for summary judgment.

This matter arises from Plaintiffs' failure to develop residential property located on Main Avenue, within the Borough Wallington.  Plaintiffs' six count Amended Complaint alleged the following causes of action:

- Counts 1 & 2 The Fair Housing Act, 42 U.S.C. §§3601-3609;
- Count 3 Equal Protection Clause under the 14th Amendment (42 U.S.C. §1983);
- Count 4 Substantive Due Process (42 U.S.C. §1983);
- Count 5 Procedural Due Process (42 U.S.C. §1983); and
- Count 6 Unjust Enrichment.

As set forth herein, the doctrines of *Res Judicata,* the Statute of Limitations and the doctrine of standing bar Plaintiffs' claims against the Defendants.  First, the *res judicata* bars Plaintiffs claims against Defendants because in 2019 Plaintiffs obtained a valid final order against Defendants for the same facts giving rise to the within matter.  Second, Plaintiffs' claims are barred by the applicable two year

statute of limitations for claims under the Fair Housing Act and 42 U.S.C. §1983.

Plaintiffs filed their Amended Complaint on December 7, 2020; however,

Plaintiffs failed to assert any occurrence that occurred since December 7, 2018.

Third, the doctrine of standing bars Plaintiffs' claims. Even before Plaintiffs filed

the action pending before this Court, Plaintiffs have had the necessary approvals to

proceed with the development of their properties.  Accordingly, Plaintiffs have no

distinct or palpable injury that could be redressed by this Court.  Therefore, the

Court should grant summary judgment in favor of Defendants.

    In addition to the aforementioned legal doctrine barring Plaintiffs' claims,

Plaintiffs have failed to meet their burden of proof for their claims under the Fair

Housing Act and 42 U.S.C. §1983.  Plaintiffs failed to establish any discriminatory

motive to prove disparate treatment under the Fair Housing Act.  Plaintiffs merely

refer to isolated comments from planning board meetings, which they have taken

out of context to fabricate their claims.  However, Plaintiffs' allegations of

discrimination are belied by the fact that in 2016 Defendants approved Plaintiff

New Wallington Home's site plan application only for Plaintiff New Wallington

Home to delay development and apply for an amended site plan causing further

delay.  Additionally, in December 2017, Planning Board members even moved to

approve Plaintiffs' application with the condition that an existing structure be

removed.  Accordingly, the undisputed facts of this case show that Defendants had

2

no discriminatory motive and as a matter of law Plaintiff's cannot maintain a claim for disparate treatment under the Fair Housing Act.

Similarly, Plaintiffs' claims for disparate impact fail as a matter of law. Plaintiffs failed to show any general policy or practice of the Defendants that caused a disparate impact. Instead, Plaintiffs only refer the Defendants' site specific denial of Plaintiffs' applications and fail to establish any robust causality between the alleged actions of Defendants and any perceived disparate impact. Notably, Defendants set forth legitimate non-discriminatory rationale for their actions, *i.e.* Plaintiffs' insistence on maintaining an existing roller rink, which necessitated numerous variances and questions of traffic, open space and impervious ground coverage. Therefore, the Court should grant summary judgment in favor of Defendants.

Likewise, Plaintiffs' claims for equal protection, substantive due process and procedural due process under 42 U.S.C. 1983 fail. Plaintiffs alleged Mayor Tomko, members of the Planning Board, Defendant Siek and Defendant Assenheimer acted under color of State law and denied Plaintiffs equal protection of the law in allegedly perpetuating a policy of racial and familial discrimination (see, Exhibit "A", Amended Complaint ¶¶ 178-82). However, none of the actions attributed to any of the individual defendants even suggest racial and/or familial discrimination. Defendants Siek and Assenheimer, Borough's former tax collectors, had no

3

involvement in Plaintiffs' application whatsoever, and only served for a limited time encompassing the events alleged.

Further, Plaintiffs' tax-based claims under Count Four, Five and Six of the Amended complaint must fail. Plaintiffs alleged that the Defendants violated Plaintiffs' substantive and procedural due process rights in violation of § 1983 and unjust enrichment regarding a dispute over unpaid municipal property taxes. However, this Court should decline to consider the tax related claims on the basis of statutory federal law and the principles of comity. Plaintiffs have access to a plain, speedy, and efficient forum in the Superior Court of New Jersey to pursue those claims. By their own admission, Plaintiffs failed to pay these taxes when due from 2016 through 2018 (Amended Complaint ¶ 136). Despite Plaintiffs' contention that these actions were done in retaliation to Plaintiffs' actions regarding inclusionary development (Amended Complaint ¶ 162), they cannot maintain any of the pled causes of action as a matter of law. Defendants submit that there is no factual or legal support for the allegations set forth in the Amended Complaint. Therefore, the Court should grant summary judgment in favor of Defendants.

## STATEMENT OF FACTS

Both Plaintiffs are limited liability companies that own adjacent parcels of land in the Borough of Wallington, New Jersey.  Plaintiff, Morningside, is the fee

simple owner of a 3.687-acre parcel designated on the Borough's Municipal Tax Map as Lot 35.01, Block 71 (see, Exhibit "A").  The Morningside Property is situated along Main Avenue in Wallington and is contiguous to the New Wallington Home Property (Exhibit "A" at ¶ 16).  Plaintiff, New Wallington Home, is a New Jersey limited liability company. New Wallington Home is the successor in interest to the Wallington Group.

**The Builders Remedy Lawsuit**

Plaintiffs' dispute with Defendants began in 2006 wherein Plaintiffs prevailed in a Builders Remedy suit against the Borough of New Wallington and the New Wallington Planning Board. In the Builder's Remedy Litigation, the Wallington Group sought: (a) a declaration that the Borough had not met its affordable housing obligations under the NJFHA and COAH; (b) a builder's remedy requiring the Borough to rezone the New Wallington Home Property to permit multi-family residential use; and (c) an order directing that the Wallington Group's inclusionary development application be "fast tracked" (Exhibit "A" at ¶ 42). Morningside intervened in the action and participated with the Wallington Group in seeking the same relief for its property, which is contiguous to the New Wallington Home Property (Exhibit "A" at ¶ 43).

Ultimately, in 2008, the Superior Court required the Borough to zone the lands in question for residential, multi-family use, and also required that certain of

the multi-family units be restricted to low- and moderate-income families (the "Builder's Remedy Order").

**The Site Plan Application**

Then, in 2013, Plaintiff New Wallington Home applied to the Borough of Wallington Planning Board for approval of the development of 134 multi-family residential dwelling units, including 27 affordable housing units (Exhibit "A" at ¶ 50).  The Planning Board found the application was incomplete and would not be complete until Morningside filed its site plan application.  The parties entered into a Consent Order allowing the properties to be developed separately (Exhibit "A" at ¶ 55).  Then, in October 2014, the Planning Board denied the New Wallington Home application.

Plaintiff New Wallington Home appealed the Planning Board's denial and, the Superior Court reversed the Planning Board's denial on April 22, 2015 (see, Exhibit "D", attached hereto Judge Meehan Order). Still, the Superior Court ordered a limited remand to the Planning Board for additional hearings on issues of building height, sewage, and the driveway and easement from the skating rink (Exhibit "D" Judge Meehan Order at pg. 9-10).

On April 19, 2016, following the Superior Court's ruling of March 2, 2016, Plaintiff New Wallington Home's development application was fully approved by the Planning Board (see, Exhibit "G" attached hereto, Resolution 16-300). In

December 2016, following the Planning Board's approval of Plaintiff New Wallington Home's application, Plaintiff New Wallington Home sought amended site plan approval and Plaintiff Morningside prepared a site plan to implement its affordable housing builder's remedy (see, Exhibit "F" attached hereto, Judge Farrington decision at pg. 5). Morningside submitted its revised site plans on April 21, 2017 (see, Exhibit "V" attached hereto). The Planning Board held hearings on May 16, July 18, September 19, and December 19, 2017, to consider Morningside's site plan application (see, Exhibits "H", "I", "J", and "K"). The Planning Board held engaging discussions regarding Plaintiffs' insistence on maintaining the existing roller rink creating greater congestion and necessary variances (see, Exhibits "H", "I", "J", and "K"). Additionally, the Planning Board discussed with Plaintiffs' experts issues of site contamination, impervious ground coverage, building height and traffic concerns (see, Exhibits "H", "I", "J", and "K"). All of these issues and hearings were consistent the prior order from Judge Meehan (see, Exhibit "D").

On December 19, 2017, Planning Board member Theresa Wygonik proposed a motion to approve Plaintiffs' applications as long as the recreation building be eliminated (see, Exhibit "K" attached hereto, at 20:11-20). In response to the proposed motion, Planning Board member, Kathy Polten stated, "I'll second that." (see, Exhibit "K" attached hereto, at 20:11-20). The board members were

advised that such a proposal could not occur and that the application would have to be voted on as submitted.  As such, the Planning Board voted to deny Plaintiffs' applications (see, Exhibit "K" attached hereto, at 21:12 – 23:23).

The Planning Board's resolution made clear that the denial was necessitated by Plaintiffs' insistence on maintaining the existing roller rink building "…and building the proposed housing units and parking structures around that accessory use." (see, Exhibit "G" attached hereto).  Despite the applicants' experts, no valid reason was provided as to why the roller rink was necessary and why Plaintiffs could not demolish the roller rink along with the other warehouse buildings on the site.  Plaintiffs' failure to provide a valid reason for maintaining the roller rink was "…especially egregious as the variances sought were for important planning goals such as open space, impervious ground coverage and building height that may encroach visibility and light" (see, Exhibit "G" attached hereto).

Nonetheless, although the site plan was initially denied on January 16, 2018, all approvals were ultimately granted under Court Order on January 17, 2019 (see, Exhibit "F").

**The Amended Complaint**

While Plaintiffs' Amended Complaint contains over 200 paragraphs, none of the allegations contain conduct that occurred within the two-year period governed by the statute of limitations. Plaintiffs argue that there are continuing violations but

8

fail to articulate any conduct that occurred after December 2018 (the Amended Complaint was filed on December 7, 2020). However, there is no pattern of unlawful discriminatory conduct, and no evidence of any discriminatory conduct that allegedly "continues to this day."

With respect to Plaintiffs' claims regarding the tax issues, Federal Court is not the proper forum for these claims. Additionally, by its own admission, New Wallington Home withheld property tax payments that were assessed against the New Wallington Home Property by the Borough in 2016 through 2018 and should have been aware that failure to pay taxes would result in the accrual of penalties and interest (see, Exhibit "A"). Further, Plaintiffs knew they were withholding their payment of taxes and knew they would incur penalties and interest. Moreover, Plaintiff New Wallington has nine (9) pending tax appeals with respect to the property in question.

## **STANDARD OF REVIEW**

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) only when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322- 23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the

outcome of the suit. *Anderson v. Liberty Lobby,* 477 U. S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson,* at 255). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 138 (3d Cir. 2001). The Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* (1986).  If the moving party bears the burden of proof at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999).

Here, the Court should grant summary judgment in favor of Defendant Wallington.  As a matter of law, Plaintiffs' claims are barred by the doctrine of *res judicata* and the statute of limitations.  Here, Plaintiffs previously litigated the issues in the within matter in the Superior Court of New Jersey, Bergen Vicinage, BER-L-1670-18.  Plaintiffs received a valid and final order against the Defendants in that matter and thus their present claims are barred under the doctrine of *Res Judicata*.  Additionally, Plaintiffs' claims are barred by the two-year statute of

10

limitations as none of Plaintiffs' claims involve any actions by Defendants within the two years prior to the filing of the Amended Complaint. Further, there are no genuine issues of material fact that would support Plaintiffs' claims under the Fair Housing Act or 42 U.S.C. §1983. Further, Plaintiffs' tax related claims as set forth in Counts Four, Five and Six of the Amended Complaint are barred by Comity and the Tax Injunction Act. Therefore, as a matter of law, the Court should grant summary judgment in favor of Defendants.

## **LEGAL ARGUMENT**

Defendant Wallington cross moves for summary judgment and opposes Plaintiffs' motion for summary judgment.

### I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS BECAUSE PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF *RES JUDICATA.*

The doctrine of *res judicata* provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be re-litigated by those parties or their privies in a new proceeding. *Velasquez v. Franz*, 123 N.J. 498, 505 (1991) and *see also Roberts v. Goldner*, 79 N.J. 82, 85 (1979). Once a controversy has been fairly litigated and determined it is no longer open to re-litigation because where the second action is no more than a repetition of the first, the first lawsuit stands as a barrier to the second. *Culver v. Insurance Co. of North America*, 115 N.J. 451, 460 (1989) and *see also Lubliner v.*

11

*Board of Alcoholic Beverage Control*, 33 N.J. 428, 435 (1960) and *see also Ward v. Vill. of Ridgewood*, 531 F. Supp. 470, 475 (D.N.J. 1982) (where a party claimed a deprivation of property rights resulting from the denial of an application to develop his property and the court held that the first judgment precludes the assertion of a section 1983 claim in a later suit). Here, Plaintiffs Complaint is precluded by *Res Judicata*, as Plaintiffs filed a prior complaint against Defendants regarding the same parcels of land and the same planning board decisions at issue in this matter, which were adjudicated by the Court (see, Exhibit "F").  Therefore, as a matter of law the Court should grant summary judgment in favor of Defendants.

Under the principles of *res judicata*, claims that are determined before trial are also barred from being re-litigated.  *Velasquez v. Franz,* 123 N.J. 498, 506 (1991) quoting Restatement (Second) of Judgments, at §27, comment d:

> d. *When an issue is actually litigated*.  When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section. An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment . . . a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict.

Under federal law, there are three elements to claim preclusion: "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties

12

in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *Sutton v. Sutton*, 71 F.Supp.2d 383, 390 (D.N.J. 1999) quoting *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412 (1991).  Furthermore, if a claim could have been presented in the first action, it will be precluded in the second action.  *Angel v. Bullington, 330 U.S. 183, 192-93 (1947).*  In order to apply *res judicata* as a bar to a cause of action, the court must find that "a particular issue, although not litigated, could have been raised in an earlier proceeding."  *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983-984 (3d. Cir. 1984).   Therefore, *res judicata* applies not only to matters actually determined in an earlier action, but to all relevant matters that ***could have*** been so determined.  Angel, 330 U.S. at 192-193 (1947), ***emphasis added***.

In this matter, all three elements of *Res Judicata* have been met. First, Plaintiffs received a valid final judgment from Judge Farrington under Superior Court of New Jersey docket number BER-L-1670-2018 (see, Exhibit "F"). Plaintiff may contend that filing only an action in lieu of Prerogative Writs is not an adequate remedy because it does not enable Plaintiff to recover monetary damages, attorney's fees, or costs.  In *Parratt v. Taylor*, 451 U.S. 527 (1981), however, the United States Supreme Court concluded that "Although the state remedies may not provide the respondent with all the relief which may have been

13

available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt, supra,* 451 U.S. at 544. Accordingly, Plaintiffs' received a valid final judgment in the prior lawsuit.

Second, the parties in the underlying matter were identical and/or in privity with those in the prior action. Privity refers to "the relationship between one who is a party on the record and another is close enough to be included that other within the *res judicata.*" *Marran v. Marran,* 376 F.3d 143, 151 (3d Cir. 2004) Plaintiffs initiated the prior action against Defendant Planning Board, which was created by the Defendant Borough of Wallington (see, Exhibit "A" ¶18). Accordingly, Defendant Planning Board's interests in the underlying matter were representative of Defendant Borough of Wallington. Therefore, the parties in the underlying matter were identical and/or in privity.

Third, the claims in the present action arose from the same occurrence as the claim in the earlier action. "In deciding whether two suits are based on the same 'cause of action,' [the Courts ] take a broad view, looking to whether there is an 'essential similarity of the underlying events giving rise to the various legal claims." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). Here, the underlying events giving rise to this litigation are identical to those in the prior lawsuit. Both claims arise from the denial of Plaintiffs' site plan

14

applications and Plaintiffs are "…merely attempting to re-litigate issues that were already decided in state court." *Lews v. O'Donnell*, 674 Fed.Appx. 234, 237 (3d Cir. 2017).

Plaintiffs' claims under the Fair Housing Act, could have been brought in Plaintiffs' state court action under 42 U.S.C. §3613(a)(1)(A), which states "[a]n aggrieved person may commence a civil action in an appropriate United States district court of State Court…" Likewise, Plaintiffs' claims under 42 U.S.C. §1983 could have been asserted in Plaintiffs' state court action because federal and state courts have concurrent jurisdiction.  Ward v. Ridgewood, 531 F.Supp.470, 475 (D.N.J 1982).  Here, Plaintiffs' believed that the denials of their site plans were invalid and Plaintiffs sought legal action (see, Exhibit "F").  Additionally, Mr. Nuckel, the sole owner of both Plaintiffs' properties believed in 2017 that the Borough of Wallington had a discriminatory animus and believed the complaint filed in 2018 alleged violations of the Fair Housing Act (see, Exhibit "C", at 73:4-14 and 74:71-17).  Accordingly, Plaintiffs' could have alleged their claims under the Fair Housing Act and 42 U.S.C. §1983 in the prior action Angel, 330 U.S. at 192-193 (1947).

Since Plaintiff received a valid final judgment in the prior action; the parties were identical and/or in privity; and Plaintiffs' claims arise from the same occurrence as the prior claim, then as a matter of law, Plaintiffs' claims are barred

by the doctrine of *Res Judicata*. Therefore, the Court should grant summary judgment in favor of Defendants.

## II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Plaintiffs' claims are governed by a two-year statute of limitations. Pursuant to *42 U.S.C. §3613*, claims brought under the Fair Housing Act must be commenced within two years after the occurrence or termination of the alleged discriminatory housing practice. Likewise, Plaintiffs' claims under 42 U.S.C. §1983 are barred by the two-year statute of limitations. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). A continuing violation theory is timely only when it is filed within the statutory period running from the last asserted occurrence of that practice. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380-381 (1982). Plaintiffs failed to assert any occurrence that occurred since December 7, 2018 and therefore none of the claims can be deemed to be "continuing" and are barred by the two year statute of limitations.

Plaintiff's Amended Complaint was filed on December 7, 2020. Accordingly, any claims under the FHA may only be predicated on conduct on or after December 7, 2018; and, thus, any conduct prior to December 7, 2018, is irrelevant and cannot be the basis for Plaintiffs' claims. Here, the alleged comments made by Mayor Tomko and other Borough officials occurred at either May 16, 2017 or the July 18, 2017 meeting. (Exhibit "A" at ¶¶ 71,72, 83).

Therefore, Plaintiffs' claims are barred by the Statute of Limitations and must be dismissed as a matter of law.

### III. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS AS PLAINTIFFS LACK STANDING TO ASSERT CLAIMS UNDER THE FAIR HOUSING ACT.

In order to proceed, Plaintiffs must show that it has a distinct and palpable injury sufficient to satisfy the Article III standing requirements. *Fair Hous. Council v. Main Line Times*, 141 F.3d 439 (3d Cir.1998). To satisfy the Article III requirements, Plaintiffs' must satisfy a three-prong test. *Eastampton Ctr. V. Twp. of Eastampton*, 155 F.Supp. 2d 102, 112 (D.N.J. 2001).

In this matter, Plaintiffs' alleged injury arises from the alleged delay in the development of their residential real estate project. Yet, contrary to the Plaintiff in *Eastampton*, Plaintiffs in this matter previously litigated the alleged delays in their development project in the New Jersey Superior Court. In connection with the prior lawsuit, on January 17, 2019, Judge Farrington ruled unequivocally that Plaintiffs' development applications "…were approved in their entirety, including all variances." (see, Exhibit "F"). Accordingly, even before Plaintiffs filed the action pending before this Court, Plaintiffs have had the necessary approvals to proceed with their projects. Since Plaintiffs have had approval since 2019, then Plaintiffs have no distinct or palpable injury that could be redressed by a favorable

17

decision by this Court.    Therefore, the Court should grant summary judgment in favor of Defendants.

**IV.    PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AND DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFFS CANNOT MAINTAIN THEIR BURDEN OF PROOF UNDER THE FAIR HOUSING ACT, 42 U.S.C. §§ 3601-3619 ("FHA").**

Generally, the FHA "…does not impose any affirmative duty upon a municipality to plan for, promote or construct any type of housing." *Eastampton Ctr. V. Twp. of Eastampton*, 155 F.Supp. 2d 102, 119 (D.N.J. 2001). "Unless done in a discriminatory manner, municipalities may control residential growth to promote the public good pursuant to the police powers delegate to it by the state. *Id. citing, Pace Res., Inc. v. Shrewksbury Township*, 808 F.2d 1023, 1030 (3d Cir. 1987). Pursuant to *N.J.S.A.* 40:55D-2 the goals of the New Jersey Municipal Land Use Laws are, *inter alia*, to encourage municipal action to guide the appropriate use or development of all lands in this state; provide adequate light, air and open space; and provide "sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial use and open space," *et cetera*. *Id. citing, N.J.S.A.* 40:55D-2.   As noted by the Third Circuit in *Pace Res.,* the very objective of land use planning is to control the rate and character of community development.  *Pace Res.,* 808 F. 2d at 1030 (3d. Cir. 1987).

As set forth herein, Defendants' actions were not discriminatory.  Instead, the evidence shows that Defendants in this matter sought "…to advance the goals of land use planning identified by the New Jersey Legislature…"  Accordingly, as a matter of law, Plaintiffs cannot maintain its claims of violations of Fair Housing Act.  Therefore, the Court should grant summary judgment in favor of Defendants.

### A. PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION FOR DISPARATE TREATMENT UNDER THE *FHA.*

To advance a claim of disparate treatment under the Federal Housing Act, a plaintiff must show evidence of a discriminatory purpose motivating the action. *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F. 3d 170, 177 (3d Cir. 2005). The plaintiff must show that a protected characteristic played a role in the defendant's decision. *Id*. It is not sufficient for a plaintiff to claim that a municipality discriminated on the basis of familial status in violation of the Federal Housing Act absent actual evidence that a proposed zoning ordinance bears more heavily on one group than another, even if the municipality is concerned about an increase in school age children. *Eastampton Ctr. v. Twp. of Eastampton*, 155 F. Supp. 2d 102 (D.N.J. 2001).  As held by the United States Supreme Court, "[a] recurring point in [our] opinions is that simple teasing and isolated incidents…" do not amount to discrimination *Clark County Sch. Dist. v. Bredeen*, 532 U.S. 268, 271(2001), *citing*, *Faragher v. Boca Raton*, 524 U.S. 775,788 (1998).   In this matter, Plaintiff's only refer to isolated questions at planning board hearing that do not

explicitly reference race or familial status. Since Plaintiffs cannot establish a discriminatory purpose motivating any action by Defendants then as a matter of law Plaintiffs cannot maintain their claim of disparate treatment under the Fair Housing Action. Therefore, the Court should grant summary judgment in favor of Defendants dismissing Plaintiffs' claim of disparate treatment under the Fair Housing Act.

Here, there is no evidence that the Defendant Planning Board denied Plaintiffs' request for site plan approval for the purpose of discriminating against families, minorities, or low-income families, as Plaintiffs alleged. Plaintiffs' allegations of discrimination are belied by Defendants' prior approval of Plaintiff New Wallington Home site plan application in 2016. In fact, Plaintiff's only basis for this claim is a few questions asked at Planning Board meetings in 2017 that do not even reference race, or show any racial animus whatsoever. Plaintiffs referred to Mayor Tomko's comment about the Mason-Dixon claim in support of their claim for disparate treatment. However, a careful reading of the transcripts from the four days of planning board hearings show that Mayor Tomko's comment referred to the fact that northern Bergen County towns are less densely populated, more affluent and less diversified (see, Exhibit "O" Rachelski transcript T41:6 – T45:13). Plaintiffs' moving papers ignore other topics focused on at the meetings such as Plaintiff New Wallington Home's site being listed on the DEP website as a

20

known contaminated site and Plaintiff Morningside's property having contaminants(see, Exhibit "H" attached hereto May 17, 2017 hearing at 54:12-T57:12); impediments to open space; and Plaintiffs' insistence on maintaining an existing roller rink, which require numerous variance and present open space issues (see, Exhibits "H", "I", "J', and "K").

While Plaintiffs need not show an evil or hostile motive, Plaintiffs still must show that a protected characteristic played a role in the Defendants' decision. *Cmty. Servs., Inc.*, 421 F. 3d at 177 (3d Cir. 2005). Here, Plaintiffs' claims of disparate treatment rely on comments made during planning board hearings. However, "[r]emarks of members of the board represent informal verbalizations of the speaker's transitory thoughts, then cannot be equated to deliberative findings of fact. It is the Resolution, and not Board Members' deliberations, that provides the statutorily required findings of fact…" *New York SMSA v. Bd of Adj.*, 370 N.J. Super. 319, 333-334(App.Div.2004). Accordingly, Plaintiffs cannot rely on the remarks at the planning board hearings as evidence of disparate treatment by the

In this matter, Defendant Planning Board articulated a legitimate non-discriminatory rationale for its denial of Plaintiffs' applications. The decision of a municipal zoning board is entitled to substantial deference. *Kramer v. Bd. of Adjustment, Sea Girt*, 45 N.J. 268, 296, 212 A.2d 153 (1965). Due to its "peculiar knowledge of local conditions," a municipal board must be afforded wide latitude

21

in the exercise of its delegated discretion. *Pierce Estates Corp., Inc. v. Bridgewater Tp. Zoning Bd. of Adjustment*, 303 N.J. Super. 507, 514, 697 A.2d 195 (App.Div.1997).  The denial of Plaintiff Morningside's site plan application and Plaintiff New Wallington Homes' request for an amendment to its existing site plan approval was necessitated by Plaintiffs' insistence on maintaining the existing roller rink building and building the proposed housing units and parking structures around that accessory use (see, Exhibit "G" Resolution 18-326,).

Despite the applicants' experts, no valid reason was provided as to why the roller rink was necessary and why Plaintiffs could not demolish the roller rink along with the other warehouse buildings on the site (*Id*.).  Defendants' legitimate concerns regarding the existing roller rink are noted in the discourse during the four days of hearings (see, Plaintiff's Exhibits "H" "I" "J" "K" hearing transcripts).

In *Affinity Healthcare Grp. Voorhees, LLC v. Twp. of Vorhees*, 624 F.Supp.3d 494 (D.N.J. 2022), the Court examined whether a Plaintiff could maintain a cause of action of disparate treatment against the defendant municipality when it denied the plaintiff's request for a zoning permit.  *Id*. at 500. In examining whether the defendants had set forth a legitimate non-discriminatory rationale, the Court concluded that "…the reasons provided by the Planning Board for its denial of Plaintiff's application – including those provided in the Planning Board's final written Resolution and the reasons provided on the record by

22

Planning Board members .... are limited to land use justifications alone and express no discriminatory rationale or basis. *Id* at 514. As in this case, the court in *Affinity*, reviewed four (4) days of planning board hearings. The court found that with respect to the Plaintiff's allegations of biased testimony, the plaintiff had "…fundamentally taken the statements made out of context." *Id.* at 516. The court noted that the missing context was the planning board members' attempts to discuss legitimate land use concerns. *Id.* Further, the court found that questions at the planning board hearing could have been more artfully asked, but "… the underlying concern does not appear to be rooted in bias…based on this Court's review of the transcript." *Id.*

In *Affinity,* the Court held that the relevant inquiry for Plaintiff's disparate treatment claim was whether the "…denial of Plaintiff's zoning application was motivated by intentional discrimination." *Id.* at 517. In granting the defendant's motion for summary judgment on disparate treatment, the court noted "[m]ore than a few stray remarks cherry-picked out of a transcript of as impressive as this is required to survive Defendant's motion for summary judgment." *Id.*

Similarly, in this matter, a careful review of the transcripts show that the planning board discussed at length legitimate land used concerns such as, *inter alia*, open space and land density issues presented by the Plaintiffs' insistence on maintaining the roller rink, and environmental issues with the properties (see,

23

Plaintiffs' Exhibits "H" "I" "J" and "K" Planning Board Hearing Transcripts). Here, Plaintiffs have handpicked comments from these hearings and presented them out of context to create an impression of intentional discrimination. However, as borne out by the record, these handpicked comments are not rooted in bias or discrimination, but instead legitimate land use concerns of the Defendants, which are supported by *N.J.S.A.* 40:55D-2. While Plaintiffs rely on prior court rulings that Defendants' decision was arbitrary, capricious and unreasonable, none of them made any finding of discriminatory intent (see, Exhibits "D" and "F"). Accordingly, Plaintiffs cannot establish that Defendants' rationale was pre-text for discrimination. Therefore, the Court should grant summary judgment in favor of Defendants.

## B. PLAINTIFF CANNOT MAINTAIN A CAUSE OF ACTION OF DISPARATE IMPACT UNDER THE *FAIR HOUSING ACT*.

To advance a claim of disparate impact under the Federal Housing Act, a plaintiff must show that the complained of action had a discriminatory effect, was because of a protected class, or whether the action disproportionately burdened a particular racial group so as to cause a disparate impact. *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F. 3d 442, 466-467 (3d Cir. 2002). A plaintiff must show that the action had a "greater adverse impact on the protected groups than others". *Id*. The elements of a prima facie case of disparate impact have identified as: (1) the occurrence of certain outwardly neutral practices, and (2) a significantly

24

adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices" *Id*.

When a plaintiff cannot point to a policy of the defendant that caused a disparate impact and merely relied on statistical disparity, the claim for disparate impact must fail. *Tex. Dep't of Hous & Cmty.Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 542 (2015). "A robust causality requirement ensures that 'racial imbalance...does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." *Id*, *citing*, *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989). "The limitations on disparate-impact liability discussed here are also necessary to protect potential defendants against abusive disparate-impact claims." *Inclusive Cmtys. Project,Inc., 576 U.S. at 544 (2015)*. "Without safeguards for claims alleging disparate-impact liability, then disparate-impact liability might cause race to be used and considered in a pervasive way and 'would almost inexorably lead' governmental or private entities to use 'numerical quotas, and serious constitutional then could arise." *Id*. Additionally, the absence of safeguards for disparate-impact liability claims could displace valid governmental and private priorities..." *Id.*

If the Plaintiff sets forth a *prima facie* case, then Defendants can still succeed by showing that the Defendants had a legitimate non-discriminatory

25

reason for their action and that no less discriminatory alternatives were available. *Lapid-Laurel*, 284 F.3d at 467 (3d Cir. 2002).

As set forth, herein Plaintiffs cannot maintain a claim for disparate impact. First, Plaintiffs have failed to identify a policy or practice and, secondly, Plaintiffs have failed to show a significant adverse impact.   Third, Defendants have articulated legitimate non-discriminatory rationale for their decisions. Since Plaintiffs failed to show a policy or practice; failed to show a significant disparate impact, then as a matter of law Plaintiffs cannot maintain their claim for disparate impact.   Accordingly, the Court should grant summary judgment in favor of Defendants.

### 1. Plaintiffs failed to identify a policy or practice for disparate impact purposes.

In this matter, Plaintiffs have failed to identify any generally applicable policy or practice that caused the alleged discriminatory effect. Instead, Plaintiffs point to Defendant Planning Board's denial of their specific property development applications.  Plaintiffs have cited no law that would support a disparate impact claim based on a project specific denial.  To the contrary, relevant case law with respect to disparate impact claims typically challenge broadly applicable policies such as state laws, zoning ordinances, occupancy restriction, *et cetera*. *Lapid-Laurel v. Zoning Bd. of Adustment*, 284 F.3d 442, 466 (3d Cir. 2002)(plaintiffs alleged that the Township's ordinances had a disparate impact on the handicap);

26

*Inclusive Cmtys. Project,Inc., 576 U.S. at 519(2015)*(plaintiffs challenging state law that disproportionately allocated tax credits); *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mt. Holly*, 658 F.3d 375 (3rd Cir. 2011) (Plaintiffs challenging impact of township redevelopment plan); *Huntington v. Huntington Branch, NAACP*, 488 U.S. 15 (2nd Cir. 1988)(challenge of zoning law preventing the construction of multifamily rental units)*; United States v. City of Black Jack*, 508 F.2d 1179 (8th Cir. 1974) (challenge of ordinance prohibiting the construction of new multifamily dwellings*)*.

Further, in *Res. for Hum. Dev., Inc. v. Lower Providence Twp.*, 2025 U.S. Dist. LEXIS 56877, 9-10(2025) (see, Exhibit "T" attached hereto a copy of the decision). the Court applied the disparate-impact claim standards noting the "robust causality" requirement and found that Plaintiff failed to identify "…any specific Township policy or practice that could be evaluated under the [Fair Housing Act's] disparate impact framework." *Res. for Hum. Dev., Inc.*, 2025 U.S. Dist. LEXIS 56877, 9-10(2025). In *Res. For Hum. Dev., Inc.*, the court held that "[t]he Township's denial of [Plaintiff's] zoning permit was a decision by the local land use board which as it pertains to disparate impact…does not constitute policy or practice." *Id*. Accordingly, the Court dismissed the Plaintiff's complaint for failure to state a claim. *Id*. Likewise, in this matter Plaintiffs have failed to

27

identify any policy or practice and merely rely on Defendants' planning board's decision with respect to their specific properties.

Here, Plaintiffs ask this Court to unfasten the safeguards and expand the breadth of disparate impact claims to a single site-specific application denying Plaintiffs' development. *Inclusive Cmtys. Project,Inc., 576 U.S. at 544 (2015).* Nowhere does Plaintiff show that Defendants have a general policy or practice that would apply to all developers or all residential real estate development projects. Under Plaintiffs' theory, any decision by a planning board denying a site plan application could subject planning boards and municipalities to disparate impact claims.   Since Plaintiff cannot identify a policy or practice then as a matter of law, Plaintiffs cannot maintain their disparate impact claim.   Therefore, the Court should grant summary judgment in favor of Defendants.

### 2. Plaintiffs have failed to show a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.

Assuming, *arguendo*, Plaintiffs has identified a practice or policy, Plaintiffs' disparate impact claim must fail as Plaintiffs cannot show a significant adverse or disproportionate impact, or any discriminatory effect.   Plaintiff relies on the findings of Dr. Steil to show a statistical disparity in supporting their disparate-impact claim.  "The analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination." *Kannankeril v. Terminix, Int'l,*

28

128 F.3d 802, 807 (*citing, In re Paoli R.R. Yard Pcb Litig*, 35 F. 3d 717, 744 (3d Cir. 1994). In his report, Dr. Steil compared the expected demographic composition of Plaintiffs' development project to the existing demographics of the Borough of Wallington. Yet, Dr. Steil's comparison does not establish that Defendants' decision with respect to Plaintiffs' development projects caused housing to become unavailable to protected classes. The more relevant comparison would be the availability of housing of protected classes before and after the Defendants' decision; however, Dr. Steil did not make this comparison and only used census data from 2019 to 2023, time periods after Plaintiffs had received court approval for their projects (see, Exhibit "L"). Additionally, Dr. Steil's statistical analysis is based on projections and estimates regarding who *would have* resided in Plaintiff's development rather than actual data. The analysis assumes that the demographic composition of residents would match certain patterns observed in other transit-oriented developments. Further, Dr. Steil failed to include the fact that several affordable housing applications have been approved by the Defendants, and in some cases have been constructed (see, Exhibit "L" Caldwell report)

. As such, Dr. Steil's assumptions are speculative and do not establish actual discriminatory effect. Instead, Dr. Steil's findings offer possibilities of statistical disparities. Since the proposed development plan has not come to fruition, there

29

has been no disparate impact as the Plaintiffs rely only on census data and hypothetical scenarios without any direct evidence that any conduct by Defendants caused a disparate impact against minority members in Wallington.

Even if there is a racial imbalance, the same could not solely be directed at Plaintiffs' development projects and therefore Plaintiffs cannot satisfy the robust causality requirement for disparate impact claims. *Inclusive Cmtys. Project,Inc., 576 U.S. at 544 (2015).* Moreover, a reasonable jury could conclude the Plaintiffs' seven-year delay in developing their projects caused a disparate impact. Since Plaintiffs cannot show a significant adverse impact related to any policy or practice of the Defendants, then as a matter of law Plaintiff cannot maintain a claim for disparate impact. Therefore, the court should grant summary judgment in favor of Defendants.

### 3. Defendants have articulated a legitimate, non-discriminatory rationale.

Assuming, *arguendo,* Plaintiffs show a policy and a significant adverse impact with robust causality, the transcripts show that the planning board discussed at length legitimate land used concerns such as, *inter alia*, open space and land density issues presented by the Plaintiffs' insistence on maintaining the roller rink, and environmental issues with the properties (see, Exhibits "H" "I" "J" and "K", attached hereto  Planning Board Hearing Transcripts). Defendants' rationale for denying Plaintiffs' applications was clearly set forth in its resolution

30

wherein Defendants noted that the denial was necessitated by Plaintiffs' insistence on maintaining the existing roller rink building and building the proposed housing units and parking structures around that accessory use (see, Exhibit "G" attached hereto, Resolution 18-326).  Additionally, the Board noted that Plaintiffs' failure to provide a valid reason for maintaining the roller rink was especially egregious as the variances sought were for important planning goals such as open space, impervious ground coverage and building height that may encroach visibility and light (see, Exhibit "G" attached hereto, Resolution 18-326).

Further, any allegation that such rationale is merely pre-text for discrimination is disproven by the fact that members of the Planning Board proposed a motion to approve Plaintiffs' application subject to the removal of the existing skating rink (see, Exhibit "K" at 20:11-21).  Since Plaintiffs have failed to identify a policy, show significant adverse impact and show that Defendants' legitimate non-discriminatory rationale was pretext, then as a matter of law Plaintiffs cannot maintain a claim of disparate impact.  Therefore, the Court should grant summary judgment in favor of Defendants.

**V.    THE COURT SHOULD GRANT DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFFS FAILED TO ESTABLISH VIOLATIONS UNDER § 1983.**

Plaintiff's Amended Complaint has failed to set forth a cause of action to maintain a claim under 42 U.S.C. §1983 for alleged violations of the equal

31

protection clause of the 14th Amendment. 42 U.S.C. does not create substantive rights, but provides only remedies for deprivations of rights established in the Constitution or elsewhere in federal laws. *Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996). Under 42 U.S.C. § 1983, a plaintiff must plead that he was deprived a constitutional right and that the deprivation of the constitutional act was caused by a person acting under color of state law. *Id*. Here, Plaintiffs allege a violation of 42 U.S.C. §1983 based on racial discrimination (Exhibit A at ¶¶178-184).

To state a traditional equal protection claim, a plaintiff (i) must allege facts showing the existence of purposeful discrimination; and (ii) must demonstrate that they received different treatment from that received by other individuals similarly situated. *Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009).   Since proof of discriminatory intent is required to show a violation of the Equal Protection Clause, plaintiffs must do more than speculate on discriminatory intent or purpose. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Any failure of the individual Defendants to provide notice does not rise to malicious and intentional conduct as a matter of law.

In this matter, plaintiffs have failed to show how any actions of the defendants violated their due process rights, or how any of their actions were

32

motivated to exclude minority populations from the Borough. Simply, alleging discrimination is not enough.

42 U.S.C. § 1983 provides in pertinent part as follows:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be        liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The New Jersey Supreme Court has established high standards for bringing a §1983 claim to challenge the actions of municipal officials. In *General Motors v. City of Linden*, 143 N.J. 336, 350 (1996), the New Jersey Supreme Court held that there is no basis for courts to award relief pursuant to § 1983 to correct an arbitrary tax assessment because New Jersey law provides an adequate legal remedy. In *Rivkin v. Dover Twp. Rent Leveling Bd.*, 143 N.J. 352, 357 (1996), the New Jersey Supreme Court found that "similar principles of federalism lead generally to the same conclusion in the context of land use controls." The New Jersey Supreme Court held that "absent egregious misconduct that *shocks the conscience* in the sense of violating civilized norms of governance, or invidious discrimination on the part of a board member or board, so long as the State provides a plain, adequate and timely remedy to redress irregularities in the proceedings, a party aggrieved by

33

the determinations of a municipal . . . board does not have a claim for relief under § 1983." Id. at 358.

Shortly after the New Jersey Supreme Court had decided both *General Motors* and *Rivkin* the United States Supreme Court similarly held as follows:

> It should not be surprising that the constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability.  Thus, we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm . . . the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.

*County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).

In this matter, Plaintiffs alleged that Defendant Mayor Tomko, members of the Planning Board, Defendant Siek and Defendant Assenheimer acted under color of law and perpetuated discriminatory actions against them.  However, Plaintiff's complaint does not allege any facts at all that show the existence of purposeful discrimination or discriminatory intent whatsoever.  The claims against Mayor Tomko are based on a limited number of innocuous comments regarding overcrowding.  These statements do not rise to the level of discriminatory intent or purposes as a matter of law.  Moreover, the days of hearings and the Planning Board's resolution denying Plaintiffs' applications prove there was no

34

discriminatory intent.  The hearings and resolution denying Plaintiffs' applications prove show the denial was simply based on Plaintiff's insistence on maintaining the existing roller rink.  Since the evidence shows unequivocally that Defendants had no discriminatory intent or purpose, then as a matter of law, Plaintiffs cannot maintain claims under 42 U.S.C. §1983 for alleged violations of the equal protection clause of the 14th Amendment.  Therefore, the Court should grant summary judgment in favor of Defendants.

Further, with respect to Defendant Siek, Plaintiffs merely contend that Defendant Siek failed to provide any notice to New Wallington Home that taxes were delinquent. Any failure of the individual Defendants to provide notice does not rise to malicious and intentional conduct as a matter of law.  At most, this may show dereliction of duty but does not show purposeful discrimination or intent. Further, as Tax Collector, neither Defendants Siek nor Defendant Assenheimer have any involvement in decisions of the Planning Board or governing body. Any failure of the individual Defendants to provide notice does not rise to any actionable malicious and intentional conduct as a matter of law.

## VI.    COMITY AND THE TAX INJUNCTION ACT OF 1937 MANDATE DISMISSAL OF THE TAX BASED CLAIMS IN THE FOURTH, FIFTH AND SIXTH COUNTS BECAUSE PLAINTIFFS CAN OBTAIN A PLAIN, SPEEDY, AND EFFICIENT REMEDY IN NEW JERSEY STATE COURT.

The Tax Injunction Act of 1937 (the "TIA") prohibits federal courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Act "embodied Congress' decision to transfer jurisdiction over a class of substantive federal claims from the federal district courts to the state courts, so long as state-court procedures were 'plain, speedy and efficient.'" *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 515 n.19 (1981).

While the TIA only prohibits declaratory relief in state tax cases, *Hardwick v. Cuomo*, 91 F.2d 1097, 1104 (3d Cir. 1989), the Supreme Court has held that the principle of comity supplements the TIA and bars federal courts from awarding monetary damages in state tax disputes. *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 107(1981).

In *McNary*, the Supreme Court reasoned that permitting § 1983 suits challenging the validity of state tax assessments "would intrude on the enforcement of the state [taxation] scheme" and have a "chilling effect" on officials enforcing the tax laws. *McNary*, 454 U.S. at 114-15. Echoing the requirements of the TIA,

36

the Court declared that such suits must be brought in state court so long as the state's remedies "are plain, adequate and complete." *Id.* at 116.

The exceptions to the rule barring federal courts from asserting jurisdiction over state tax disputes are narrow. *California v. Grace Brethren Church*, 457 U.S. 393 (1982). The Third Circuit has set a high bar. "[T]he critical criterion as to the adequacy of the remedy available to the taxpayers is not the relief which they can obtain in [the State] proceedings, but whether [the State] provides a forum for presentation of their claims." *Hardwick v. Cuomo*, 891 F.2d at 1106.

Plaintiffs have a forum for presentation of their claims in the Superior Court of New Jersey, Law Division to pursue an action in lieu of prerogative writs. The Amended Complaint alleges that the Borough failed to adhere to the requirements of state law in imposing the tax lien, enforcing it, and collecting interest and penalties as a result (Exhibit "A" at ¶¶ 132-163). *See, De Hart v. Bambrick*, 177 N.J. Super. 541, 546 (App. Div. 1981); *N.J. Ct. R.* 4:69. Thus, the Court must decline jurisdiction over Plaintiffs' state tax claims because the state gives it a procedure by which to have its claims heard and obtain a "plain, adequate, and complete remedy." *McNary*, 454 U.S. at 116. The Third Circuit has affirmed a district court's dismissal of a § 1983 claim against employees of the Division of Taxation on precisely that basis in *Reagle v. Elliott*, 80 Fed. Appx. 737, 738 (3d Cir. 2003). The availability of the specific remedy sought is not relevant.

37

*Frybarger v. N.J. Dep't of the Treasury*, 2006 U.S. Dist. LEXIS 93365, *8, 2006 WL 3827331 (D.N.J. December 27, 2006). Accordingly, as a matter of law, this Court does not have jurisdiction to adjudicate Plaintiffs' state tax claims. Therefore, the Court should grant summary judgment dismissing.

## VII.  THE COURT SHOULD DENY PLAINTIFFS' DEMAND FOR DAMAGES.

Here, Plaintiffs are not entitled to damages as Plaintiffs have failed to establish damages under the Fair Housing Act and 42 U.S.C. §§3601 – 3619, and 42 U.S.C. § 1983.  Under the Fair Housing Act, the court *may* award damages if it finds that a discriminatory housing practice has occurred or is about to occur.  42 U.S.C. §3613(c)(1).  Additionally, damages are available for claims under 42 U.S.C. § 1983 for action found to be violative of constitutional rights and have caused compensable injury.  *Wood v. Strickland*, 420 U.S. 308, 319 (1975).  As set forth above, Plaintiffs have failed to establish any violations of either the Fair Housing Act or 42 U.S.C. §1983 entitling Plaintiffs to any award of damages. Therefore, the Court should deny Plaintiffs' request for damages.

Further, Plaintiffs' request for damages is inconsistent with the record before this Court. Pursuant to *F.R.E 702* the District Court performs rigorous gatekeeping function to ensure that a party's expert is qualified, proposed testimony is reliable and the expert's testimony is sufficiently tied to the facts of the case.  *Cohen v. Cohen*, 125 F. 4th 454, 460 (3d Cir. 2025). In assessing, reliability of an expert the

38

Courts look to whether the expert's findings are supported by "good grounds." *Cohen*, 125 F. 4th at 462 (3d Cir. 2025). Here, Plaintiffs' damages expert Arthur Linfante seemingly relies on data from 2016 to 2024 to calculate $23,672,000.00 (see, Exhibit "S" attached hereto at pp. 47- 66).  However, Mr. Linfante's report fails to account for the fact that Plaintiffs have had approvals to develop the sites since 2019 (see, Exhibit "F").  Also, Mr. Linfante's report fails to account for the fact that Plaintiff New Wallington Home had approval in April 2016 and Plaintiff Morningside did not apply for site plan approval until December 2016.  Thereafter, hearings were conducted to determine whether the site plans should be approved. Accordingly, any damages asserted by Mr. Linfante would be offset by Plaintiffs' delays in moving forward with the projects and delays from the hearings necessary to review Plaintiffs' site plan applications.

Further, Mr. Linfante noted the limitations and uncertainty of his opinions: "The opinions of value expressed in this report are based on estimates and forecasts that are prospective in nature and subject to considerable risk and uncertainty." (see, Exhibit "S", attached hereto at pg. 65). Accordingly, issues exist with respect to the reliability of Mr. Linfante's finding for purposes of admissibility. *Cohen*, 125 F. 4th at 461-462 (3d Cir. 2025).  Since Plaintiffs' request for damages is unsupported by record and the Court has not determined the reliability of Mr. Linfante, this matter is not ripe for any determination on

damages.   Therefore, Plaintiffs' request for compensatory damages should be denied.

Further, the Court should deny Plaintiffs' demand for non-monetary damages as Plaintiffs already have approval to develop their sites (see, Exhibit "F").  "Federal Courts have expressly disavowed any desire to sit as a statewide board of zoning appeals hearing challenges to actions of municipalities." *Izzo v. River Edge*, 843 F.2d 765, 769 (3d Cir. 1988).  "Land us policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong." *Id.*  As Plaintiffs have approvals for the development of their sites, their request for injunctive relief is merely superfluous. Therefore, the court should deny Plaintiffs' request for injunctive relief.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that as a matter of law Plaintiffs' claims are barred by *Res Judicata*, the statute of limitations and the doctrine of standing; and there are no genuine issues of material fact that support their claims under the Fair Housing Act and or 42 U.S.C. §1983.  Therefore, the Court should grant summary judgment in favor of Defendants.

_____
**GERALD A. SHEPARD, ESQ.**

April 1, 2026

40