# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NEW WALLINGTON HOME, LLC, a New Jersey limited liability company; MORNINGSIDE at WALLINGTON, LLC, a New Jersey limited liability company, <br><br> *Plaintiff(s)* <br><br> vs. <br><br> BOROUGH OF WALLINGTON, and BOROUGH OF WALLINGTON PLANNING BOARD; MARK W. TOMKO in his official capacity as former Mayor of the Borough of Wallington; DOROTHY B. SIEK, in her official capacity as former Tax Collector for the Borough of Wallington; and CHRISTOPHER ASSENHEIMER, in his official capacity as Certified Tax Collector of the Borough of Wallington, <br><br> *Defendant(s)* | CIVIL ACTION NO. 2:20-cv-08178 <br><br> Hon. Evelyn Padin, U.S.D.J. <br> Hon. Andre M. Espinosa, U.S.M.J. |

---

## DEFENDANTS' COUNTER STATEMENT OF FACTS IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

---

Of Counsel
*Mary C. McDonnell*

On the Brief
*Mary C. McDonnell*
*Gerald A. Shepard*

## DEFENDANTS' COUNTER STATEMENT OF FACTS IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

### The Parties

1. Plaintiff, Morningside, is a New Jersey limited liability company with its principal place of business at 27 Horseneck Road, Suite 301, Fairfield, New Jersey. Morningside is the fee simple owner of a 3.687-acre parcel designated on the Borough's Municipal Tax Map as Lot 35.01, Block 71 (the "Morningside Property"). The Morningside Property is situated along Main Avenue in Wallington and is contiguous to the New Wallington Home Property (Exhibit "A", Plaintiffs' Amended Complaint at ¶ 16).

2. Plaintiff, New Wallington Home, is a New Jersey limited liability company with its principal place of business located at 27 Horseneck Road, Suite 301, Fairfield, New Jersey. New Wallington Home is the successor in interest to the Wallington Group. New Wallington Home is the present owner of the New Wallington Home Property (Exhibit "A" at ¶ 17).

3. Defendant, Borough of Wallington Planning Board, is a quasi-judicial body having an address at 24 Union Boulevard, Wallington, New Jersey. The Board was created by the Borough and is vested with authority under the New Jersey Municipal Land Use Law, N.J.S.A. 40:55D-1, *et seq.* ("MLUL") to, among other things, conduct site plan review and approval (Exhibit "A" at ¶ 18).

4.   Defendant, Borough of Wallington, is a municipal corporation having an address at 24 Union Boulevard, Wallington, New Jersey (Exhibit "A" at ¶ 19).

5.   Defendant, Mark W. Tomko, is the former Mayor of the Borough and is being sued in his official capacity. He served as Mayor until 12/31/19 (Exhibit "A" at ¶ 20).

6.   Defendant Mark W. Tomko passed away on June 29, 2022.

7.   Defendant, Dorothy B. Siek, was the former Certified Tax Collector of the Borough and is being sued in her official capacity. She retired in April of 2019 (Exhibit "A" at ¶ 21).

8.   Defendant Dorothy Siek passed away on June 16, 2023.

9.   Defendant, Christopher Assenheimer, is the former Certified Tax Collector of the Borough, having immediately succeeded Siek, and is being sued in his official capacity as Certified Tax Collector of the Borough of Wallington (see, Exhibit "A" at ¶ 22).  He served in this position from May 2019 to December 31, 2020 (Exhibit "B" Defendant Assenheimer's certified answers to interrogatories at no. 12).

10.  James Nuckel is the sole owner of New Wallington Home and Morningside at Wallington, LLC (see, Exhibit "C" attached hereto, Plaintiff dep trans. at 16:14-18 and 23:7-12).

2

11. Additionally, Mr. Nuckel is the president of JN Management, trading as VAP International, which is a property management company that manages Plaintiff Morningside at Wallington and New Wallington Home, LLC (see, Exhibit "C" attached hereto, Plaintiff dep trans. at 13:11-22 and 15:14 – 16:2).

**Properties Litigation History**

12. In 2006, Plaintiff New Wallington Home's predecessor, the Wallington Group, commenced affordable housing litigation against the Borough in the matter entitled *The Wallington Group, LLC, and Morningside at Wallington, LLC v. Borough of Wallington, et al.*, in the Superior Court of New Jersey, Bergen County, Law Division, Docket No. BER-L-373-06 (the "Builder's Remedy Litigation") (Exhibit "A" at ¶ 41).

13. In the Builder's Remedy Litigation, the Wallington Group sought: (a) a declaration that the Borough had not met its affordable housing obligations under the NJFHA and COAH; (b) a builder's remedy requiring the Borough to rezone the New Wallington Home Property to permit multi-family residential use; and (c) an order directing that the Wallington Group's inclusionary development application be "fast tracked" (Exhibit "A" at ¶ 42)

14. Morningside intervened in the action and participated with the Wallington Group in seeking the same relief for its property, which is contiguous to the New Wallington Home Property (Exhibit "A" at ¶ 43).

15. Ultimately, the court, in the Builder's Remedy Litigation, entered an Order declaring the land use controls and zoning ordinances of the Borough of Wallington as being "invalid," and "not in compliance with the requirements of the New Jersey State Constitution, the Mount Laurel Doctrine, the [New Jersey] Fair Housing Act and the New Jersey Council on Affordable Housing." (The "Invalidation Order"). (Exhibit "A" at ¶ 44).

16. Through a subsequent Order, the Superior Court required the Borough to zone the lands in question for residential, multi-family use, and also required that certain of the multi-family units be restricted to low- and moderate-income families (the "Builder's Remedy Order") (Exhibit "A" at ¶ 45).

17. The award of the builder's remedies to the Wallington Group and Morningside was then codified by a Final Order approving the rezoning of the lots in question by creation of the Planned Residential – Mt. Laurel Zone ("PR-ML Zone") applicable to these lots (Exhibit "A" at ¶ 47).

18. Five years later, On December 10, 2013, Plaintiff New Wallington Home, successor in interest to the Wallington Group,  submitted an application to the Planning Board for approval of the residential development on Lot 35.01, proposing 134 multi-family residential dwelling units, including 27 affordable housing units (Exhibit "D" Judge Meehan Order April 22, 2015 at pg. 2).

19. The application was deemed incomplete by the Planning Board. It was determined that New Wallington Home's application would not be complete until a simultaneous filing of Morningside's site plan application (Exhibit "A" at ¶ 51).

20. On February 4, 2014, New Wallington Home filed a verified complaint and order to show cause seeking to require the Planning Board to deem New Wallington Home's application complete (Exhibit "D" Judge Meehan Order at pg. 2).

21. On April 24, 2014, the parties entered into a consent order with Plaintiff New Wallington Home acknowledging that the New Wallington Home and Morningside properties could be developed separately (Exhibit "D" Judge Meehan Order at pg. 2).

22. The initial public hearing on New Wallington Home's application was held on July 15, 2014. The Planning Board conducted additional hearings on September 16, 2014, and October 21, 2014, culminating in a resolution entered on October 21, 2014, denying the New Wallington Home application (Exhibit "D" Judge Meehan Order at pg. 2).

23. Subsequently, New Wallington Home appealed the Planning Board's denial of its site plan application. This resulted in the Superior Court reversing the Planning Board's denial in a decision entered on April 22, 2015 and remanded

the matter to the Planning Board for additional hearings on issues of building height, sewage, and the driveway and easement from the skating rink (Exhibit "D" Judge Meehan Order at pg. 9-10).

24. On April 19, 2016, following the Superior Court's ruling of March 2, 2016, that New Wallington Home's development application was fully approved by the Planning Board (Exhibit "E" attached hereto, Resolution 16-300)).

25. Despite having site plan approval, Plaintiff New Wallington Home waited approximately seven months and then on December 12, 2016, Plaintiff New Wallington Home sought to amend its site plan approval; and, at the same time Plaintiff Morningside submitted an application for a development plan (see, Plaintiff's Exhibit "F" Judge Farrington decision at pg. 5).

26. Plaintiff Morningside submitted its revised site plans on April 21, 2017 (Exhibit "V" attached hereto, Plaintiff's Morningside's Site Plan Application).

27. From May 16, 2017 to December 2017, the Plaintiffs jointly presented testimony with respect to: Plaintiff Morningside at Wallington, LLC's request for site plan approval, Plaintiff New Wallington Home's petition to amend its prior approval to amend parking, traffic flow and trash collection in consideration of the adjacent development (see, Exhibit "G" attached hereto, Resolution 18-326).

28.    During the hearings, there was extensive discussion on Plaintiffs' insistence on maintaining the existing roller rink creating greater congestion in the area as the building would (see, Exhibit "H" attached hereto, May 17, 2017 hearing transcript at 43:19 – 47:21, 54:4-11, 64:16 -65:15; Exhibit "I" attached hereto, July 18, 2017 hearing transcript at 39:18 – 41:13, 50:4 – 12, Exhibit "J" attached hereto, September 19, 20217 hearing transcript at 68:19 – 70:1; 79:12 – 80:11; 81:8-18, Exhibit "K" attached hereto, December 19, 2017 Transcript at 13:15 – 17:12).

29.    Also, Plaintiffs' experts were asked questions about site contamination being note on the DEP website, sewer issues, Building Height and traffic concerns (see, Exhibits "H", "I", "J" and "K" attached hereto)

30.    Additionally, Plaintiff Morningside sought variances for rear lot line setback, maximum building height, permitting off street parking within 50 feet of Main Avenue, Maximum building coverage, Maximum impervious ground coverage, Minimum open space requirements, and buffer requirements as well as waiver from certain technical requirements to be included on the site plans (see, Exhibit "G"  Resolution 18-326).

31.    Members of the Defendant Planning Board even moved to approve the application on the condition that the recreation building be eliminated, but were advised that the procedurally the board would have to vote to deny the application as  (see, Exhibit "K" attached hereto, at 20:14 – 21:18).

32.    The Planning Board ultimately denied the application and its denial was memorialized by written resolution at a meeting on January 16, 2018 (Exhibit "G" Resolution 18-326).

33.    Following their application denials, in 2018, Plaintiffs filed a verified complaint in the Superior Court of New Jersey, Bergen vicinage, docket number BER-L-1670-18 against defendants regarding the Planning Board's denial of both Plaintiffs' applications (see, Exhbit "F" Judge Farrington Decision).

34.    Mr. Nuckel testified that in 2017 he believed that Borough of Wallington had a discriminatory animus towards (see, Exhibit "C" attached hereto, Plaintiff dep trans. at 74:7-17).

35.    Mr. Nuckel believed the verified complaint filed in 2018 alleged violations of the Fair Housing Act (see, Exhibit "C" attached hereto, Plaintiff dep trans. at 73:4-14).

36.    The transcripts of the hearings from July 2017 to December 2017 wherein Plaintiffs alleged Defendants showed discriminatory animus were presented

8

to the court in the prior action, Docket No. BER-L-1670-2018 (see, Exhibit "F" Judge Farrington Decision) (see also, hearing transcripts at Exhibits "I" "J" and "K" which have the prior docket no. stamped on top).

37. Additionally, Defendants' Resolution denying Plaintiffs' site plan applications was presented in the underlying matter before Judge Farrington (see, Exhibit "F" Judge Farrington decision pp. 6-8).

38. On January 17, 2019, Judge Farrington approved, in their entirety, including all variances, Plaintiff New Wallington Home's *amended* application and Plaintiff Morningside's application for final development (see, Exhibit "F" Judge Farrington decision)

**Defendant's compliance with Affordable Housing**

39. In 1979, Defendant Borough of Wallington adopted a master plan in accordance with The Municipal Land Use Law ("MLUL"), N.J.S.A. 4:55D-62a, containing a land use plan element and housing plan element (see, Exhibit "M" attached hereto, Master Plan).

40. The Master Plan underwent reexaminations and amendments in 1980, 1990, 2006 and most recently 2020 (see, Exhibit "M" attached hereto, Master Plan).

41. The 2006 Reexamination Report recognized the Borough's obligation to prepare an affordable housing plan and recommended that the Borough take

9

steps to implement COAH Third Round Obligations (see, Exhibit "M" Master Plan).

42. The Borough adopted affordable housing plans in 2007, 2008 and 2009 to comply with COAH Third Round obligations(see, Exhibit "M" Master Plan).

43. On July 6, 2015, Defendant Borough of Wallington filed a declaratory judgment action seeking a judicial determination of compliance the prior and Third Round affordable housing obligation (see, Exhibit "M" master plan at and Exhibit "P" Fair Share Housing Settlement).

44. In 2015, Defendants filed declaratory judgment action In the Matter of The Application of the Borough of Wallington for Judgment of Compliance and Repose, Docket No. BER-L-6285-15 seeking judicial determination of compliance with the Borough's Third Round affordable housing obligation (see, Exhibit "P").

45. The DJ Action was settled with the Fair Share Housing Center ("FSHC") and the settlement was approved by the Superior Court of New Jersey, Hon. Christine Farringon, J.S.C. presiding after a Fairness Hearing held on November 20, 2019 (see, Exhibit "L" attached hereto, Caldwell Report).

**Tax Claims**

46. By its own admission, Plaintiff New Wallington Home withheld property tax payments that were assessed against its property the Borough in 2016 through 2018 (Exhibit "A" at ¶ 136).

47. According to the Amended Complaint, Plaintiffs allege that with regard to the 2016-2018 taxes, the Borough and its then-Certified Tax Collector, Defendant, Dorothy Siek ("Siek"), failed to provide any notice to New Wallington Home that the taxes were delinquent (Exhibit "A" at ¶ 141).

48. Plaintiffs further allege that despite their demand, Siek was "unable or unwilling to provide proof that any of the notices of delinquency or the notice of tax sale were mailed to, delivered to, or received by Plaintiff New Wallington Home" (Exhibit "A" at ¶ 142).

49. Then, the Borough issued tax certificate #17-016 regarding Plaintiff New Wallington Home's unpaid property taxes. This lien was assessed upon the property by the Borough and constitutes a cloud on title (Exhibit "A" at ¶ 143).

50. Plaintiffs further allege that the Borough's former Certified Tax Collector, Defendant Assenheimer, has not supplied any evidence that the notice of the tax sale was mailed to Plaintiff New Wallington Home or posted in public

11

places, despite repeated request for same (Assenheimer was employed by the Borough from May 2019 to December of 2020) (Exhibit "A" at ¶ 145).

51. By its own admission, Plaintiff New Wallington Home withheld property tax payments that were assessed against the New Wallington Home Property by the Borough in 2016 through 2018 (Exhibit "A" at ¶ 136).

52. According to the Amended Complaint, Plaintiffs allege that with regard to the 2016-2018 taxes, the Borough and its then-Certified Tax Collector, Defendant, Dorothy Siek ("Siek"), failed to provide any notice to New Wallington Home that the taxes were delinquent (Exhibit "A" at ¶ 141).

53. Plaintiffs further allege that despite their demand, Siek was "unable or unwilling to provide proof that any of the notices of delinquency or the notice of tax sale were mailed to, delivered to, or received by New Wallington Home" (Exhibit "A" at ¶ 142).

54. Then, the Borough issued tax certificate #17-016 regarding New Wallington Home's unpaid property taxes. This lien was assessed upon the property by the Borough and constitutes a cloud on title (Exhibit "A" at ¶ 143).

55. Plaintiffs further allege that the Borough's former Certified Tax Collector, Defendant Assenheimer, has not supplied any evidence that the notice of the tax sale was mailed to New Wallington Home or posted in public places, despite repeated request for same (see, Exhibit "A" at 143).

56.    Notice of the Tax Sale was published in the Bergen Record on 11/24/2017, 11/30/2017, 12/1/2017, 12/08/2017, 12/14/2017 and 12/15/2017 (see, Exhibit "U" attached hereto a copy of the Affidavit of Publication and Tax Sale Notice).

57.    Assenheimer was only employed by the Borough from May 2019 to December of 2020) (Exhibit "B" Defendant Assenheimer's Answers to interrogatories).

58.    Defendants now move for summary judgment.