NEW WALLINGTON HOME, LLC and
MORNINGSIDE AT WALLINGTON, LLC

                    Plaintiffs,

        vs.

BOROUGH OF WALLINGTON PLANNING
BOARD and BOROUGH OF WALLINGTON

                  Defendants.

SUPERIOR COURT OF NEW JERSEY

LAW DIVISION

BERGEN COUNTY

DOCKET NO. L-8546-14

**COURT'S DECISION**

William C. Meehan, J.S.C. (retired and temporarily assigned on recall)

At the center of this action in lieu of prerogative writs is property located in Wallington, New Jersey ("the Property"). The Property consists of two lots: Block 71, Lot 35.01 and Lot 35.02. The property is located within the PR-ML Planned Residential Mount Laurel Zone. Lot 35.02 is a landlocked vacant parcel with access from the public street only via an easement over Lot 35.01. Lot 35.01 has existing commercial uses with easements over Lot 35.02 for truck access.

From 2006 through 2009, the Wallington Group, LLC and Morningside at Wallington, LLC, owner of Lot 35.02, were parties to affordable housing litigation Superior Court of New Jersey, Law Division, Bergen [EXHIBIT D] ER-L-373-06. On March 18, 2008, the

EXHIBIT
D

Honorable Jonathon N. Harris, J.S.C. issued a written opinion. Judge Harris ruled that the zoning ordinance of the Borough of Wallington ("the Borough") failed to provide a realistic opportunity for the development of affordable housing. As such, he entered judgment for builder's remedies, which permits the development of up to 208 residential units with twenty percent set aside for affordable housing on Lot 35.01. The opinion acknowledged the pre-existing access easement through Lot 35.02.

Judge Harris' opinion was implemented by an order entered on April 9, 2008, which required the Borough to adopt new zoning regulations for Lots 35.01 and 35.02 to allow for multifamily development with affordable housing units. The zoning regulations adopted by the Borough did not require combined or simultaneous development of the lots.

On December 10, 2013, New Wallington filed a development application with the Wallington Planning Board ("the Board"). The application proposed a residential development on Lot 35.01 containing 134 multifamily dwellings, 27 of which would be affordable housing units. On February 4, 2014, New Wallington filed a verified complaint and order to show cause with this court seeking a determination on the development application. On April 24, 2014, the parties entered into a consent order, which permitted the two lots to be developed at separate times. On July 8, 2014, New Wallington delivered an easement instrument to the Bergen County Clerk for recording.

On July 15, 2014, September 16, 2014l, and October 21, 2014, the Board held public hearings on the development application. On October 21, 2014, the Board unanimously voted to deny New Wallington's application.

Plaintiffs filed the present action on September 11, 2014 seeking a declaration that (1) the easement at issue did not constitute an expansion of a nonconforming use; (2) New Wallington

2

P000022

was not required to obtain a variance from the Board of Adjustment; (3) alternatively, directing the Borough to amend its zoning ordinance; and (4) directing the Planning Board to hear New Wallington's application expeditiously. Plaintiffs filed an amended complaint on December 19, 2014.

<b><u>Arguments of the Parties</u></b>

*Plaintiffs' Argument*

Plaintiffs argue that the denial of the application violated Judge Harris' order and the PR-ML zone criteria. Pursuant to <u>Southern Burlington County NAACP v. Mount Laurel Township (Mount Laurel II)</u>, 92 <u>N.J.</u> 158, 193 (1983), the Board should have approved the applications. Plaintiff asserts that the Board improperly rejected Judge Harris' prior determination to award separate builder's remedies, which allowed the lots to be separately developed. Further, the opinion showed that there were existing easements for vehicular and pedestrian traffic between the lots. Specifically, Lot 35.02 has access to Main Avenue via easement. The ingress and egress extends across a portion of Lot 35.02 up to the loading docks of the warehouse on Lot 35.01 where the roller rink is located. The easement will not change, aside from driveway improvements. Plaintiffs contend that the driveway cannot be considered an expansion of the nonconforming uses on Lot 35.01 because that interpretation is inconsistent with the concept of separate development. Also, Judge Harris approved this means of ingress and egress.

Plaintiffs further argue they are entitled to the minor and technical variance relief required for its proposed development, and the Board's denial of the variances was arbitrary, capricious, and unreasonable. Three variances for street access, building length, and building height were sought. <u>N.J.S.A.</u> 40:55D-36 provides that planning boards may permit the erection of buildings that do not have street access if there are sufficient safety measures taken. Judge

3

P000023

Harris' opinion as well as plaintiffs' traffic expert show that the requirements of the statute have been met.

At the hearing before the Board, plaintiffs' architect testified as to why the buildings were to exceed the maximum building length of 225 feet. The buildings, which are to be 258 feet long, will be more efficient at that length due to the size and layout of the lot. The maximum permitted building height is four stories and 45 feet. Here, the buildings are designed to be four stories and 49.5 feet. The building is over the maximum amount because the plans call for a pitched roof, which plaintiffs contend is easier to maintain and more aesthetically pleasing. However, if necessary, the buildings can be built with flat roofs, and a variance will not be needed.

Lastly, plaintiffs contend there was no basis in fact or law for the Board's denial of the application. A planning board's resolution must include an articulation of findings and reasoning. Connors v. Westwood Zoning Board of Adjustment, 81 N.J. 597, 610 (1980). Plaintiffs contend the Board did not proffer sufficient reasons for its denial of the application.

*Defendants' Argument*

Defendants argue that the Board's decision to deny plaintiffs' application was not arbitrary, capricious, or unreasonable. Further, defendants contend that plaintiffs required a use variance because the proposed construction enlarges the non-conforming use in two respects. Defendants assert the internal traffic circulation requires commercial trucks to wind through the property to exit, and the use of the driveway easement for both lots is an expansion of a non-conforming use. In Nuckel v. Little Ferry Planning Board, the New Jersey Supreme Court found that the applicant required a use variance because a driveway continued across the corner of an adjacent lot, and the zoning code only allowed for one principal use per lot. The Wallington

4

P000024

Zoning Code also does not allow for more than one principal use on a single lot. The uses of the contiguous lots will conflict here because the easement requires commercial traffic to wind through the residential lot 35.02 to exit. Accordingly, defendants contend that a use variance is necessary. However, this assertion is not factually correct.

Defendants further contend plaintiffs did not provide adequate evidence to support the granting of a c(2) variance. A c(2) variance will be granting if the approval will benefit the community, and not just the owner of the property. Kaufmann v. Planning Board for Warren Tp., 110 N.J. 551 (1988). Defendants contend that the development of the property here solely benefits the property owner, and not the community.

Defendants also argue that plaintiffs did not meet the negative criteria under N.J.S.A. 40:55-D-70. Variance relief may be granted if the applicant proves that (1) there is no substantial detriment to the public good, and (2) the intent and purpose of the zone plan and planning ordinance will not be impaired. Medici v. BPR Co., 107 N.J. 1, 4 (1987). It would be dangerous if commercial vehicles are permitted to exit through the residential lot, and this would be a detriment to the public.

### Applicable Law and Analysis

Where a plaintiff has appealed an action of a Planning Board, the reviewing court applies the arbitrary, capricious, and unreasonable standard. See, e.g., Kramer v. Bd. of Adj., Sea Girt, 45 N.J. 268, 296-97 (1965). Under this standard of review, the plaintiff has the burden of proving that the action of the board, in approving or denying the plaintiff's application was arbitrary, capricious and unreasonable, and a clear abuse of discretion by the Board. Allen v. Hopewell Twp. Zoning Bd., 277 N.J. Super. 574, 580 (App. Div. 1988); Jessler v. Bowker, 174

5

P000025

N.J. 478, 486 (App. Div. 1979). Further, the plaintiff also has to overcome the presumption that the factual determinations made by the board are valid. This is because the law is clear that a board's "factual conclusions are entitled to great weight and, like those of an administrative body ought not to be disturbed unless there is insufficient evidence to support them." Rowatti v. Gonchar, 101 N.J. 46, 51–52 (1985).

Thus, as long as the power exists for the local board or governing body to perform the challenged action and substantial evidence to support such action is contained in the record below, the judicial branch of government has no power to interfere. Ibid. at 296. Consequently, "[e]ven when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved." Kramer, supra, 45 N.J. 268 at 296–97. Thus, only where the court finds a local zoning determination to be arbitrary, capricious, or unreasonable that the court may set aside the board's action.

Implicit within this standard is the presumption that local boards and governing bodies will "act fairly and with proper motives and for valid reasons," and in accordance with their special familiarity and knowledge of local conditions. Id. at 296 (quoting Ward v. Scott, 16 N.J. 16, 23 (1954)). This unique "familiar[ity] with their community's characteristics and interests…[makes local officials] the best equipped to pass initially on such applications. Ibid. (quoting Ward v. Scott, supra, 16 N.J. 16 at 23).

However, the deference accorded to the board does not also extend to the board's determinations of law. While it is true that boards, as quasi-judicial bodies, are allowed to make certain legal conclusions, such legal determinations do not receive the same presumption of

6

P000026

validity. See, e.g., Reich v. Fort Lee Zoning Bd., 414 N.J. Super. 483, 499 (App. Div. 2010). Rather, they will be subject to de novo review when challenged in the Law Division. See id.

A (d) use variance will be granted only if the applicant satisfies both the positive and negative criteria of N.J.S.A. 40:55D-70. The positive criteria are referred to as the "special reasons" requirement. The special reasons required for a use variance may be found in the following three categories of circumstances: (1) where the proposed use inherently serves the public good, such as a school, hospital or public housing facility, (2) where the property owner would suffer "undue hardship" if compelled to use the property in conformity with the permitted uses in the zone, and (3) where the use would serve the general welfare because the proposed site is particularly suitable for the proposed use. See Sica v. Board of Adjustment of Tw. of Wall, 127 N.J. 152, 159-160 (1992); Smart SMR v. Fair Lawn Bd. of Adj., 152 N.J. 309, 323 (1998).

A use is inherently beneficial when it is universally considered of value to the community because it fundamentally serves the public good and promotes the general welfare. If such use is held to be inherently beneficial, it presumptively satisfies the positive criteria. Other uses can demonstrate that they serve that purpose by showing they are peculiarly fitted to the particular location for which the variance is sought. Burbridge v. Mine Hill Tp., 117 N.J. at 386; Homes of Hope v. Eastampton Twp Land Use Planning Board, 409 N.J. Super. 330, 335 (App. Div. 2009); New York SMSA v. Bd. Of Adju., 370 N.J. Super. 319, 335-336 (App. Div. 2004).

In order to satisfy the negative criteria of N.J.S.A. 40:55D-70, the Applicant must prove that she would not create a substantial detriment to the public good, and the intent and purpose of the zone plan and zoning ordinance will not be substantially impaired. See Medici v. BPR Co., 107 N.J. 1, 4 (1987). In determining whether the negative criteria is satisfied, the zoning board's focus is whether the grant of the variance would substantially impair the intent and purpose of

7

the zone plan and zoning ordinance. Also, the zoning benefits should not outweigh the zoning harm that is a consequence of the variance. Fobe Associates v. Mayor and Council of Demarest, 74 N.J. 519, 527 (1977).

Pursuant to N.J.S.A. 40-55D-70C(2), a C(2) variance shall be granted "where in an application or appeal relating to a specific piece of property the purposes of this act would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment." A C(2) variance should be granted if the purposes of zoning and planning and the purposes of the Municipal Land Use Law are advanced. Kaufman v. Planning Board for Warren Tp., 110 N.J. 551 (1988). Such a variance must actually benefit the community. Id.

In the present matter, the court finds that plaintiffs do not require a (d) variance, and a C(2) variance should have been granted. As previously determined by Judge Harris, affordable housing units unquestionably are inherently beneficial and serve the public good. This use benefits the community at large. Thus, plaintiffs did not have to apply for a (d) variance because this issue was previously resolved by Judge Harris.

Further, the variance for building length should have been approved. The additional length of the building beyond the maximum is de minimus. However, the court remands to the Board the issue of whether the height should conform to the maximum requirement, as plaintiffs have indicated that doing so is practicable. Further, the court remands to the Board the issue of whether the driveway that connects the housing complex easement and the traffic from the skating rink should be a one-way only road. The Board may also decide if the driveway should be handled in another safe manner. This decision includes whether the driveway should require

8

P000028

a gate with keycard access only or other measures needed to ensure that individuals exiting Lot 35.01 will enter the residential area of Lot 35.02.

Although the Board has legitimate safety concerns regarding traffic between the two lots, Judge Harris was clear in his opinion. Plaintiffs are entitled to builder's remedies, which allowed the lots to be separately developed. Further, the opinion showed that there were existing easements for vehicular and pedestrian traffic between the lots. The easements are not greatly changed by the development, and plaintiffs proved at trial that the commercial vehicles will not travel within the residential property of 35.02. The driveway, however, will allow residents of the development to exit the property via the easement on the commercial lot.

Aside from those two issues which the Board is to decide, the court finds that the site plan should not have been denied. The Board's resolution is contrary to Judge Harris' opinion in many respects. Judge Harris specifically found that the plan is grounded in good zoning and planning. He also found that use of the existing easement through Lot 35.01 by residents was permissible. Accordingly, plaintiffs' application should not have been denied based on the theory that traffic over the easement is an intensification of a non-conforming use. Use of the easement had already been approved, and should not have been an issue at the hearings or in the resolution.

Defendants also assert in the resolution that plaintiffs failed to sufficiently prove that the development will not have a negative impact on the sanitary sewer system. Defendants should have raised sewage issues before Judge Harris. However, because time has elapsed since Judge Harris' decisions, and the issue of sewage is so important, the court will allow it to be reopened at this time. That issue is remanded back to the Board to determine if there is a showing that

P000029

there is a sewage problem. The burden of proof on that issue lies with the Board because that issue should have be raised at an earlier date.

## Conclusion

In conclusion, the Court finds plaintiffs' claims that the Board's decision was arbitrary, capricious, and unreasonable are merited, as set forth above. Accordingly, judgment is entered in favor of plaintiffs New Wallington Home, LLC and Morningside at Wallington, LLC, and the issues of building height, sewage, and the driveway and easement from the skating rink are remanded to the Wallington Planning Board.

Dated:  April 22, 2015

Hon. William C. Meehan, J.S.C.

(Retired and Temporarily Assigned on Recall)

10

P000030