# EXHIBIT C

## BOROUGH OF WALLINGTON
## RESOLUTION NO. 2019-167

WHEREAS, the Borough of Wallington ("Wallington") previously passed Resolution 2019-161 authorizing an agreement with Fair Share Housing Center ("FSHC") as specified in the resolution pending the acceptance of the terms by FSHC and judicial approval; and

WHEREAS, said resolution required formal review and approval of said settlement at the September 10, 2019 meeting of the Wallington Mayor and Council; and

WHEREAS, the settlements terms were agreed to as per the September 10, 2019 letter agreement between Wallington and FSHC

NOW, THEREFORE, BE IT RESOLVED, the Mayor and Council of the Borough of Wallington authorize the Borough Administrator to execute the attached September 10, 2019 agreement

**Offered by:**     Brunacki
**Seconded by:**    Androwis

| Member | Aye | Nay | Abstain | Certified as a true copy of a Resolution adopted by the Borough Wallington at an above date meeting |
|---|---|---|---|---|
| Rachelski | Absent | | | |
| Brunacki | X | | | |
| Androwis | X | | | |
| Dabal | | X | | |
| Ivanicki | X | | | |
| Olkowski | Absent | | | Greg Zagaja<br>Act. Deputy Borough Clerk |

Approved: September 10, 2019

BOROUGH OF WALLINGTON

By: _Melissa Dabal_ .
Council President Melissa Dabal

D000450



Peter J. O'Connor, Esq.
Kevin D. Walsh, Esq.
Adam M. Gordon, Esq.
Laura Smith-Denker, Esq.
David T. Rammler, Esq.
Joshua D. Bauers, Esq.

September 10, 2019~~September 9, 2019~~~~August 22, 2019~~

Robert F. Simon, Esq.
Herold Law, P.A.
25 Independence Blvd
Warren, NJ 07059

Re:    In the Matter of the Application of the Borough of Wallington, County of Bergen, Docket No. BER-L-6285-15

Dear Mr. Simon:

This letter memorializes the terms of an agreement reached between the Borough of Wallington (the "Borough" or "Wallington"), the declaratory judgment plaintiff, and Fair Share Housing Center (FSHC), a Supreme Court-designated interested party in this matter in accordance with In re N.J.A.C. 5:96 and 5:97, 221 N.J. 1, 30 (2015) (Mount Laurel IV) and, through this settlement, a defendant in this proceeding.

**Background**

The Borough of Wallington filed the above-captioned matter on July 6, 2015 seeking a declaration of its compliance with the Mount Laurel doctrine and the Fair Housing Act of 1985, N.J.S.A. 52:27D-301, et seq., in accordance with In re N.J.A.C. 5:96 and 5:97, supra. Through the declaratory judgment process, the Borough and FSHC have agreed to settle the litigation and to present that settlement to the trial court with jurisdiction over this matter to review, recognizing that the settlement of Mount Laurel litigation is favored because it avoids delays and the expense of trial and results more quickly in the construction of homes for lower-income households.

**Settlement terms**

The Borough and FSHC hereby agree to the following terms:

1. FSHC agrees that the Borough, through the adoption of a Housing Element and Fair Share Plan conforming with the terms of this Agreement (hereafter "the Plan") and through the implementation of the Plan and this Agreement, will satisfy its obligations under the Mount Laurel doctrine and Fair Housing Act of 1985, N.J.S.A. 52:27D-301, et seq., for the Prior Round (1987-1999) and Third Round (1999-2025).

2. At this time and at this particular point in the process resulting from the Supreme Court's Mount Laurel IV decision, when Third Round fair share obligations have yet to be definitively determined, it is appropriate for the parties to arrive at a settlement regarding a municipality's Third Round Obligation instead of doing so through plenary adjudication of the Third Round Obligation.

D000451

3. FSHC and the Borough hereby agree that Wallington's affordable housing obligations are as follows:

| | |
|---|---|
| Rehabilitation Share (Per Kinsey Report) | 95 |
| Prior Round Obligation (pursuant to N.J.A.C. 5:93) | 5 |
| Third Round (1999-2025) (Per Mercer County Decision) | 125 |

4. For purposes of this Agreement, the Third Round Obligation shall be deemed to include the Gap Period present need for new construction to address the affordable housing needs of households formed from 1999-2015, a need that was recognized by the Supreme Court in In re Declaratory Judgment Actions Filed By Various Municipalities, 227 N.J. 508 (2017), and the Prospective Need, which is a measure of the affordable housing need anticipated to be generated between July 1, 2015 and June 30, 2025. The parties agree for purposes of settlement to establish 125 units as the Borough's Third Round Prospective Need Fair Share Obligation pursuant to the methodology established by the Honorable Mary C. Jacobson, A.J.S.C., decision in the consolidated declaratory judgment proceedings: In the Matter of the Municipality of Princeton, Docket No. MER-L-1550-15 and In the Matter of West Windsor Township, Docket No. MER-L-1561-15, Superior Court of New Jersey. As a result of this agreement, the Borough will not be seeking a vacant land adjustment nor have unmet need.

5. The Borough's efforts to meet its Rehabilitation Share include the following: The Borough may conduct a structural conditions survey in accordance with the applicable rules and processes of the Council on Affordable Housing. This survey shall be submitted for review to the Special Master and FSHC at least 60 days prior to the compliance hearing in this matter. In the event the survey demonstrates that there is not a Rehabilitation obligation, and if that conclusion is accepted by the Special Master and FSHC, the Borough shall have no obligation to administer a rehabilitation program. In the event that there is a rehabilitation obligation demonstrated by the survey, that determined rehabilitation obligation (between 1-95 units and not in any event to exceed a 95-unit rehabilitation share), –is expected to be met through participation in the Bergen County Housing Rehabilitation Program and through a supplemental municipally operated rehabilitation program that shall be available to rental units. Said municipal program shall meet the requirements in N.J.A.C. 5:93-5.2. Should the municipality not conduct such a survey, it shall be deemed to have accepted the 95 rehabilitation unit obligation set forth in Paragraph 3 above.

6. As noted above, the Borough has a Prior Round (new construction) Obligation of 5 units which is met through four family rental affordable housing units and one rental bonus credit at Morningside at Wallington, LLC/New Wallington Homes, LLC, approved in 2019.

7. Wallington has a Third Round prospective need (new construction) of 125 units, as calculated pursuant to the Judge Jacobson decision referenced above, the Third Round obligation will be satisfied as follows:

| Development | Low/Mod Units | Bonus | Credits |
|---|---|---|---|
| Morningside-Block 71, Lots 35.01 & 35.02 | 38 | 32 | 70 |
| Wallington Homes-Block 70.05, Lot 8.01 | 8 | - | 8 |

D000452

| 4H Site-Block 70.01, Lot 78 | | 48* | - | 48 |
|---|---|---|---|---|
| | Total | 94 | 32 | 126 |

*18 percent set aside with not less than 269 housing units and not more than 275 housing units; alternatively, the 48 Units may be achieved by including up to 31 units of age-restricted affordable housing, up to 15 alternative living arrangement beds, and the remainder units as affordable housing units, so to achieve the necessary 48 affordable housing Units onsite, and provided that any such alternative arrangement provides at least one family very low income unit as part of the seven (7) total very low income units required to be provided on the site.

8.  The Borough intends to provide a realistic opportunity for the development of affordable housing through the adoption of inclusionary zoning on the following sites:

    a.  **Wallington Homes** (Block 70.05 Lot 8.01) - The Borough has entered into an agreement with the owner of this 1.5 +/- acre property for an inclusionary development permitting up to 40 total units with a 19% set-aside of 8 affordable housing units to be provided on-site. The Borough will abide by the obligations and timetable for adoption of inclusionary zoning ordinances on the Wallington Homes property as defined in the settlement agreement between the Borough and Wallington Homes, LLC dated _8/22 19_ . The Borough agrees to require that all affordable housing units are provided in accordance with the schedule set forth in N.J.A.C. 5:93-5.6(d), and in accordance with all other applicable New Jersey regulations and statutes governing the construction, delivery and maintenance of affordable units for inclusionary development in accordance with N.J.A.C. 5:80-26.1 et. seq.

    

    b.  **4H Site** (Block 70.01 Lot 78) The Borough agrees to rezone this 4.7 +/- acre property to permit a residential inclusionary development. The zoning will permit no less than –269 total residential units and no more than 275 total residential units and require no less than 48 on-site units to be set-aside as affordable to low and moderate income households (the "Affordable Units") based on a 18% set aside. Alternatively, the 48 Units may be achieved by including up to 31 units of age-restricted affordable housing, up to 15 alternative living arrangement beds, and the remainder units as affordable housing units, so to achieve the necessary 48 affordable housing units onsite, and provided that any such alternative arrangement provides at least one family very low income unit as part of the seven (7) total very low income units required to be provided on the site.. The Borough agrees that all affordable housing units shall be provided in accordance with the schedule set forth in N.J.A.C. 5:93-5.6(d), and in accordance with all other applicable New Jersey regulations and statutes governing the construction, delivery and maintenance of affordable units for inclusionary development in accordance with N.J.A.C. 5:80-26.1 et. seq.

    c.  **Morningside/New Wallington Homes LLC** (Block 71 Lots 35.01 and 35.02) – The Borough has entered into an agreement with Morningside the owner of this 11.7 +/- acre property for an inclusionary development permitting up to 207 total units with a 20% set-aside of 42 units to be provided on-site. The Borough will permit the development of the Morningside at Wallington, LLC/New Wallington Homes, LLC property as defined in the settlement agreement between the Borough and Wallington Homes, LLC dated _08/22/19_ . The Borough agrees to require that the 42 affordable housing shall be provided in accordance with the schedule set forth in N.J.A.C. 5:93-5.6(d), and in accordance with all other applicable New Jersey regulations and statutes governing the construction, delivery and maintenance of affordable units for inclusionary development in accordance with N.J.A.C. 5:80-26.1 et. seq., and in accordance with approvals

D000453

obtained by the Planning Board and the Superior Court of New Jersey, Law Division.

9. The Borough agrees to require 13% of all units referenced in this Agreement, excepting those units that were constructed or granted preliminary or final site plan approval prior to July 1, 2008, to be very low income units, with half of the very low income units being available to families. The municipality will comply with those requirements as follows:

| Development | Very Low Units |
|---|---|
| Morningside-Block 71, Lots 35.01 & 35.02 | 5 |
| Wallington Homes-Block 70.05, Lot 8.01 | 1 |
| 4H Site-Block 70.01, Lot 78 | 7* |
| Total | 13 |

*Maximum of 6 special needs units

10. The Borough shall meet its Third Round Obligation in accordance with the following standards as agreed to by the Parties and reflected in the table in paragraph 6 above:

   a. Third Round bonuses will be applied in accordance with N.J.A.C. 5:93-5.15(d).

   b. At least 50 percent of the units addressing the Third Round Obligation shall be affordable to very-low-income and low-income households with the remainder affordable to moderate-income households.

   c. At least twenty-five percent of the Third Round Obligation shall be met through rental units, including at least half in rental units available to families.

   d. At least half of the units addressing the Third Round Prospective Need in total must be available to families.

   e. The Borough agrees to comply with an age-restricted cap of 25% and to not request a waiver of that requirement. This shall be understood to mean that in no circumstance may the municipality claim credit toward its fair share obligation for age-restricted units that exceed 25% of all units developed or planned to meet its cumulative prior round and third round fair share obligation.

11. The Borough shall add to the list of community and regional organizations in its affirmative marketing plan, pursuant to N.J.A.C. 5:80-26.15(f)(5), Fair Share Housing Center, the New Jersey State Conference of the NAACP, the Latino Action Network, Bergen County NAACP, Bergen County Urban League, and Bergen County Housing Coalition, and shall, as part of its regional affirmative marketing strategies during its implementation of the affirmative marketing plan, provide direct notice to those organizations of all available affordable housing units in Wallington, along with copies of application forms. The Borough also agrees to require any other entities, including developers or persons or companies retained to do affirmative marketing, to comply with this paragraph.

D000454

12. All units shall include the required bedroom distribution, be governed by controls on affordability and affirmatively marketed in conformance with the Uniform Housing Affordability Controls, N.J.A.C. 5:80-26.1, et seq., or any successor regulation, with the exception that in lieu of 10 percent of affordable units in rental projects being required to be at 35 percent of median income, 13 percent of affordable units in rental projects shall be required to be at 30 percent of median income, and in conformance with all other applicable law. The Borough, as part of its HEFSP, shall adopt and/or update appropriate implementing ordinances in conformance with standard ordinances and guidelines developed by COAH to ensure that this provision is satisfied. limits for all units that are part of the Plan required by this Agreement and for which income limits are not already established through a federal program exempted from the Uniform Housing Affordability Controls pursuant to N.J.A.C. 5:80-26.1 shall be updated by the Borough annually within 30 days of the publication of determinations of median income by HUD as follows:

a. Regional income limits shall be established for the Housing Region in which the Borough is located (in this case, Housing Region 1) based on the median income by household size, which shall be established by a regional weighted average of the uncapped Section 8 income limits published by HUD. To compute this regional income limit, the HUD determination of median county income for a family of four is multiplied by the estimated number of households within the county according to the most recent decennial Census. The resulting product for each county within the housing region is summed. The sum is divided by the estimated total number of households from the most recent decennial Census in the Borough's housing region. This quotient represents the regional weighted average of median income for a household of four. The income limit for a moderate-income unit for a household of four shall be 80 percent of the regional weighted average median income for a family of four. The income limit for a low-income unit for a household of four shall be 50 percent of the HUD determination of the regional weighted average median income for a family of four. The income limit for a very low income unit for a household of four shall be 30 percent of the regional weighted average median income for a family of four. These income limits shall be adjusted by household size based on multipliers used by HUD to adjust median income by household size. In no event shall the income limits be less than those for the previous year.

b. The income limits attached hereto as Exhibit C are the result of applying the percentages set forth in paragraph (a) above to HUD's determination of median income for FY 2017, and shall be utilized until the Borough updates the income limits after HUD has published revised determinations of median income for the next fiscal year.

c. The Regional Asset Limit used in determining an applicant's eligibility for affordable housing pursuant to N.J.A.C. 5:80-26.16(b)3 shall be calculated by the Borough annually by taking the percentage increase of the income limits calculated pursuant to paragraph (a) above over the previous year's income limits, and applying the same percentage increase to the Regional Asset Limit from the prior year. In no event shall the Regional Asset Limit be less than that for the previous year.

d. The parties agree to request the Court prior to or at the fairness hearing in this matter to enter an order implementing this paragraph of this Agreement, the terms of which shall also be reflected in the Borough's Affordable Housing Ordinance.

13. All new construction units shall be adaptable in conformance with P.L.2005, c.350/N.J.S.A. 52:27D-311a and -311b and all other applicable law.

14. As an essential term of this Agreement, within one hundred eighty (180) days of the Court's approval of this Agreement, the Borough shall introduce an ordinance or ordinances providing for the amendment of the Borough's Affordable Housing Ordinance and Zoning Ordinance to implement the terms of this Agreement and the zoning contemplated herein and shall adopt a Housing Element and Fair Share Plan and Spending Plan in conformance with the terms of this Agreement.

15. The parties agree that if a decision of a court of competent jurisdiction in Bergen County, or a determination by an administrative agency responsible for implementing the Fair Housing Act, or an action by the New Jersey Legislature, would result in a calculation of an obligation for the Borough for the period 1999-2025 that would be lower by more than ten (10%) percent than the total prospective Third Round Obligation established in this Agreement, and if that calculation is memorialized in an unappealable final judgment, the Borough may seek to amend the judgment in this matter to reduce its fair share obligation accordingly. Notwithstanding any such reduction, the Borough shall be obligated to adopt a Housing Element and Fair Share Plan that conforms to the terms of this Agreement and to implement all compliance mechanisms included in this Agreement, including by adopting or leaving in place any site specific zoning adopted or relied upon in connection with the Plan adopted pursuant to this Agreement; taking all steps necessary to support the development of any 100% affordable developments referenced herein; maintaining all mechanisms set forth herein to address unmet need; and otherwise fulfilling fully the fair share obligations as established in this Agreement. The reduction of the Borough's Third Round Obligation below that established in this Agreement does not provide a basis for seeking leave to amend this Agreement or seeking leave to amend an order or judgment pursuant to R. 4:50-1. If the Borough prevails in reducing its Third Round Obligation, the Borough may carry over any resulting extra credits to future rounds in conformance with the then-applicable law.

16. The Borough shall prepare a Spending Plan within the period referenced above, subject to review by FSHC and the approval of the Court, and reserves the right to seek approval from the Court that the expenditures of funds contemplated under the Spending Plan constitute a "commitment" for expenditure pursuant to N.J.S.A. 52:27D-329.2 and -329.3, with the four-year time period for expenditure designated pursuant to those provisions beginning to run with the entry of a final judgment in this matter that includes approval of the Spending Plan in accordance with the provisions of In re Tp. Of Monroe, 442 N.J. Super. 565 (Law Div. 2015) (aff'd 442 N.J. Super. 563). On the first anniversary of the Court's approval of the Spending Plan, and on every anniversary of that date thereafter through July 1, 2025, the Borough agrees to provide annual reporting of trust fund activity to the New Jersey Department of Community Affairs, Council on Affordable Housing, or Local Government Services, or other entity designated by the State of New Jersey, with a copy provided to Fair Share Housing Center and posted on the municipal website, using forms developed for this purpose by the New Jersey Department of Community Affairs, Council on Affordable Housing, or Local Government Services. The reporting shall include an accounting of all housing trust fund activity, including the source and amount of funds collected and the amount and purpose for which any funds have been expended.

D000456

17. On the first anniversary of the execution of this Agreement, and every anniversary thereafter through the end of this Agreement, the Borough agrees to provide annual reporting of the status of all affordable housing activity within the municipality through posting on the municipal website, with a copy of such posting provided to Fair Share Housing Center, using forms previously developed for this purpose by the Council on Affordable Housing or any other forms endorsed by the Special Master and FSHC.

18. The Fair Housing Act includes two provisions regarding action to be taken by the Borough during the period of protection provided in this Agreement. The Borough agrees to comply with those provisions as follows:

    a. For the midpoint realistic opportunity review, due on July 1, 2020, as required pursuant to N.J.S.A. 52:27D-313, the Borough will post on its municipal website, with a copy provided to Fair Share Housing Center, a status report as to its implementation of the Plan and an analysis of whether any unbuilt sites or unfulfilled mechanisms continue to present a realistic opportunity and whether any mechanisms to meet unmet need should be revised or supplemented. Such posting shall invite any interested party to submit comments to the municipality, with a copy to Fair Share Housing Center, regarding whether any sites no longer present a realistic opportunity and should be replaced and whether any mechanisms to meet unmet need should be revised or supplemented. Any interested party may by motion request a hearing before the court regarding these issues.

    b. For the review of very low income housing requirements required by N.J.S.A. 52:27D-329.1, within 30 days of the third anniversary of this Agreement, and every third year thereafter, the Borough will post on its municipal website, with a copy provided to Fair Share Housing Center, a status report as to its satisfaction of its very low income requirements, including the family very low income requirements referenced herein. Such posting shall invite any interested party to submit comments to the municipality and Fair Share Housing Center on the issue of whether the municipality has complied with its very low income housing obligation under the terms of this settlement.

19. FSHC is hereby deemed to have party status in this matter and to have intervened in this matter as a defendant without the need to file a motion to intervene or an answer or other pleading. The parties to this Agreement agree to request the Court to enter an order declaring FSHC is an intervenor, but the absence of such an order shall not impact FSHC's rights.

20. This Agreement must be approved by the Court following a fairness hearing as required by Morris Cty. Fair Hous. Council v. Boonton Twp., 197 N.J. Super. 359, 367-69 (Law Div. 1984), aff'd o.b., 209 N.J. Super. 108 (App. Div. 1986); East/West Venture v. Borough of Fort Lee, 286 N.J. Super. 311, 328-29 (App. Div. 1996). The Borough shall present its planner as a witness at this hearing. FSHC agrees to support this Agreement at the fairness hearing. In the event the Court approves this proposed settlement, the parties contemplate the municipality will receive "the judicial equivalent of substantive certification and accompanying protection as provided under the FHA," as addressed in the Supreme Court's decision in In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 36 (2015). The "accompanying protection" shall remain in effect through July 1, 2025. If this Agreement is rejected by the Court at a fairness hearing it shall be null and void.

D000457

21. The Borough agrees to pay FSHC's attorneys fees and costs in the amount of $7,500.00 within ten (10) days of the Court's approval of this Agreement pursuant to a duly-noticed fairness hearing.

22. If an appeal is filed of the Court's approval or rejection of this Agreement, the Parties agree to defend the Agreement on appeal, including in proceedings before the Superior Court, Appellate Division and New Jersey Supreme Court, and to continue to implement the terms of this Agreement if the Agreement is approved before the trial court unless and until an appeal of the trial court's approval is successful, at which point the Parties reserve their right to rescind any action taken in anticipation of the trial court's approval. All Parties shall have an obligation to fulfill the intent and purpose of this Agreement.

23. This Agreement may be enforced through a motion to enforce litigant's rights or a separate action filed in Superior Court, Bergen County. A prevailing movant or plaintiff in such a motion or separate action shall be entitled to reasonable attorney's fees.

24. Unless otherwise specified, it is intended that the provisions of this Agreement are to be severable. The validity of any article, section, clause or provision of this Agreement shall not affect the validity of the remaining articles, sections, clauses or provisions hereof. If any section of this Agreement shall be adjudged by a court to be invalid, illegal, or unenforceable in any respect, such determination shall not affect the remaining sections.

25. This Agreement shall be governed by and construed by the laws of the State of New Jersey.

26. This Agreement may not be modified, amended or altered in any way except by a writing signed by each of the Parties.

27. This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which together shall constitute but one and the same Agreement.

28. The Parties acknowledge that each has entered into this Agreement on its own volition without coercion or duress after consulting with its counsel, that each party is the proper person and possess the authority to sign the Agreement, that this Agreement contains the entire understanding of the Parties and that there are no representations, warranties, covenants or undertakings other than those expressly set forth herein.

29. Each of the Parties hereto acknowledges that this Agreement was not drafted by any one of the Parties, but was drafted, negotiated and reviewed by all Parties and, therefore, the presumption of resolving ambiguities against the drafter shall not apply. Each of the Parties expressly represents to the other Parties that: (i) it has been represented by counsel in connection with negotiating the terms of this Agreement; and (ii) it has conferred due authority for execution of this Agreement upon the persons executing it.

D000458

30. Any and all Exhibits and Schedules annexed to this Agreement are hereby made a part of this Agreement by this reference thereto. Any and all Exhibits and Schedules now and/or in the future are hereby made or will be made a part of this Agreement with prior written approval of both Parties.

31. This Agreement constitutes the entire Agreement between the Parties hereto and supersedes all prior oral and written agreements between the Parties with respect to the subject matter hereof except as otherwise provided herein.

32. No member, official or employee of the Borough shall have any direct or indirect interest in this Agreement, nor participate in any decision relating to the Agreement which is prohibited by law, absent the need to invoke the rule of necessity.

33. Anything herein contained to the contrary notwithstanding, the effective date of this Agreement shall be the date upon which all of the Parties hereto have executed and delivered this Agreement.

34. All Notices required under this Agreement ("Notice[s]") shall be written and shall be served upon the respective Parties by certified mail, return receipt requested, or by a recognized overnight carrier or by a personal carrier. In addition, where feasible (for example, transmittals of less than fifty pages) Notices shall be served by facsimile or e-mail. All Notices shall be deemed received upon the date of delivery. Delivery shall be effected as follows, subject to change as to the person(s) to be notified and/or their respective addresses upon ten (10) days notice as provided herein:

TO FSHC:

Adam M. Gordon, Esquire
Fair Share Housing Center
510 Park Boulevard
Cherry Hill, NJ 08002
Phone: (856) 665-5444
Telecopier: (856) 663-8182
E-mail: adamgordon@fairsharehousing.org

TO THE BOROUGH:

Robert F. Simon, Esq.
Herold Law, P.A.
25 Independence Blvd.
Warren, NJ 07059
Telecopier: 908-647-7721
Email: RSimon@Heroldlaw.com

WITH A COPY TO THE
MUNICIPAL CLERK:

Borough of Wallington
24 Union Blvd.
Wallington, NJ 07057

D000459

Please sign below if these terms are acceptable.

Sincerely,

Adam M. Gordon, Esq.
Counsel for Intervenor/Interested Party
Fair Share Housing Center

On behalf of theBorough of Wallington, with the authorization
of the governingbody:

BORO ADMINISTRATOR
Dated:_____9/16/19

D000460

Prepared by Affordable Housing Professionals of New Jersey (AHPNJ) - May 2019

## 2019 AFFORDABLE HOUSING REGIONAL INCOME LIMITS BY HOUSEHOLD SIZE

By adopted by the State of New Jersey. Contact your municipality to see if applicable in your jurisdiction. Additional information about AHPNJ income limits is posted

| | 1 Person | 1.5 Person | 2 Person | EXHIBIT C: 2019 INCOME LIMITS | | | | | | Person | 8+ Person | Max Increase Rents*** | Sales*** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan | $66,507 | $71,365 | $76,122 | $85,637 | $95,153 | $98,959 | $102,765 | $110,377 | | $117,939 | $125,602 | | |
| erate | $53,206 | $57,092 | $60,898 | $68,510 | $76,122 | $79,167 | $82,213 | $88,302 | | $94,391 | $100,481 | 2.6% | 4.73% |
| | $33,303 | $35,682 | $38,061 | $42,819 | $47,576 | $49,479 | $51,382 | $55,189 | | $53,995 | $62,801 | | |
| Low | $19,982 | $21,409 | $22,837 | $25,691 | $28,546 | $29,688 | $30,829 | $33,113 | | $35,397 | $37,680 | | |
| Jan | $70,537 | $75,576 | $80,614 | $90,691 | $100,767 | $104,798 | $108,829 | $116,890 | | $124,952 | $133,013 | | |
| erate | $56,430 | $60,460 | $64,491 | $72,553 | $80,614 | $83,838 | $87,063 | $93,512 | | $99,961 | $106,410 | 2.6% | 5.67% |
| | $35,269 | $37,788 | $40,307 | $45,345 | $50,384 | $52,399 | $54,414 | $58,445 | | $62,476 | $66,506 | | |
| Low | $21,161 | $22,673 | $24,184 | $27,207 | $30,230 | $31,439 | $32,649 | $35,067 | | $37,485 | $39,904 | | |
| Jan | $82,810 | $88,725 | $94,640 | $106,470 | $118,300 | $123,032 | $127,764 | $137,228 | | $146,692 | $156,156 | | |
| erate | $66,248 | $70,980 | $75,712 | $85,176 | $94,640 | $98,426 | $102,211 | $109,782 | | $117,354 | $124,925 | 2.6% | 9.64% |
| | $41,405 | $44,363 | $47,320 | $53,235 | $59,150 | $61,516 | $63,882 | $68,614 | | $73,346 | $78,078 | | |
| Low | $24,843 | $26,618 | $28,392 | $31,941 | $35,490 | $36,910 | $38,329 | $41,168 | | $44,008 | $46,847 | | |
| Jan | $72,165 | $77,319 | $82,474 | $92,783 | $103,092 | $107,216 | $111,340 | $119,597 | | $127,854 | $136,082 | | |
| erate | $57,732 | $61,855 | $65,979 | $74,226 | $82,474 | $85,773 | $89,072 | $95,670 | | $102,268 | $108,865 | 2.6% | 3.91% |
| | $36,082 | $38,660 | $41,237 | $46,392 | $51,546 | $53,608 | $55,670 | $59,794 | | $63,917 | $68,041 | | |
| Low | $21,649 | $23,196 | $24,742 | $27,835 | $30,928 | $32,165 | $33,402 | $35,876 | | $38,350 | $40,825 | | |
| Jan | $63,070 | $67,575 | $72,080 | $81,090 | $90,100 | $93,704 | $97,508 | $104,516 | | $111,724 | $118,932 | | |
| erate | $50,456 | $54,060 | $57,664 | $64,872 | $72,080 | $74,963 | $77,846 | $83,613 | | $89,379 | $95,146 | 2.6% | 3.09% |
| | $31,535 | $33,788 | $36,040 | $40,545 | $45,050 | $46,852 | $48,654 | $52,258 | | $55,862 | $59,466 | | |
| Low | $18,921 | $20,273 | $21,624 | $24,327 | $27,030 | $28,111 | $29,192 | $31,355 | | $33,517 | $35,680 | | |
| Jan | $53,714 | $57,550 | $61,387 | $69,061 | $76,734 | $79,803 | $82,873 | $89,011 | | $95,150 | $101,289 | | |
| erate | $42,971 | $46,040 | $49,110 | $55,248 | $61,387 | $63,843 | $66,298 | $71,209 | | $76,120 | $81,031 | 2.6% | 5.15% |
| | $26,857 | $28,775 | $30,694 | $34,530 | $38,367 | $39,902 | $41,436 | $44,506 | | $47,575 | $50,644 | | |
| Low | $16,114 | $17,265 | $18,416 | $20,718 | $23,020 | $23,941 | $24,862 | $26,703 | | $28,545 | $30,387 | | |

...tween 50 and 80 percent of the median income. Low income is 50 percent or less of median income. Very low income is 30 percent or less of median income.

...calculating the pricing for one, two and three bedroom sale and rental units as per N.J.A.C. 5:80-26.4(a).

...calculating the pricing for rent increases for units (as previously calculated under N.J.A.C. 5:97-9.3). The increase for 2015 was 2.3%, the increase for 2016 was ...%, and the increase for 2018 was 2.2%. The increase for 2019 is 2.6% (Consumer price index for All Urban Consumers (CPI-U) Regions by expenditure category ...prevo). Landlords who did not increase rents in 2015, 2016, 2017, or 2018 may increase rent by up to the applicable combined percentage including 2019 or 9 ...N.J.A.C. 5:97-9.3(c). In no case can rent for any particular apartment be increased more than one time per year.

...for calculating the pricing for resale increases for units (as previously calculated under N.J.A.C. 5:97-9.3). The price of owner-occupied low and moderate inc... ...on the percentage increase in the regional median income limit for each housing region. In no event shall the maximum resale price established by the admin... ...corded purchase price.

...velopments may increase based on the low income tax credit regulations.

...limit is used in determining an applicant's eligibility for affordable housing pursuant to N.J.A.C. 5:80-26.16(b)3.

D000461