# *New Wallington Home LLC, et al.*

# *v.*

# *Borough of Wallington, et al.*

United States District Court for the District of New Jersey
Case No. 20-CV-08178

**Expert Planning Analysis**

**September 11, 2025**

**Expert Report Prepared by:**



Jessica C. Caldwell, PP, AICP, LEED-GA
NJPP License #5944

**EXHIBIT**

**L**

exhibitsticker.com

New Wallington Home LLC, et al. v.                    Expert Report - September 11, 2025
Borough of Wallington, et.al.                              J. Caldwell & Associate, LLC

## Contents

**Introduction** ...................................................................................................................... 1

  Background ............................................................................................................................ 1

**Master Plan – Goals and Objectives** ................................................................................ 4

  Wallington Borough Master Plan........................................................................................... 4

**Affordable Housing Compliance** ...................................................................................... 6

  Background ............................................................................................................................ 6

  Timeline of Affordable Housing Decisions and Compliance................................................ 8

  Status of Compliance ............................................................................................................ 9

**Zoning** .............................................................................................................................. 10

  Purpose of Zoning for the Area .......................................................................................... 10

  Planned Residential – Mount Laurel (PR-ML) Zone .......................................................... 10

**Neighborhood Context** .................................................................................................... 11

  Description of Sites and Neighborhood.............................................................................. 11

**Criteria for Decision-Making** .......................................................................................... 12

  Variances Requested .......................................................................................................... 13

  The Applicant's Proofs........................................................................................................ 14

  Planning Board Concerns ................................................................................................... 18

    Keeping the Former Roller Rink Building .......................................................................... 18

    Sewer Capacity ................................................................................................................. 19

    Traffic ............................................................................................................................... 19

    Known Contaminated Site History .................................................................................... 20

    Number of School Children .............................................................................................. 20

  Prior Application ................................................................................................................ 21

    Court Order for Judgment................................................................................................. 22

  Board Member Comments .................................................................................................. 23

**Analysis of Impact and Effects on Segregation – Expert Report** .................................... 24

**Conclusion** ...................................................................................................................... 27

**Appendix A: Curriculum Vitae of Jessica C. Caldwell, P.P., A.I.C.P.**.............................31

i

# Introduction

**Background**

This Expert Planning Analysis was prepared in conjunction with the court case <u>New Wallington Home LLC, et al. v. Borough of Wallington, et al</u>, wherein the Plaintiffs, New Wallington Home LLC, allege that the Borough of Wallington and the Borough of Wallington Planning Board have engaged in discriminatory practices with respect to their inclusionary development applications in violation of the Fair Housing Act 42 U.S.C. § 3601, *et seq.*, 42 U.S.C. § 1983, 42 U.S.C. § 1988, and New Jersey State law. This report is comprised of a review of the records pertaining to the applications, a history of the sites and prior applications, and a review of the efforts that Wallington Borough has made to address its fair share of affordable housing.

In 2006, the Wallington Group (New Wallington Home's predecessor) pursued Builder's Remedy Litigation against the Borough in the matter, <u>The Wallington Group, LLC, and Morningside at Wallington, LLC v. Borough of Wallington, et al</u>. in the Superior Court of New Jersey, Bergen County. The Borough's land use controls and zoning ordinances were deemed invalid by the Court and "not in compliance with the requirements of the New Jersey State Constitution, the Mount Laurel Doctrine, the [New Jersey] Fair Housing Act and the New Jersey Council on Affordable Housing." As a result of this determination, the Borough was required to zone Block 71, Lots 35.01 and 35.02 as an inclusionary multifamily development zone (the Planned Residential –Mount Laurel Zone).

In 2014, New Wallington Home purchased this property and submitted an application to the Planning Board for approval and development of 134 multifamily dwelling units, 27 of which would be available to low- and moderate-income residents on Block 71, Lot 35.02.  Hearings were conducted on September 16, 2014, and October 21, 2014, with the Planning Board denying the application on

New Wallington Home LLC, et al. v.                                Expert Report - September 11, 2025
Borough of Wallington, et.al.                                                    J. Caldwell & Associate, LLC

October 21, 2014. This decision was appealed by New Wallington Home LLC, and the Superior Court reversed the denial on April 22, 2015. The Superior Court remanded the application back to the Planning Board, specifically permitting the Planning Board to consider three (3) narrow issues: (1) sewer capacity; (2) traffic circulation; and (3) building height. The Application was again heard at several meetings in 2016. The Board ultimately approved the New Wallington project via Resolution No. 16-300.  For Block 71, Lot 35.02, the property was purchased in 2014, and the Applicant had secured Planning Board approval within two years of purchase.

In 2017, Morningside prepared a site plan to implement the Planned Residential Mount Laurel Zone on Block 7, Lot 35.01. This site plan was heard at the Planning Board meetings on May 16, July 18, September 19, and December 19, 2017. The Board denied the application on December 19, 2017, and memorialized the decision on June 16, 2018. Following this denial, Morningside and New Wallington Home filed an action in lieu of prerogative writ against the Planning Board in the Superior Court of New Jersey, alleging that the Board's decision was arbitrary, capricious, and unreasonable. The complaint alleged that the Borough interfered with the Plaintiff's ability to construct multifamily housing. This complaint also alleged that the Borough had historically disregarded its affordable housing obligations. The Plaintiff later filed an amended complaint on December 7, 2020 (the civil case), making claims that the Borough made land use decisions based on "a long-standing policy of discrimination against minorities and children".

The purpose of this report is to provide context to and an analysis of the Borough Planning Board's decisions and the actions of the Borough to comply with affordable housing obligations to show that contrary to the allegations made in the civil case, that the Borough has a history of compliance with the Fair Housing Act (FHA) and Borough's New Jersey constitutional obligation to provide for affordable housing.  A review of the record shows that in several instances the Plaintiff

2

New Wallington Home LLC, et al. v.                    Expert Report - September 11, 2025
Borough of Wallington, et.al.                                  J. Caldwell & Associate, LLC

did not provide complete statutorily required proofs necessary for the Planning Board to grant the variances requested, and has caused delays due to resubmissions and requests for amendments to prior approved applications. As a result, the Borough is not discriminating against inclusionary developments based on race and family status; and on the contrary, has approved several inclusionary zones and affordable housing projects over the course of the last two decades.  This report finds that the Board's decisions on applications were based on legitimate land use concerns such as public safety, utility availability, and the goals and objectives of the Borough's Master Plan.  Likewise, a review of the record shows that several delays also arose from decisions made by the Plaintiff to request variances contrary to the ordinances, which were not necessary to implement the development of the zone for affordable housing.

**Project Proposal**

There are two (2) sites relevant to this analysis:  Block 71, Lot 35.01 and Block 71, Lot 35.02, both of which have an address of 551 Main Avenue in the Borough of Wallington, Bergen County. The application for Block 71, Lot 35.01 ("the Morningside project") is for preliminary and final site plan approval with "c" bulk variances for a 73-unit multifamily project, 15 of which would be affordable units. Of these 73 units, 40 are proposed to be 1-bedroom units, 20 are proposed to be 2-bedroom units, and three (3) are proposed to be 3-bedroom units.  Block 71, Lot 35.02 ("the New Wallington project") is seeking amended preliminary and final site plan approval for a 134-unit multifamily project with 27 affordable units. The amended site plan application for the New Wallington project was submitted on behalf of the developer of the Morningside project. The amended site plan involves the reconfiguration of the driveway, which traverses both properties.

3

New Wallington Home LLC, et al. v.   Expert Report - September 11, 2025
Borough of Wallington, et.al.                    J. Caldwell & Associate, LLC

# Master Plan – Goals and Objectives

**Wallington Borough Master Plan**

The Borough of Wallington prepared a comprehensive Master Plan in 1979, with subsequent Reexamination Reports and amendments in 1980, 1990, 2006, 2013, 2020, 2021, and 2025. The Borough's Land Use Plan Element, specifically, was updated in 2013 and 2020. The Borough most recently updated its Master Plan by way of the adoption of a 2025 Housing Element and Fair Share Plan on June 18, 2025. The following are the Land Use goals and objectives of the Borough as amended by the 2020 Land Use Plan Element and affirmed by the 2021 Master Plan Reexamination Report:

1. To preserve existing land use in an attractive and viable condition.

2. To control redevelopment so that it is compatible with, and/or enhances, existing land use and is in accordance with the Master Plan.

3. To revise existing land use ordinances in order to better effect the realization of the land use objectives.

4. To channel development so that it is of maximum benefit to Wallington's present and future population.

5. To protect the population from the dangers of floods and other natural disasters.

6. To promote a balance between the natural and man-made environment while still meeting the needs of the population.

7. To discourage any development and/or redevelopment that, because of building height, mass and scale, and/or because of density of development or intensity of use will

4

negatively impact the quality of life in the residential neighborhoods of Wallington and/or will add to the congestion and overburdening of the Borough's infrastructure.

8. To promote consistency with and implementation of the 2020 HE&FSP which seeks to provide affordable housing opportunities in compliance with the Borough's settlement agreements with FSHC and certain intervenors incident to the DJ Action and as approved by the New Jersey Superior Court In the Matter of the Application of the Borough of Wallington for Judgement of Compliance and Repose, County of Bergen, Docket Number BER-L-6285-15, in a manner that satisfies the Borough's constitutional obligation as defined by the New Jersey Supreme Court Mount Laurel decisions.

Wallington Borough has prepared numerous Housing Element and Fair Share Plans over the years, each of which addressed the Borough's affordable housing obligations. The Borough reached a settlement with Fair Share Housing Center with respect to its Third Round obligation and prepared a HEFSP in compliance with this settlement. Per the 2020 HEFSP, **"The Borough took all of the required actions under its settlement agreement with FSHC and the Court Judgement of Compliance and Repose, including approving the projects for construction."** The Borough's 2025 HEFSP, which was submitted to the Dispute Resolution Program pursuant to the amended New Jersey Fair Housing Act, reflects several new inclusionary zones that the Borough deemed appropriate for inclusionary zoning. The Borough has proposed units to meet its entire affordable housing obligation for the Prior Rounds, Third Round, and Fourth Round, despite the ability under the amended New Jersey Fair Housing Act to reduce obligations through a vacant land adjustment.

New Wallington Home LLC, et al. v.
Borough of Wallington, et.al.

Expert Report - September 11, 2025
J. Caldwell & Associate, LLC

# Affordable Housing Compliance

**Background**

For the First and Second Rounds of affordable housing, the Borough's obligation was 5 units; this was satisfied through four (4) affordable housing units plus one (1) rental credit generated by the Morningside inclusionary development, which was anticipated to be constructed in the Third Round. The Borough's Third Round Present (Rehabilitation) Need Obligation was 95 units. In response, the Borough established a municipal housing rehabilitation program to satisfy the obligation. The Third Round Prospective Need Obligation was 125 units; this obligation was satisfied through the three affordable housing sites listed below, which, with the exception of Morningside Block 71, Lot 35.01, have been approved for development:

- **Morningside (Block 71, Lots 35.01 and 35.02)**: 38 Units + 32 Bonus Credits = 70 Credits; multifamily units; status partially approved.

- **Wallington Homes (Block 70.05, Lot 8.01)**: 8 Units; multifamily units; status constructed.

- **4H Site (Block 70.01, Lot 78)**: 48 Units; multifamily units; status approved.

The Borough's Fourth Round Prospective Need Obligation is 92 units. Six (6) projects are proposed to satisfy the Fourth Round obligation, including two projects which have already been approved. The following mechanisms are proposed:

- **1 Midland Avenue (Block 71, Lot 1)**: 14 Units; multifamily; proposed redevelopment.

- **2 Midland Avenue (Block 26.02, Lot 15) & 34 Midland Avenue (Block 26.02, Lot 14)**: 7 Units – multifamily; proposed zoning and redevelopment.

- **95 Midland Avenue (Block 71, Lots 13 & 14)**: 18 units, inclusive of 4 affordable units (Approved via Zoning Board of Adjustment Resolution 2023-08) - multifamily; status approved.

- **434 Main Avenue (Block 70.01, Lot 4.01)**: 14 Units; multifamily; status proposed zoning.

- **67 Paterson Avenue (Block 28, Lot 13-15)**: 2 Units (Approved via Zoning Board of Adjustment Resolution 2024-03); townhouses; status approved.

- **350 Mt. Pleasant Avenue – Latex Site (Block 70.01, Lot 80)**: 28 Units + 23 Bonus Credits = 51 Credits; multifamily; proposed redevelopment.

The Borough is proposing to satisfy the entirety of its Fourth Round affordable housing obligation without the use of a vacant land adjustment, as the municipality is entitled to conduct pursuant to N.J.S.A.C. 52:27D-310.1. A municipality seeking a vacant land adjustment inventories the vacant land and demonstrates a lack of available land capacity for new development, resulting in a realistic development potential (RDP). Rather than pursue the option to lower the municipal affordable housing obligation, the Borough opted to instead identify specific sites that are deemed appropriate and suitable for construction or redevelopment into affordable units. This decision not to pursue a vacant land adjustment illustrates the Borough's desire to provide for its fair share of affordable housing.  Likewise, age-restricted units were not specifically proposed in the Borough's affordable housing plan.  The Borough addressed its affordable housing obligations and committed to providing at least half of the total units to families and at least 25% of the total units to rental units in compliance with the New Jersey Fair Housing Act.

New Wallington Home LLC, et al. v.                              Expert Report - September 11, 2025
Borough of Wallington, et.al.                                        J. Caldwell & Associate, LLC

## Timeline of Affordable Housing Decisions and Compliance

| | |
|---|---|
| **1975** | Mt. Laurel I is decided by the New Jersey Supreme Court. The Court determined that each municipality has a constitutional obligation to provide for a realistic opportunity to construct the municipality's fair share of affordable housing. |
| **1984** | Mt. Laurel II is decided by the New Jersey Supreme Court, establishing "Builder's Remedy" litigation. |
| **1985** | The Fair Housing Act (N.J.S.A. 52:27D-301, *et seq*) is enacted, establishing an alternative administrative process that municipalities could elect to participate in that was overseen by the Council on Affordable Housing (COAH). |
| **December 2004** | COAH adopts Third Round Rules. |
| **September 14, 2006** | The Borough of Wallington adopts a Housing Element and Fair Share Plan. |
| **January 25, 2007** | Appellate Division issued a decision requiring COAH revise Third Round Rules |
| **June 2008** | The Borough of Wallington adopts a Housing Element and Fair Share Plan. |
| **December 4, 2008** | The Borough of Wallington adopts a Housing Element and Fair Share Plan. |
| **October 8, 2010** | Appellate Division invalidates COAH's Rules – growth share methodology is invalid; COAH must adopt rules utilizing methodologies similar to those used in the First and Second Round Rules. |
| **September 26, 2013** | Supreme Court affirms October 2010 decision, remands COAH to undertake new rulemaking based on Prior Round Rules and Methodologies |
| **March 10, 2015** | Supreme Court divests COAH of jurisdiction of affordable housing and municipalities must file declaratory judgment actions with the Court by July 8, 2015. |
| **July 6, 2015** | Wallington Borough files In the Matter of the Application of the Borough of Wallington, County of Bergen, Docket No. BER0L-6285-15, seeking a declaratory judgment of its affordable housing compliance. |
| **September 10, 2019** | Wallington Borough reaches settlement agreement with Fair Share Housing Center and the Borough agrees to adopt a HEFSP that satisfies its obligations for the Prior Round (1987-1999) and the Third Round (1999-2025). |
| **November 20, 2019** | A Fairness Hearing was held in Superior Court determining that the Wallington Borough settlement agreement with Fair Share Housing Center was fair to low- and moderate-income families. |
| **January 6, 2020** | Superior Court issues settlement order memorializing the Fairness Hearing on Wallington Borough's Third Round HEFSP. |
| **April 10, 2020** | Wallington Borough adopts Third Round Housing Element and Fair Share Plan Implementing Settlement Agreement with FSHC. |
| **March 20, 2024** | Governor Murphy signs Bill A4/S50 (P.L. 2024, c.2), which sets forth the rules for the Fourth Round of affordable housing in New Jersey and creates the Affordable Housing Dispute Resolution Program |
| **October 18, 2024** | The NJ Department of Community Affairs publishes non-binding present and prospective need obligations |

| | |
|---|---|
| **January 27, 2025** | Wallington Borough Council adopts Resolution No. 25-151 adopting Fourth Round affordable housing obligations as calculated by the DCA Report. |
| **June 30, 2025** | Wallington Borough Planning Board adopts Fourth Round Housing Element and Fair Share Plan prepared by Burgis Associates, Inc. |
| **June 30, 2025** | Wallington Borough Council adopts Resolution No. 2025-175, endorsing the 2025 Housing Element and Fair Share Plan prepared by Burgis Associates, Inc. and submits both to the Dispute Resolution Program for review. |

## Status of Compliance

The Borough adopted Housing Element & Fair Share Plans in 2006, 2007, and 2009 to comply with the Council on Affordable Housing (COAH) Third Round Rules. Following the New Jersey Supreme Court's ruling In re Adoption of N.J.A.C. 5:96 & 5:97, 221 N.J. 1 (2015), which stripped COAH of its administrative duties and dissolved the substantive certification process, the Borough filed a declaratory judgment action ("DJ Action") with the Superior Court, entitled, In the Matter of the Application of the Borough of Wallington for Judgement of Compliance and Repose, County of Bergen, Docket Number BER-L-6285-15. The DJ Action was settled with Fair Share Housing Center (FSHC), and the settlement was approved on November 20, 2019, and memorialized by Settlement Order on January 6, 2020, by the Superior Court of New Jersey, the Honorable Christine Farrington, J.S.C. Following this order, the Borough prepared a Housing Element & Fair Share Plan dated April 10, 2020. On January 27, 2025, the Borough adopted its Fourth Round affordable housing obligations as calculated by the DCA.  On June 30, 2025, the Borough Planning Board adopted and the Borough Council endorsed the Borough's Fourth Round Housing Element and Fair Share Plan.  Notably, the Borough did not object to DCA's assigned obligation to the Borough, as many municipalities did in the Fourth Round. Likewise, the Borough did not seek adjustments of its obligation and proposed zoning and redevelopment mechanisms for its entire obligation.  The Borough has proposed and approved the majority of projects to meet the entirety of its Third Round 125-unit obligation. Likewise, the Borough has approved two of the six projects proposed for the Fourth Round.

New Wallington Home LLC, et al. v.                                    Expert Report - September 11, 2025
Borough of Wallington, et.al.                                        J. Caldwell & Associate, LLC

# Zoning

## Purpose of Zoning for the Area

Block 71, Lots 35.01 and 35.02 are situated in the Borough's Planned Residential – Mount Laurel (PR-ML) Zone. This zone was established following the Honorable Jonathon N. Harris, J.S.C.'s written opinion April 9, 2008, which invalidated the Borough's current (at the time) zoning ordinance. The PR-ML Zone is intended to provide for multifamily inclusionary development. In addition to the subject properties, the other properties in this zone are the Spring Street Residences (35 Spring Street), 380 Mount Pleasant Avenue, and 551 Main Street.

## Planned Residential – Mount Laurel (PR-ML) Zone

Pursuant to § 365-25 of the Borough Code, permitted principal uses in the PR-ML Zone are any combination of the following uses:

- Townhouses. Units attached horizontally in a row of at least three units, with no unit located over another unit, and with party walls between each unit.

- Stacked condominiums/flats. Units stacked vertically, with each unit either occupying its own floor (a flat) or occupying all or half a floor with space on two levels (a duplex unit). The first-level unit shall have its own street-level entrance with access to upper-level units via staircases (rather than elevators).

- Multifamily apartments. A multifamily building has multiple units sharing a building floor. Access to upper-level units is typically accomplished by elevator; however, they may also be built as walk-up buildings with staircases only.

New Wallington Home LLC, et al. v.                          Expert Report - September 11, 2025
Borough of Wallington, et.al.                                      J. Caldwell & Associate, LLC

Private garages, underground parking garages, structured parking garages, tuck-under parking garages, surface parking, and other accessory uses customarily incidental to a permitted principal use are also permitted. There are no permitted conditional uses. The PR-ML Zone requires a minimum twenty percent affordable housing set-aside.

## Neighborhood Context

**Description of Sites and Neighborhood**

Block 71, Lots 35.01 and 35.02 ("the properties") are located in the northernmost portion of Wallington Borough with frontage along Main Avenue (Bergen County Route 61) to the southeast. Lot 35.01 is 3.69 acres and is improved with a parking area and a structure previously utilized for a roller rink. Lot 35.02 is 6.81 acres and undeveloped with the exception of several paved areas; this lot has no street frontage. Though located along the Saddle River, the sites are not within a floodplain.

To the northeast, the properties are bordered by a New Jersey Transit Rail Line and the municipal border with South Hackensack Township, with the nearest rail stations being Wesmont and Garfield. To the northwest, the properties are bordered by light industrial uses in Garfield. West of the properties, across Al Ventura Road, are the Jasontown Apartments. Across Main Avenue, southeast of the properties, are vacant lands and light industrial uses.

New Wallington Home LLC, et al. v.                                    Expert Report - September 11, 2025
Borough of Wallington, et.al.                                                 J. Caldwell & Associate, LLC

## Criteria for Decision-Making

The two concurrent applications before the Planning Board were as follows:

1.  Morningside at Wallington, LLC (Block 71, Lot 35.01)

    Preliminary and Final Site Plan with various "c" bulk variances

    73 multifamily units (inclusive of 15 affordable units) in two (2) buildings, and a recreation center utilizing the existing former roller rink building.

2.  New Wallington Home, LLC (Block 71, Lot 35.02)

    Amended Preliminary and Final Site Plan

    134 multifamily units (inclusive of 27 affordable units); the amended site plan seeks approvals for modifications to parking spaces, driveways, and the location of trash receptacles.

As such, the Planning Board has jurisdiction over both pursuant to N.J.S.A. 40:55D-48, N.J.S.A. 40:55D-50, and N.J.S.A. 40:55D-48, and N.J.S.A. 40:55D-70(c). N.J.S.A. 40:55D-50 states that Planning Boards shall grant final site plan approval:

> "…if the detailed drawings, specifications and estimates of the application for final approval conform to the standards established by ordinance for final approval, the conditions of preliminary approval and, in the case of a major subdivision, the standards prescribed by N.J.S.46:26B-1 et seq.; provided that in the case of a planned development, the planning board may permit minimal deviations from the conditions of preliminary approval necessitated by change of conditions beyond the control of the developer since the date of preliminary approval without the developer being required to submit another application for development for preliminary approval."

New Wallington Home LLC, et al. v.                    Expert Report - September 11, 2025
Borough of Wallington, et.al.                                    J. Caldwell & Associate, LLC

Per the Court's Decision regarding the action in lieu of prerogative writ filed by New Wallington Home, LLC, all of the variances listed above can be considered under the C(2) criteria, pursuant to N.J.S.A. 40:55D-70C(2). Under this criteria, applicants must demonstrate that, "…where in an application or appeal relating to a specific piece of property the purposes of this act…would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment." This is the so-called positive criteria. The negative criteria must also be demonstrated. Here, applicants must show that the granting of the variance will not cause any substantial detriment to the public good and that there is no substantial impairment to the intent and purpose of the municipality's zone plan or zoning ordinance. Municipal Planning Boards have the responsibility to make findings of fact (Medici v. BPR Co., 107 N.J. 1, 23-25 [1987]; Stochel v. Planning Bd. Of Edison, 348 N.J. Super. 636, 646 [Law Div. 2000]), and applicants bear the burden of satisfactorily proving both the positive and the negative criteria (Ten Stary Dom Ptp. V. Mauro, 216 N.J. 16, 30 [2013]; Nash v. Board of Adjustment of Morris Tp., 96 N.J. 97 [1984]).

**Variances Requested**

In the most recent Planning Board application, Morningside at Wallington, LLC requested the following variances for Lot 35.01:

1.  § 365-25F(6): Minimum rear lot line setback. 25 feet required, 15 feet proposed. The setback may be reduced to zero (0) feet at the discretion of the Planning Board if a uniform site plan application is submitted for both Lot 35.01 and 35.02.

2.  § 365-25G(2): Minimum separation for buildings or building complexes front-to-front, front-to-back, or back-to-back. 40 feet required, 35.1 feet proposed.

New Wallington Home LLC, et al. v.                                    Expert Report - September 11, 2025
Borough of Wallington, et.al.                                              J. Caldwell & Associate, LLC

3. § 365-25I(3): Maximum building height. Four (4) stories/45 feet permitted for multifamily apartments. Four (4) stories/48.5 feet proposed.

4. § 365-25J(1): No off-street surface parking lots permitted within 50 feet of the Main Avenue boundary. Curb of parking proposed within 0.4 feet of the Main Avenue boundary (existing is zero feet).

5. § 365-25K(1): Maximum building coverage. 25 percent is permitted, 30.02 percent proposed (existing is 31.45 percent).

6. § 365-25K(2): Maximum impervious coverage. 75 percent is permitted, 83.02 percent proposed.

7. § 365-25L(1): Minimum percent of lot devoted to open space. 30 percent is required, 17.1 percent proposed.

8. § 365-25M(3): Minimum buffer along Main Avenue. A 25-foot grass and shrub buffer is required; 0-foot buffer proposed (existing non-conforming condition).

**The Applicant's Proofs**

The Applicant had several witnesses provide expert testimony in their respective fields. These include site civil engineer Calisto Bertin; project traffic engineer Dawson Bloom; architect Jack Raker; and project planner Brigette Bogart. These witnesses provided testimony over the course of four (4) hearings: May 16, 2017; July 18, 2017; September 19, 2017; and December 19, 2017. Additionally, James Nuckel, the principal of both applications, provided testimony on these dates.

Mr. Bertin's testimony addressed numerous aspects of the application. Mr. Bertin provided a description of the proposed amendments, including testimony on the reasoning behind the

reconfiguration of the driveway and its impact on the rest of the site. When the New Wallington site received its original approval, the Morningside site was not being developed, and, as such, modifications needed to be made to accommodate the development. Mr. Raker provided testimony regarding the design and layout of the buildings and, specifically, the decision to request a variance for building height. Ms. Bogart's testimony identified the existing roller rink building as the primary driver of four (4) of the eight (8) requested variances, and also addressed the number of children estimated to be generated by the project, which was an additional 5 to 11 students. In the following paragraphs, specific proofs cited by each witness with respect to the appropriate variance request are discussed.

Minimum Rear Lot Line Setback (25' required; 15' proposed)

Mr. Bertin testified that this variance could be eliminated through a lot line adjustment, but that it does not affect any neighboring properties, only the two lots with applications before the Board. Mr. Bertin stated that it helps with centering the building on the courtyard. This testimony (provided by the Plaintiff's engineer, not planner) only partially addresses the negative criteria required to be demonstrated. The Plaintiff's experts did not opine on the positive criteria with respect to this variance.

Minimum Separation for Buildings, Front-to-rear (40' required; 35.1' proposed)

Mr. Bertin testified that this variance between buildings three and six is needed due to the fact that if building six is moved further south, it will impact the required landscape buffer along the Jasontown Apartments. Building three could be moved north, but, similarly, the landscaping buffer would be impacted.

New Wallington Home LLC, et al. v.                        Expert Report - September 11, 2025
Borough of Wallington, et.al.                                    J. Caldwell & Associate, LLC

Maximum Building Height (4 stories/45' permitted; 4 stories/48.5' proposed)

Upon review of the 2017 Application's record, there was no specific mention of either the positive or negative criteria required to be demonstrated for the grant of the height variance.[1] However, the Board agreed unanimously, as stated in Resolution #16-300, memorialized on May 17th, 2016, that "…the granting of the height variance would not violate the spirit and intent of the Master Plan" and that the pitched roofline is more beneficial, aesthetically, to the area than the sloped roof.

Off-street Parking Fronting Main Avenue (50' buffer required; 0.5' proposed).

Per Mr. Bertin's testimony, the applicant wanted to create parking for the recreation center, and the parking will be shielded through landscaping.  Ms. Bogart affirmed that this design makes for more efficient parking. Landscaping was proposed between the parking spaces and Main Avenue.

Maximum Building Coverage (25% required; 31.45% existing; 30.02% proposed)

Mr. Bertin stated that the building coverage variance being sought is due to the Applicant retaining the existing former roller rink building, rather than demolishing it. Ms. Bogart stated that it was a goal of good planning to provide for active recreation on the site. The PR-ML zone, as noted above, requires a maximum of 25 percent. There was no testimony on the record that the granting of this variance would not impair the intent and purpose of the zoning ordinance, and this proposal sought to directly contradict the intent of the ordinance.

---

[1] Wallington Borough Planning Board Resolution #18-326 dated January 16, 2018; transcript of the May 17, 2017 meeting; minutes of the July 17, 2017 public hearing; minutes of the September 19, 2017 public hearing; and minutes of the December 19, 2017 public hearing.

<u>Maximum impervious coverage (75% required; 83.02% proposed)</u>

Mr. Bertain referenced the roller rink building as a contributing factor to this variance request. The issue of whether this building should be kept was addressed numerous times. The Plaintiff's planner conceded that at least four (4) of the variances being requested were due to retaining the existing building.

<u>Minimum percent of lot devoted to open space (20% required; 17.1% proposed).</u>

Mr. Bertin pointed to keeping the roller rink building as both a cause of and a justification for this variance. He stated that although 17.1% percent of active open space is proposed, the roller rink occupies approximately 17% of the area of the site, bringing the "active usable space" to over 34%. The proposed yoga studio would add an additional 2% of indoor active space. The Plaintiff's experts opined that although it is not open space, it is still active recreation. The Borough's ordinance states, "At least 30% of the lot shall be devoted to open space. Active recreation facilities, required buffer areas, and other pervious areas, including lands used for stormwater detention, may be counted as open space."[2]  Despite the broad definition of open space that includes areas such as required buffers, the Plaintiffs relied entirely on this existing building to provide the required "open space." While providing for active recreation on the site is an intent of the ordinance, so is the provision of open space, specifically. Notably, the minimum buffer along Main Avenue could have counted towards the Plaintiff's proposed open space, but in order to provide for parking for this recreation facility, the Plaintiff's design did not include any buffer along Main Avenue.

---

[2] Borough of Wallington, § 365-25 "Use regulations for PR-ML Planned Residential – Mount Laurel Zone," subsection L(1) "Open Space." Retrieved from https://ecode360.com/15124669#15124669

New Wallington Home LLC, et al. v.                          Expert Report - September 11, 2025
Borough of Wallington, et.al.                                      J. Caldwell & Associate, LLC

Minimum buffer along Main Avenue (25' required; 0' proposed).

This variance was being requested to provide for parking near the recreation facility, per Mr. Bertin's testimony. No testimony was provided as to the negative criteria including the substantial detriment to the public good and substantial impairment to the intent and purpose of the zone plan and zoning ordinance that would result from this proposal.

**Planning Board Concerns**

Throughout the 2017 hearings, the Borough of Wallington Planning Board identified several concerns about the impact of the proposal, culminating in Resolution #18-326, memorialized on January 16, 2018, in which the Board denied the applications. Resolution #18-326 conceded that the Board accepted "much of the testimony" provided by the applicant's various experts (p. 6, item 17), but there are several points of concern listed in the resolution. The concerns of the Board specifically included the number of variances that were triggered through maintaining the roller rink building and designing the site around that building, rather than demolishing it.

Keeping the Former Roller Rink Building

A major concern cited in this resolution was regarding the project being designed around the existing accessory building, which was "…especially egregious in light of the fact that the variances were run counter to important planning goals as open space, maximum impervious coverage, and height of building that might encroach on visibility and light." The minimum 25 percent open space requirement points to the ordinance's intent for a developer to remove this structure (which comprises about 17% of the lot). Although the Applicant was willing to allow for weekly Borough use of the recreation center, per the May 17, 2017 transcript, the Board had other concerns with the building. Namely, that maintaining the structure results in at least four (4) variances from the Borough Code,

New Wallington Home LLC, et al. v.                          Expert Report - September 11, 2025
Borough of Wallington, et.al.                                    J. Caldwell & Associate, LLC

some of which, such as the provision of open space and maximum impervious coverage, are significant land-use concerns. The record reflects a lack of demonstration by the applicant's experts that keeping this building is a better planning alternative than demolishing it, and no other alternatives appeared to be considered. The point was made by the Plaintiff's planner that the provision of year-round active recreation is a practice of sound planning, but not specifically why this is a better planning alternative than outdoor open space, as conceived by the ordinance.

## Sewer Capacity

The ability of the existing sewer infrastructure along Main Avenue was of concern to the Board during the 2017 application, as well as the original application. A sewer study was conducted as part of the 2017 application, and the Applicant's Engineer confirmed there is enough capacity as the system was designed to accommodate development on both parcels. The Board's concerns stemmed from the fact that specific usage data was not provided.

## Traffic

In both the 2017 application and the 2019 application, traffic was a major concern of the Board. The Board raised concerns about vehicular circulation within the site as well as the traffic that will be generated leaving the site and impacting surrounding roadways. The applicant provided a traffic study prepared by Bertin Engineering, wherein several traffic counts were completed. This report concluded that there would be no further degradation of the existing traffic, with the exception of a delay at the intersection of Main Avenue and Midland Avenue; this section of road has an existing level of service (LOS) F. The Board also referenced a memorandum prepared by the Bergen County Planning Board Planner that noted concern about the sight lines for ingress and egress to the site near

the "Welcome to Wallington" monument sign. To address this, the applicant shifted the sign closer towards the railroad tracks.

The Board, additionally, indicated concern about the sight limitations in the middle of the property and questioned the applicant's engineer as to whether it would be more "sensible and for safety reasons" to move the driveway to the southern end of the site. Mr. Bertin stated it is not unsafe as proposed, as the railroad trestle does not obstruct visibility. However, the Board was not convinced that all traffic-related concerns were addressed.

Known Contaminated Site History

The Board raised concerns that a portion of Lot 35.01 is a known contaminated site and expressed concern regarding the remediation status. In 2017, a letter from the New Jersey Department of Environmental Protection was requested as a condition of approval, and the Board indicated they had not received such a document as of 2019. There also appeared to be conflicting testimony, per the Board Attorney, between the 2017 engineering testimony and the 2019 testimony. The Board attorney raised concerns regarding the credibility of testimony.

Number of School Children

Both Board members and members of the public expressed concern about the burden the project will place on the school district. The applicant's planner provided testimony on the number of school children that would be generated from this project. Using local data from the school district, Ms. Bogart calculated that about five (5) to 11 students would be generated from this project. The number of students likely to be generated from this project was not cited as a reason for denial in Resolution #18-326.

New Wallington Home LLC, et al. v.      Expert Report - September 11, 2025
Borough of Wallington, et.al.        J. Caldwell & Associate, LLC

## Prior Application

Before being remanded back to the court and ultimately approved in 2018, the Board denied the 2017 application, which involved 134 units of multifamily housing. The Board's expert planning witness, Paul Phillips, testified that the residential access drive constitutes an intensification of a non-conforming commercial use, and that the Board does not have jurisdiction over the application as it should have been brought to the Zoning Board of Adjustment. In the resolution denying the application, the following reasons were stated:[3]

1. The Board found that the testimony of Applicant's engineer, Jeffrey Zielinski, was a net opinion[4] unsupported by facts regarding several issues:

    a. Parking not permitted between the front of the building and Main Avenue: Mr. Zielinski stated it would not impair the Zoning Plan and would not cause a detriment to the public; the Board found it necessary to have a Professional Planner testify as to the validity of this. The Resolution further notes that "This conclusory testimony was not supported by any factual testimony whatsoever." Evidence such as the design being in keeping with the character of the surrounding area should have been provided by the Plaintiff's experts.

    b. Sanitary sewer system: Mr. Zielinski testified that it was his opinion that the dairy across the street had a significant flow when at full production, and there should not be any capacity issue as the dairy is closing. This statement was not supported

---

[3] Planning Board of the Borough of Wallington Resolution #14-282.
[4] A "net opinion" is an opinion by an expert that is not supported by data or studies; Boards cannot use these statements to form the basis of their findings.

21

New Wallington Home LLC, et al. v.                            Expert Report - September 11, 2025
Borough of Wallington, et.al.                                    J. Caldwell & Associate, LLC

---

by the review of data gathered from the dairy or similar developments as to what was proposed, but rather an assumption on Mr. Zielinski's part.

2. Environmental Study: The Board noted "debris, concrete, bricks, metal, asphalt, wood, wire, and tree logs" on the subject property. While the Board concedes that certain subjects are under Federal or State jurisdiction, the Resolution notes that the Planning Board "Does have jurisdiction over the aesthetics of the property and the Applicant must address the negative criteria in connection with any application for development."

3. Light, air, and space: The Resolution specifically states that the Board finds the variances being requested, "will decrease the light, air, and space of adjacent properties."

The Resolution repeatedly states that this project constitutes overuse or overbuilding on the site and is not grounded in sound planning practices such as the provision of open space, ensuring environmental protection, providing an aesthetically pleasing design, and ensuring adequate sewer service.

Court Order for Judgment

New Wallington Home, LLC and Morningside at Wallington, LLC appealed the Planning Board's denial, and the matter was heard before the Superior Court on March 25, 2015. The Court invalidated the Planning Board's decision. While the Court decided in favor of the Plaintiff, the ruling acknowledged that the Board had "legitimate safety concerns regarding traffic between the two lots." The Court remanded the application back to the Planning Board with respect to the following issues: (1) sewer capacity; (2) traffic circulation; and (3) building height. The Application was again heard at several meetings in 2016. The Board ultimately approved the New Wallington project via Resolution No. 16-300.

---

22

New Wallington Home LLC, et al. v.                    Expert Report - September 11, 2025
Borough of Wallington, et.al.                                J. Caldwell & Associate, LLC

**Board Member Comments**

While transcripts and minutes were thoroughly reviewed in the preparation of this planning analysis, it should be noted that, as observed in New York SMSA v. Bd. Of Adj., 370 N.J. Super. at 334, "Remarks of members of the board: represent informal verbalizations of the speaker's transitory thoughts, they cannot be equated to deliberative findings of fact. It is the Resolution, and not Board Members' deliberations, that provides the statutorily required findings of fact…"  The Court in Kaufmann v. Planning Bd. For Warren Tp., 110 N.J. held that, "The focus of a c(2) case, then, will be not on the characteristics of the land that, in light of current zoning requirements, create a 'hardship' on the owner warranting a relaxation of standards, but on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community."  However, contrary to the Plaintiff's allegations, the Board's collective decisions, reflected in the respective resolutions, focused on land-use-related concerns.

The Plaintiff cites individual Board member comments over the course of the hearings and alleges that these are policies of the Borough and the basis for decisions made by the Board.  However, the transitory comments were not deliberations of the Board and were not policies of the Borough. The Resolutions of the respective Boards reflected the actual findings and deliberations of the Board, which were based on legitimate land use concerns.  In fact, the Court Order remanding the application affirmed that there were several legitimate land use concerns raised by the Board. These include on-site circulation, traffic capacity, sewer service, and building height.

## Analysis of Impact and Effects on Segregation – Expert Report

As part of this analysis, this report reviewed the expert report prepared by Justin Steil, Ph.D., dated June 30, 2025. The Supreme Court in Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc., 576 U.S. 519, 547 (2015) determined that unlawful discrimination under the Fair Housing Act can be evidenced by 1) disparate treatment on the basis of a protected characteristic or 2) of discriminatory effect on the basis of a protected characteristic. In his report, Dr. Steil examined publicly available data using various methods and concluded that the Borough's practices "had an adverse impact on the basis of race and family status." Specifically, Dr. Steil found that the Borough's actions "blocking the proposed mixed-income multifamily development adversely affected potential non-white residents at 1.2 times the rate that it affected potential white residents." Residents with children under 18 would be impacted at 1.3 times the rate of residents without children. Dr. Steil concluded that the Borough's actions disproportionately negatively affect non-white residents and families with children.

The scope of this expert report did not consider all the factors that municipal land use boards typically evaluate when reviewing development applications. These include safety concerns, aesthetic considerations, and other unique site-specific factors. Likewise, Dr. Steil does not include the fact that several affordable housing applications have been approved by the Borough, and in some cases, have been constructed, as noted in the review of affordable housing compliance above. Likewise, on January 6, 2020, the Superior Court of New Jersey found the Borough's Third Round Housing Element and Fair Share Plan to be fair and reasonable and to protect the interests of low- and moderate-income people pursuant to East/West Venture v. Fort Lee, 286 N.J. Super.311 (App. Div. 1996). Since 2020, the Borough has continued to approve additional affordable housing applications and propose new redevelopment areas and inclusionary zones. Additionally, in both the Third and

New Wallington Home LLC, et al. v.
Borough of Wallington, et.al.

Expert Report - September 11, 2025
J. Caldwell & Associate, LLC

Fourth Round Housing Elements and Fair Share Plans, the Borough proposed zoning and projects to meet its entire obligation for affordable housing.  The omission of both existing and proposed affordable units in the Borough and the Borough's Court-affirmed compliance with the Prior and Third Rounds are significant factors to consider in these allegations.  The Borough's approval of existing and proposed affordable units is arguably more impactful on the provision of housing for low- and moderate-income families as opposed to honing in on one singular development project (which has been approved by the Borough Planning Board at this time). Notably, the 2020 HEFSP finds that this particular location is in a critical transition area between land uses, is in close proximity to the Wesmont Rail Station, existing community open space, and overall is appropriate for multifamily development.

Dr. Steil quotes in his report the findings from Mhany Mgmt. v. Cnty. of Nassau, 819 F.3d 581, 617 (2d Cir. 2016), wherein the, "…plaintiffs established disparate impact through analyses finding that Garden City's rejection of multifamily zoning in favor of more restrictive zoning had a significant disparate impact on minorities because it 'largely eliminated the potential for the type of housing that minorities were disproportionately likely to need — namely, affordable rental units.'" This is plainly not the case in the 2017 New Wallington and Morningside Development applications. The New Wallington site was approved by the Borough Planning Board in 2016 following a diligent review of land-use related concerns as outlined in previous sections of this report and acknowledged as such by the Court in that case. Between the Board's 2016 approval of just the New Wallington project and the 2017 applications involving both properties, the Plaintiff reconfigured the driveway that traverses both sites. As a result, the on-site circulation, which was one of the topics that the Court remanded back to the Board for review in 2016, once again was raised as an issue. Due to this reconfiguration of the driveway, the Morningside application directly impacted the on-site circulation

New Wallington Home LLC, et al. v.                          Expert Report - September 11, 2025
Borough of Wallington, et.al.                                       J. Caldwell & Associate, LLC

and safety concerns brought up by the Board in the initial approval. Additionally, there are numerous other affordable units either constructed or approved in the Borough, which are rental apartments and available to families of any size or race that meet the criteria for being very low-, low-, or moderate-income. As identified in the Fourth Round HEFSP, the Borough has proposed an additional six (6) sites which have been determined to be suitable for development or redevelopment into multifamily housing, which are consistent with the Borough's Master Plan and zoning ordinances. Likewise, the developer has caused delays in the project by not constructing the project that was approved in 2016 and instead further amending existing approvals.  Based on these facts, the Borough's actions have not caused a disparate impact on minorities and/or families with children.

The assertion that the Borough is acting in a discriminatory fashion toward protected classes is further diluted by Eastampton Center v. Township of Eastampton, 155 F. Supp. 2d 102, 118-119 (D.N.J. 2001), where a developer challenged the validity of the township's rezoning to decrease density across the municipality.  The ordinance rezoned several districts from a density of two residential units per acre to a lower density of one unit per five acres. The developer in this case claimed this violated the Fair Housing Act, 42 U.S.C. § 3604. The court explained that the core of intentional discrimination under the Act involves unfair treatment of a protected group based on an impermissible purpose. It found that the plaintiff did not meet the burden of proving the ordinance's invalidity. The court noted that the ordinance did not prevent families with children from living in existing housing, nor did it block future development of housing for such groups. Additionally, the court pointed out that the Fair Housing Act does not require municipalities to plan for, promote, or build any specific type of housing. The court also stated that, under the police power delegated by the State, municipalities can regulate residential growth to serve the public interest. Federal case law supports that preserving "small-town character," open spaces, and maintaining low population density are valid uses of police

26

power. As a result, the court granted summary judgment to the defendant. In this case, the Borough is supporting affordable housing as is shown throughout this report, and complies with State affordable housing obligations. Further, the Borough's land use decisions and deliberations are based on valid land use concerns and goals and objectives of the Borough's Master Plan and ordinances.

## Conclusion

The Borough adopted Housing Element and Fair Share Plans in 2006, 2007, and 2009 to comply with the Council on Affordable Housing (COAH) Third Round Rules. Following the New Jersey Supreme Court ruling in 2015, which eliminated COAH's administrative role and the substantive certification process, the Borough initiated a declaratory judgment action (DJ Action) regarding its compliance with affordable housing obligations. This action was settled with the Fair Share Housing Center (FSHC), with the settlement approved on November 20, 2019, and formalized by a court order on January 6, 2020.

In response, the Borough prepared a new Housing Element and Fair Share Plan dated April 10, 2020. On January 27, 2025, the Borough adopted its Fourth Round affordable housing obligations as calculated by the Department of Community Affairs (DCA). By June 30, 2025, the Borough Planning Board and Council endorsed the Fourth Round Housing Element and Fair Share Plan. Notably, the Borough did not contest its assigned obligation from the DCA, nor did it seek adjustments; instead, it proposed zoning and redevelopment mechanisms to address its entire obligation. The Borough successfully approved projects to meet its Third Round obligation of 125 units and has also approved two of the six proposed projects for the Fourth Round.

During the 2017 hearings, the Borough of Wallington Planning Board expressed several concerns regarding one of the Morningside development proposals, ultimately leading to the denial of

New Wallington Home LLC, et al. v.                        Expert Report - September 11, 2025
Borough of Wallington, et.al.                                    J. Caldwell & Associate, LLC

the application in Resolution #18-326, adopted on January 16, 2018. While the Board acknowledged

some of the expert testimony provided by the applicant, several key issues were raised:

1. **Variances Related to the Roller Rink Building**: A major concern was the decision to design the project around the existing roller rink building, which triggered multiple variances related to open space, impervious coverage, and building height. The Board indicated that maintaining the building was contrary to planning goals, as it occupied about 17% of the lot and hindered the provision of the required minimum 25% open space. The applicant failed to demonstrate that keeping the building was a better planning alternative compared to its demolition.

2. **Sewer Capacity**: The Board was concerned about the existing sewer infrastructure along Main Avenue. Although a sewer study confirmed sufficient capacity for development, the Board noted that specific usage data was lacking, which contributed to their apprehension.

3. **Traffic Concerns**: Traffic was a significant issue in both the 2017 and 2019 applications. The Board questioned the impact of vehicular circulation on-site and the traffic generated by the development on surrounding roadways. A traffic study indicated no further degradation of existing conditions, except for delays at the Main Avenue and Midland Avenue intersection, which already had a poor level of service (LOS F). Additionally, concerns were raised about sight lines for ingress and egress near the "Welcome to Wallington" monument, leading the applicant to relocate the sign. The Board also suggested moving the driveway for safety reasons, although the applicant's engineer maintained that the current proposal was safe.

Overall, the Planning Board's concerns revolved around land use implications, infrastructure capacity, and traffic safety, ultimately leading to their decision to deny the application.

As stated earlier in this report, it is imperative that the Board's collective actions are reviewed, and not specific comments made by individual members. This is supported by case law (New York SMSA v. Bd. Of Adj., 370 N.J. Super. at 334). The subject properties of this report, as with any application for land development,  have site-specific considerations that the Borough Planning Board diligently reviewed pursuant to Municipal Land Use Law and court orders. The Board ultimately approved the New Wallington site in 2016 after three specific concerns were addressed: sewer capacity, building height, and site circulation. The Morningside project presented an application wherein the development was designed around the existing roller rink, which resulted in numerous variances from the Borough code for regulations concerning important planning and land use considerations, such as the provision of open space and minimizing impervious coverage. Several variances could have been avoided if the building had been demolished, and the applicant failed to provide the required justifications under the Municipal Land Use Law to the Board's satisfaction.

The Plaintiff alleges housing discrimination by the Borough; however, their expert report did not consider the Board's deliberations with respect to various factors typically evaluated by municipal land use boards, such as safety, aesthetics, and site-specific concerns. Importantly, the expert report does not take into account the several development applications mentioned in this report that have been approved, or the fact that on January 6, 2020, the Superior Court of New Jersey deemed the Borough's Third Round Housing Element and Fair Share Plan fair and reasonable, protecting the interests of low- and moderate-income individuals.

The claim of discriminatory practices by the Borough is further weakened by the case of Eastampton Center v. Township of Eastampton, where a developer challenged a rezoning ordinance aimed at reducing density. The court ruled that the developer failed to prove intentional discrimination under the Fair Housing Act, emphasizing that the ordinance did not prevent families

New Wallington Home LLC, et al. v.                          Expert Report - September 11, 2025
Borough of Wallington, et.al.                                    J. Caldwell & Associate, LLC

with children from living in existing housing or block future developments for such groups. The court

affirmed that municipalities have the authority to regulate residential growth to serve public interests,

such as preserving small-town character and maintaining low population density.

In conclusion, the Borough is actively supporting affordable housing and remains compliant

with state affordable housing obligations, with land use decisions driven by legitimate concerns aligned

with the goals of its Master Plan and ordinances.

New Wallington Home LLC, et al. v.                          Expert Report - September 11, 2025
Borough of Wallington, et.al.                                      J. Caldwell & Associate, LLC

# Appendix A: Curriculum Vitae of Jessica C. Caldwell, P.P., A.I.C.P.



**J Caldwell**
**& Associates,** LLC
Community Planning Consultants

(973) 300-5060
jcaldwell@jcaldwellassociates.com
145 Spring Street | Suite E | Newton, NJ 07860

## JESSICA C. CALDWELL, P.P., A.I.C.P, L.E.E.D.-G.A.
## PRINCIPAL PLANNER – J. CALDWELLL & ASSOCIATES, LLC



Jessica C. Caldwell, P.P., A.I.C.P., L.E.E.D.-G.A., is Principal Planner and founder of J. Caldwell & Associates, LLC.  Ms. Caldwell has been providing planning services to municipalities and government entities for over 25 years.  Ms. Caldwell's firm is the appointed planner for 20 New Jersey municipalities.  She has been qualified as an expert planning witness in over 250 cases before Planning and Zoning Boards in New Jersey. Ms. Caldwell has a specialty in affordable housing and developed 20 Housing Elements and Fair Share Plans for the Fourth Round and represented 13 municipalities in Declaratory Judgment actions for the Third Round.   She has given testimony in New Jersey Superior Court on over a dozen affordable housing cases in Northern New Jersey.  Ms. Caldwell teaches land use classes for Rutgers Bloustein School.

### EDUCATION:

PORTLAND STATE UNIVERSITY, COLLEGE OF URBAN & PUBLIC AFFAIRS
MASTER OF URBAN AND REGIONAL PLANNING - 1998

UNIVERSITY OF OREGON, DEPARTMENT OF PLANNING, PUBLIC POLICY & MANAGEMENT
BACHELOR OF SCIENCE- 1994

### LICENSES/CERTIFICATIONS:

LICENSED PROFESSIONAL PLANNER, NEW JERSEY (LICENSE NO. 5944) - 2005
CERTIFIED PLANNER, AMERICAN INSTITUTE OF CERTIFIED PLANNERS (CERTIFICATE NUMBER 016831) - 2001
LEADERSHIP IN ENERGY & ENVIRONMENTAL DESIGN – GREEN ASSOCIATE (CERTIFICATE NUMBER 10825414)- 2013

### PROFESSIONAL AFFILIATIONS

New Jersey Planning Officials, Member
American Planning Association, National and New Jersey Chapter

Sussex County Economic Development Partnership, Board of Directors
Green Building Institute, Member



## AFFODABLE HOUSING RELATED PLANNING EXPERIENCE:

**HOUSING ELEMENTS AND FAIR SHARE PLANS – FOURTH ROUND**
- Township of Lebanon, Hunterdon County
- Township of Raritan, Hunterdon County
- Borough of Bernardsville, Somerset County
- Township of Boonton, Morris County
- Township of Jefferson, Morris County
- Township of Long Hill, Morris County (Fair Share Plan Only)
- Borough of Mendham, Morris County
- Borough of Mount Arlington, Morris County
- Borough of Wharton, Morris County
- Borough of Ringwood, Passaic County
- Township of West Milford, Passaic County
- Township of Andover, Sussex County
- Borough of Branchville, Sussex County
- Borough of Franklin, Sussex County
- Township of Fredon, Sussex County
- Township of Green, Sussex County
- Town of Newton, Sussex County
- Township of Stillwater, Sussex County
- Township of Wantage, Sussex County
- Township of Vernon, Sussex County

**HOUSING ELEMENTS & FAIR SHARE PLANS (THIRD ROUND COURT CASES)**
- Township of Andover, Sussex County (2018) Received Court Approval
- Town of Newton, Sussex County (2016) Received Court Approval
- Borough of Franklin, Sussex County, Plan adopted 2022
- Township of Green, Sussex County (2016) Received Court Approval
- Township of Montague, Sussex County (2015) Received Court Approval
- Borough of Hopatcong, Sussex County (2016) Received Court Approval
- Borough of Mendham, Morris County (2020) Received Court Approval
- Township of Jefferson, Morris County (2024) Received Court Approval
- Borough of Wharton, Morris County (2016) Received Court Approval
- Borough of Mount Arlington, Morris County (2017) Received Court Approval
- Township of Long Hill, Morris County (Fair Share Plan Only) (2018) Received Court Approval
- Township of Raritan, Hunterdon County (2019) Received Court Approval
- Township of Blairstown, Warren County (2016) Received Court Approval
- Borough of Ringwood, Passaic County (2025) Received Court Approval

**HOUSING ELEMENTS & FAIR SHARE PLANS (THIRD ROUND COAH)**
- Town of Newton, 2008, 2009
- Township of Frankford, 2008
- Township of Montague, 2009
- Township of Sandyston, 2008, Received COAH Substantive Certification 2010
- Township of Vernon, 2010



## WORK EXPERIENCE:

**Principal Planner, J. Caldwell & Associates, LLC Newton, New Jersey   April 2012 –present**

Principal consulting planner and manager of J. Caldwell & Associates, LLC, a planning consulting firm working primarily with municipal clients.  Ms. Caldwell is the appointed municipal planner, board planner and/or affordable housing planner for twenty (20) municipalities.  Ms. Caldwell also works with private clients on site plan applications, use variances and other land use applications.

**Adjunct Professor, Rutgers Edward J. Bloustein School, New Brunswick, New Jersey January 2011 –present**

Adjunct professor teaching courses for new board members of planning boards, zoning boards and land use boards. Also teach courses for board administrator's certifications.

**Principal Planner, Harold E. Pellow & Associates, Inc.  Augusta, New Jersey March 2005 –March 2012**

Principal consulting planner in charge of the planning department of the firm.  Ms. Caldwell was the appointed municipal planner for five (5) municipalities in northern New Jersey responsible for long range planning projects and development review.

**Principal Planner Sector Planning Ltd., New York, New York    February 2001 – July 2003**

Senior consulting planner responsible for land use, zoning, community planning and environmental review projects including: Briarcliff Manor Growth Management Plan & Zoning Code Review, Southampton Parks and Recreation Master Plan as well as Environmental Impact Statement Reviews in Manhattan, Brooklyn, Queens and Ossining, New York.

**Senior Planner Ferrandino & Associates Inc., Elmsford, New York   August 2000-February 2001**

Senior consulting planner responsible for land use, zoning, community planning and environmental review projects including: New Rochelle Zoning Code revision, Eastchester Planning Procedures Study, Mount Vernon Economic Development Zone Application as well as Environmental Impact Statement Reviews in Cortlandt, Greenburgh, Mount Vernon, and New Rochelle.

**Associate Planner, City of Happy Valley, Oregon   January 1999 – August 2000**

Senior staff planner responsible for all planning & zoning related projects within the City of Happy Valley.  Projects included development and zoning review, advising Planning Commission and City Council, Managing the City's Park Master Plan development, compliance with Metro Regional Growth Management requirements, implementing City's Urban Forestry Plan, and managing City's Wetland Park Restoration Project and Grant procurement.

**Assistant Planner Land Use and Transportation, Washington County, Oregon  June 1998 – December 1998**

Contract Planner for the Land Development Services Division.  Projects included staff reports for administrative type and quasi-judicial land use and zoning reviews, testifying at public hearings, interpreting the Zoning Code, Community Plans, Transportation Plan, and Comprehensive Plan for staff reports and the public, site inspections for land use proposals and compliance with zoning code.

**Planning Assistant Bureau of Planning, City of Portland, Oregon   January 1996 - June 1998**

Assisted in the Long-Range Planning Division on the following projects: Boring Lava Domes Environmental Zoning Plan & Johnson Creek Floodplain Regulations, Environmental Planning Handbook & Tree Retention and Replacement Policy, Hollywood Neighborhood Plan, and Metro Regional Growth Management Plan Compliance Report.



## MUNICIPAL CLIENTS

| | | |
|---|---|---|
| Borough of Andover | Township of Hampton | Borough of Ringwood |
| Township of Andover | Borough of Hopatcong | City of Summit |
| Borough of Bernardsville | Township of Jefferson | Township of Sandyston |
| Township of Blairstown | Borough of Kinnelon | Township of Stillwater |
| Borough of Branchville | Township of Long Hill | Township of Vernon |
| Township of Boonton | Borough of Mendham | Borough of Victory Gardens |
| Township of Frankford | Township of Montague | Township of Wantage |
| Borough of Franklin | Borough of Morris Plains | Borough of Wharton |
| Township of Fredon | Borough of Mount Arlington | Township of West Milford |
| Township of Green | Town of Newton | Township of West Orange |
| Borough of Hamburg | Township of Raritan | |

## EXPERT WITNESS IN THE FOLLOWING MUNICIPALITIES/COUNTIES

| | | |
|---|---|---|
| Borough of Atlantic Highlands | Township of Harding | Township of Piscataway |
| Township of Basking Ridge | Township of Hardyston | Township of Pohatcong |
| Township of Bedminster | Borough of Hasbrouck Heights | Borough of Pompton Lakes |
| Township of Belleville | Township of Hillsborough | Township of Randolph |
| Bergen County Ag Dev Board | Borough of Hopatcong | Village of Ridgewood Borough |
| Borough of Bergenfield | Township of Hope | Borough of Riverdale |
| Township of Berkeley Heights | Township of Independence | Village of Ridgewood |
| Borough of Bernardsville | Township of Irvington | Borough of Rockaway |
| Township of Bernards | Township of Jefferson | Township of Rockaway |
| Township of Blairstown | City of Jersey City | Borough of Roselle Park |
| Town of Boonton | Township of Knowlton | Township of Roxbury |
| Township of Byram | Township of Lafayette | Township of Saddlebrook |
| Borough of East Rutherford | Borough of Madison | Borough of Somerville |
| City of Camden | Township of Mahwah | Township of Sparta |
| Borough of Chatham | Township of Mansfield | Borough of South Bound Brook |
| Borough of Chester | Township of Mendham | Township of South Brunswick |
| Township of Clinton | Township of Mine Hill | Township of South Plainfield |
| Township of Denville | Township of Montgomery | Borough of Stanhope |
| Town of Dover | Township of Montville | Borough of Sussex |
| City of East Brunswick | Town of Morristown | Sussex County |
| City of East Orange | Borough of Morris Plains | City of Summit |
| Borough of Edgewater | Township of Mount Olive | Township of Tewskbury |
| Township of Edison | Borough of Mountain Lakes | Borough of Wanaque |
| Borough of Florham Park | Borough of Netcong | Township of Wantage |
| Township of Franklin | City of Newark | Township of Wayne |
| Township of Frankford | Township of North Plainfield | Washington Township, Morris |
| Township of Fredon | Township of Oxford | Washington Township, Warren |
| Township of Frelinghuysen | City of Passaic | Town of Westfield |
| Township of Lebanon | Borough of Park Ridge | Township of White |
| Town of Hackettstown | Borough of Peapack-Gladstone | Borough of Washington |
| Township of Hanover | Township of Pequannock | Township of Woodbride |