# MASTER PLAN LAND USE ELEMENT AMENDMENT TO IMPLEMENT THE 2020 HOUSING ELEMENT AND FAIR SHARE PLAN

April 10, 2020

This document originally adopted by the Planning Board of the Borough of Wallington at their public hearing held on _____.



**EXHIBIT**

**M** _____



B U R G I S
A S S O C I A T E S, I N C.

D000004

# MASTER PLAN LAND USE ELEMENT AMENDMENT TO IMPLEMENT THE 2020 HOUSING ELEMENT AND FAIR SHARE PLAN

Borough of Wallington

Bergen County, New Jersey

Prepared for: Borough of Wallington

BA# 3526.00

The original document was appropriately signed and sealed on in accordance with the State Board of Professional Planners and adopted by the Wallington Planning Board after public hearing held on _____.

John P. Szabo, Jr., PP, AICP

Professional Planner #3445

BURGIS
Associates, Inc.

25 Westwood Avenue, Westwood NJ 07675
p: 201.666.1811 | f: 201.666.2599 | w: burgis.com

D000005

# MEMBERS OF THE BOROUGH OF WALLINGTON PLANNING BOARD

Stanley Baginski, Chairman
Tomasz Bazel, Vice Chairman
Mayor Melissa Dabal, Mayor
Eugeniusz Rachelski, Councilman
Nick Melfi, Class II
Dariusz Pawluczuk
Slawomir Cancarz
Robert Kasperek
Kathy Polten, Secretary

**Planning Board Recording Secretary**
Paula Gilbert

**Planning Board Attorney**
Brian Giblin, Esq.
Giblin and Gannaio

**Borough Engineer/Planner**
David Juzmeski, P.E.
Neglia Engineering

**Borough Affordable Housing Attorney**
Robert Simon, Esq.
Herold Law

**Borough Affordable Housing Consultant**
John P. Szabo, Jr., P.P., AICP
Burgis Associates, Inc.

---

**INTRODUCTION**

The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-62a, requires every municipality with a zoning ordinance to adopt a master plan containing at least a land use plan element and housing plan element. What follows is a brief historical description of the Borough of Wallington's master planning efforts over the past years.

The Borough of Wallington Planning Board adopted its last comprehensive master plan including a land use element in 1979 (the "Master Plan"). The Master Plan subsequently underwent a series of reexaminations and amendments in 1980, 1990 and 2006. The last reexamination report of the Borough's Master Plan was adopted on August 2, 2006 ("Reexamination Report").

Since adoption of the 2006 Reexamination Report, the Borough Planning Board adopted additional amendments to the Master Plan's Land Use element in 2006 and 2013.

The 2006 Land Use amendment adopted by the Planning Board on December 16, 2006 identified Borough-owned property, depicted on the Borough Tax Map as Block 70.01, Lot 80, for inclusion within the recreation and open space land use category.

The 2013 Land Use element amendment adopted by the Planning Board on February 13, 2013 eliminated the PC, Planned Commercial land use category in favor of a Commercial Business, CB designation and included recommended zoning ordinance amendments to better encourage economic development. The Borough subsequently amended the Borough Zoning Ordinance to implement the recommended zoning amendments.

The most recent 2006 Master Plan Reexamination Report recommended that the Borough prepare a new base zoning map that would serve as a basis for an updated existing land use analysis that would support planning studies leading to a new comprehensive master plan and updated zoning map. In advance of preparing a new master plan, the 2006 Master Plan Reexamination Report deemed it essential to immediately amend the Land Use element (the "Land Use Element" or "Land Use Plan") of the current Master Plan to include the following:

- Although it is anticipated that the new Master Plan will include a revised set of goals and objectives that will be appropriate for 21" century Wallington, it is essential now, as part of this document, to emphasize and supplement several key components of the Borough's current Master Plan Goals and Objectives section. Specifically, the Land Use category appropriately speaks to controlling redevelopment so that it is compatible with existing land use and that development should be channeled so that it is of maximum benefit to Wallington's present and future population. However, greater specificity is needed now to ensure that the character of the community is not destroyed by inappropriate and incompatible "infill" and/or ''redevelopment" projects. With this concern in mind, the Master Plan Goals and Objectives Land Use

D000007

category is hereby amended to include the following language:

> To discourage any development and/or redevelopment that, because of building height, mass and scale and/or because of density of development or intensity of use will negatively impact the quality of life in the residential neighborhoods of Wallington and/ or will add to the congestion and overburdening of the Borough's infrastructure.

- Continue to pursue the identification, designation and planning for areas within the Borough that qualify as Areas In Need Of Redevelopment, keeping in mind the above modification to the Master Plan Goals and Objectives. Such efforts might also include the solicitation of Requests For Proposals (RFP's) from qualified developers, which would lead to the preparation and adoption of redevelopment plans for these areas. The existing and potential redevelopment areas include, but are not limited to, the previously mentioned Centennial Redevelopment Area, as well as the Parmalat site, properties in close proximity to Pannalat and selected properties located near the Passaic River and adjacent to Paterson Ave. If and when redevelopment plans are prepared for these areas, they should be incorporated into the Borough Master Plan.

- Pursue the acquisition of properties along the Passaic River for open space purposes in order to continue the riverbank open space network already established south of Wallington.

- Amend the Borough zoning ordinance and other land use regulations, in order to bring them into compliance with certain state mandates such as, but not limited to, permitting day care facilities in non-residential zones, as per the standards established in the New Jersey Municipal Land Use Law and other state statutes.

- Amend the Borough zoning ordinance, after further study, to restrict the percentage of the front yard, in selected residential areas, that can be used for off-street parking purposes, in order to maintain sufficient green area and to protect the residential character of these areas. The development of regulations pertaining to a requirement for garages associated with one and two family residences, should also be pursued.

- Continue to pursue the upgrading of Samuel Nelkin Park, which is under the jurisdiction of Bergen County. Conduct a survey of Borough residents to determine what should be included in any upgrading of this facility.

- Work with the Wallington Board of Education to address the facilities needs associated with the Borough's school system, including the construction of a new school.

- Evaluate the Borough zoning ordinance to determine if changes are warranted to preclude the construction of "Monster Houses" or "Me Mansions" that would be

inappropriate intrusions in the older neighborhoods within the Borough.

- Once the Housing Plan is completed, take steps to bring the Borough into compliance with COAH's Third Round Rules. Filing the adopted housing plan with COAH is a recommended first step, before the Borough petitions for substantive certification. Another recommendation regarding the affordable housing issue is to adopt, as an interim measure, an Affordable Housing Overlay Zone, which is included herein as Appendix D. These actions will of course be dependent on how the previously mentioned "Mt Laurel" litigation, involving the Borough is resolved.

- Evaluate the problem of converting garages to living space, particularly into separate apartments. Determine the enforcement and regulatory steps needed to control this problem.

- Evaluate the demand for a youth center / community center that will address the needs of the Borough.

- Identify those areas of the Borough, for example in the vicinity of Main Ave, where the sewer line capacities are problematic, may impact the health, safety and welfare of the community and where future development and redevelopment activities should be carefully restricted.

- Evaluate the business zones in the vicinity of Locust, Main and Wallington Avenues in order to determine what changes should be made to protect the community character, while at the same time allowing for the appropriate development, expansion and operation of commercial facilities in these areas. An initial analysis of these areas indicates that portions of all three streets should probably be rezoned. Currently, there are large groupings of residential structures that are zoned for nonresidential use adjacent to these streets. Given the realities of the marketplace, it is unlikely that these properties will be converted to nonresidential uses anytime in the foreseeable future.

- The Borough zoning regulations include a zoning district known as the R-4 Planned Residential Zone. However, it is not clear why this zoning district exists, since it appears to be virtually identical to the R-1 Zone. After further investigation regarding the history of this zone, it may be advisable to eliminate it and rezone the subject area as R-1.

Significantly, the 2006 Reexamination Report recognized the Borough's obligation to prepare an affordable housing plan and recommended the Borough take steps to implement COAH Third Round regulations. In response to this recommendation, the Borough adopted affordable housing plans in 2007, 2008 and 2009 in efforts to comply with COAH Third Round regulations as recommended by the 2006 Reexamination Report.

D000009

Unfortunately, the Borough's previous attempts to comply with COAH affordable housing requirements were essentially rendered null and void by ensuing court actions.

The New Jersey Supreme Court In re Adoption of N.J.A.C. 5:96 & 5:97, 221 N.J. 1 (2015) on March 10, 2015 stripped the Council on Affordable Housing (COAH) of its administrative duties relating to the affordable housing certification process.  This decision granted the Fair Share Housing Center's (FSHC) motion in aid of litigant's rights, declared COAH ineffective in complying with the mandates of the Fair Housing Act of 1985 (FHA), dissolved the substantive certification process before COAH and created a judicial process by which a municipality can file a declaratory judgment action with the court seeking a judicial determination that their housing element satisfied their "third round" affordable housing obligation.  The New Jersey Supreme Court appointed "Mount Laurel" judges for each of the state's fifteen (15) judicial vicinages to hear and decide these actions. The Court directed that the reviewing judges utilize methodologies similar to that developed by COAH in the prior first and second rounds. The Court further established a specific deadline (July 8, 2015) by which municipalities could file such actions.

Pursuant to the New Jersey Supreme Court's March 10, 2015 decision and to preserve immunity from developer remedy lawsuits, the Borough filed a declaratory judgment action (the "DJ Action") entitled In the Matter of the Application of the Borough of Wallington for Judgement of Compliance and Repose, County of Bergen, Docket Number BER-L-6285-15 with the Superior Court.  The DJ Action sought a judicial determination of compliance with the Borough's Third Round affordable housing obligation.

The DJ Action was settled with Fair Share Housing Center ("FSHC"), and the settlement was reviewed and approved by the Superior Court of New Jersey, the Honorable Christine Farrington, J.S.C. presiding, after a Fairness Hearing held on November 20, 2019, which approval is memorialized in an order entered by the court and filed on January 6, 2020 (the "Settlement Order").

In response to Settlement Order, the Planning Board prepared and adopted a Housing Element and Fair Share Plan dated April 10, 2020 ("2020 HE&FSP"). The 2020 HE&FSP identifies properties for the development of affordable housing that requires amendment to the Borough's zoning ordinance.

The 2020 HE&FSP further requires amendment of the  Master Plan's Land Use Element in order to promote consistency between the Borough's 2020 HE&FSP and the most current version of the Land Use Element as required by the Municipal Land Use Law.

This document identifies specific amendments to the Land Use Element necessary to achieve the required consistency to implement the 2020 HE&FSP.

## AMENDMENT TO THE LAND USE PLAN

*Goals and Objectives*

The following amendment is hereby incorporated into the Borough of Wallington Land Use Plan. This amendment is intended to accomplish the following goal and objective:

1. To promote consistency with and implementation of the 2020 HE&FSP which seeks to provide affordable housing opportunities in compliance with the Borough's settlement agreements with FSHC and certain intervenors incident to the DJ Action and as approved by the New Jersey Superior Court In the Matter of the Application of the Borough of Wallington for Judgement of Compliance and Repose, County of Bergen, Docket Number BER-L-6285-15, in a manner that satisfies the Borough's constitutional obligation as defined by the New Jersey Supreme Court Mount Laurel decisions.

*Land Use Category*

This land use plan amendment creates a new land use category entitled "Affordable Housing Inclusionary Development" and is specific to certain properties identified by the 2020 Housing Element and Fair Share Plan for inclusionary development.

Specifically, the following properties are to be included within the Affordable Housing Inclusionary Development land use designation:

a. Wallington Homes, LLC – 35 Spring Street (Block 70.05 Lot 8.01 on the Tax Map of the Borough of Wallington)

b. Wallington Real Estate Investment Trust LLC aka 4 H site – 380 Mount Pleasant Avenue (Block 70.01 Lot 78 on the Tax Map of the Borough of Wallington)

c. Morningside at Wallington, LLC/New Wallington Homes LLC – 551 Main Street (Block 71 Lots 35.01 and 35.02 on the Tax Map of the Borough of Wallington)

An aerial of the subject area outlining the boundaries of the proposed land use amendment is appended to this document as Figure 1.

*Property descriptions*

Wallington Homes, LLC – 35 Spring Street (Block 70.05 Lot 8.01).

The Wallington Homes site is a 1.5 acre parcel located at the end of Spring Street.  The site is presently occupied by an abandoned, privately owned, pool facility that is in severe disrepair and not utilized. The site is zone R-1 which permits single family residential development.

Adjoining land uses include municipally owned land to the north, a municipal park to the east (Centennial Park), multifamily garden apartments located directly across the street to the south and single family residential development adjoining the property to the west.  Significantly, the property is also within 0.25 miles of the Westmont Rail Station.

The property is located at a critical transition between different land uses as described above. Based upon the location of this property and its  close proximity to the Westmont Rail Station and  community open space, multifamily development of this property is appropriate.

As part of the Borough's settlement agreements and 2020 HE&FSP, the property is proposed for development of 42 multifamily rental units that will provide for a 19% set aside of 8 affordable units on site.

Using the site development criteria under N.J.A.C. 5:93-4 which determines the appropriateness of property for affordable housing, the property satisfies all four criteria:

a) Suitable:  The property is contiguous to existing multifamily development directly across the street, is designed to integrate the development as an appropriate transition between the single family and multi-family housing types in the neighborhood  and is redevelopment of an old swimming pool recreational site that has fallen into severe disrepair and as such negatively impacts the existing residential neighborhood.  The site is underutilized and presents an ideal opportunity for redevelopment.  No known environmental constraints are present that would preclude development.

b) Developable:  Per the Borough Engineer, the site has access to appropriate water and sewer infrastructure  and there is sufficient capacity to service the project.

c) Approvable:   The Borough has committed to approving the development as demonstrated by separate settlement agreement with the Wallington Homes, LLC approved on or about August 22, 2019. As set forth in the Settlement Agreement, the Borough has  drafted a zoning ordinance amendment that is expected to  be

introduced and adopted during compliance phase of process after the adoption of the HE&FSP.

d) <u>Available</u>: Borough is unaware of any title defects that would prevent the development. The availability of the site for development has been represented by the property owner.

<u>Wallington Real Estate Investment Trust LLC aka 4 H site – 380 Mount Pleasant Avenue (Block 70.01 Lot 78).</u>

The Wallington Real Estate Investment Trust (4 H) site is a 4.7 acre parcel located at the end of Mount Pleasant Avenue. The site is presently vacant and is zoned LI and I which permits industrial development.

Adjoining land uses include industrial property to the north, municipally owned property to the south including Centennial Park, and a school and residential single family neighborhood to the west. The property slopes away from Mount Pleasant Avenue such that the property is not entirely visible from the street. Significantly, the property abuts an active commuter rail line and is immediately adjacent to the Westmont Rail Station to the east, possibly presenting an opportunity to develop a transit village consistent with smart growth planning principles.

As part of the Borough's 2020 Housing Element and Fair Share Plan, the property is proposed for development of no less than 269 total residential units and no more than 275 total residential units requiring no less than 48 on-site units to be set-aside as affordable to low and moderate income households (the "Affordable Units") based on an 18% set aside. Alternatively, the 48 Units may be achieved by including up to 31 units of age-restricted affordable housing, up to 15 alternative living arrangement beds, and the remainder units as family affordable housing units, so to provide for the necessary 48 affordable housing units onsite, and provided further that any such alternative arrangement provide at least one family very low income unit as part of the seven (7) total very low income units required to be provided on the site. This alternative would diversify the Borough's housing stock and provide needed housing for households with special needs and seniors.

Using the site development criteria under N.J.A.C. 5:93-4 which determines the appropriateness of property for affordable housing, the property satisfies all four criteria:

a) <u>Suitable</u>: The site is vacant, cleared for development and is contiguous to an active rail commuter line which possibly offers an opportunity to develop a transit oriented development consistent with State Smart Growth policies. Some steep slopes exist along Mount Pleasant Avenue; however, the property owner represents there is adequate developable land available to permit development of the site as contemplated by the FSHC settlement agreement.

D000013

b) <u>Developable:</u>  Per the Borough Engineer, all infrastructure needed for the project (sewer/water) is in place and there is sufficient capacity to service the project.

c) <u>Approvable:</u>  The Borough has agreed and is willing to rezone the property to promote the development of the property consistent with the FSHC settlement agreement.

d) <u>Available:</u>  The Borough is unaware of any title defects that would prevent the development.

<u>Morningside at Wallington, LLC/New Wallington Homes LLC – 551 Main Street (Block 71 Lots 35.01 and 35.02).</u>

The Morningside at Wallington site is a 11.7 acre parcel located on Main Street at its intersection with Al Ventura Road.  The site is presently developed with a commercial recreational building (rolling skating rink) and is zoned Planned Residential Mount Laurel, PR-ML which specifically permits inclusionary multifamily housing.

The property was rezoned from Light Industrial to PR-ML as a result of a court order stemming from a builder's remedy lawsuit in 2008 and subsequently included in the Borough's previously adopted 2009 Housing Element and Fair Share Plan for affordable housing development.

The property is identified as an affordable housing site in the 2020 Housing Element and Fair Share Plan, and multifamily development of the property will result in 207 rental units of which 42 units will be set aside as affordable units.

Although already zoned for affordable housing by a previous court order, the Borough's Land Use Element was never formally amended to identify the property within an affordable housing land use designation. Therefore, for consistency with the 2020 Housing Element and Fair Share Plan and based upon prior court and borough actions identifying the property for affordable housing, it is appropriate to formally include this site within this designation.

*Master Plan Land Use Element Amendment*

The Master Plan Land Use Element is hereby amended to create and apply the Affordable Housing Inclusionary Development land use designation to properties identified on the Borough's Tax Map as Block 70.01, Lot 78, Block 70.05, Lot 8.01 and Block 71, Lots 35.01 and 35.02 in order to promote residential development with a required inclusionary component to provide affordable housing opportunities consistent with the Borough's 2020 Housing Element and Fair Share Plan.  Any development within this designation shall be required to set aside

affordable housing units in accordance with the 2020 Housing Element and Fair Share Plan and implementing ordinances.

Consistent with the Borough's current master plan, development contemplated by this amendment is envisioned to incorporate a cohesive design that complements the surrounding neighborhoods in a manner that does not adversely impact the community.  Landscaping, public amenities with open space and upscale architectural design is to be encouraged. It is further contemplated that, as these sites develop, appropriate infrastructure and transportation improvements  will also be included to properly integrate the anticipated developments into the Borough's existing water, sewer and transportation systems.

## FINDINGS AND CONCLUSIONS

This land use plan amendment promotes compliance with the Borough's affordable housing obligation for the Third Round as described in the 2020 HE&FSP and is thereby consistent with a key element of the Borough's Master Plan as amended by the 2006 Reexamination Report which specifically addressed implementation of the Borough's Housing Element and Fair Share plan once adopted.

Furthermore, the promotion of affordable housing is also consistent with sound planning and "smart growth" planning principles for the following reasons:

1.  The property and neighborhood characteristics of the selected parcels for affordable housing are particularly suited for residential development. The Wallington Homes and Morningside/New Wallington properties adjoin areas of existing multifamily development.  Encouraging multifamily development of these properties would be consistent with the characteristics of the neighborhoods near these sites.  Both properties are within 0.25 miles, considered walking distance, to the Westmont Rail station, and bus service is also available in close proximity on Main Street.  It is further noted that the 4H site is a vacant parcel located directly adjacent to the Westmont Rail station, presenting an  opportunity to create a transit oriented development. Concentrating residential development with convenient access to multiple transit options by both rail and bus for future residents promotes the efficient use of land and creates the benefit of reducing traffic congestion, parking demand and reducing the release of vehicle-generated pollutants into the environment.

2.  The land use element amendment promotes the efficient use of land consistent with New Jersey Smart Growth principles and advances the purposes of the Municipal Land Use Law by locating residential development near a major transit facility and available bus services and repurposing land that is presently underutilized and developed with obsolete facilities.  Anticipated development will promote the more efficient use of land, will diversify the Borough's housing stock providing opportunities for affordable housing

development, and promote appropriate residential densities in appropriate locations. Development, as envisioned by this Land Use Element amendment, will also result in upscale, modern buildings that will be consistent with current engineering and planning design standards thereby promoting a desirable visual environment through creative development techniques and good civic design and arrangement.    Development is therefore, anticipated to revitalize the general area to the benefit the community.

D000016

3.

Figure 1

Affordable Housing Inclusionary Development Sites



D000017